UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

CARLOS OCAMPO, et al.,

                     Plaintiffs,

    v.

455 HOSPITALITY LLC, et al.,

                     Defendants.

Case No. 14-CV-9614 (KMK)

OPINION & ORDER

**REDACTED**

---

Appearances:

John J. Malley, Esq.
Smith, Buss & Jacobs, LLP
Yonkers, NY
*Counsel for Plaintiffs*

Vincent Volino, Esq.
Vincent Volino PLLC
Yonkers, NY
*Counsel for Plaintiffs*

Jonathan D. Levitan, Esq.
Rosenbaum & Associates PC
South Salem, NY
*Counsel for Defendants Doubletree Franchise LLC
and Doubletree Hotel Systems, Inc.*

KENNETH M. KARAS, District Judge:

       Carlos Ocampo, Igor Morozov, Jorge Villanueva, Amaury Ortiz, Plinio Retana, Manuel Calderon, Sutee Monchaitanapat, Douglas Molina, Nelson Delarosa, Felipe Barriga, Sonia Gonzalez, Alberto Gonzales, Panfilo Escobar, Edward Suriel, Alejandro Gonzalez, Francisco Solis, Candido Sanchez, Estela Penalo Diaz, Lucia Rojas-Escolastico, Jennys Moya, Clarisa Rojas-DeLaRosa, Hilario Ku, and Maria Lamoth (collectively, "Plaintiffs"), on behalf of themselves and all others similarly situated, bring this Action alleging violations of the Fair

Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201 *et seq.*, and New York Labor Law ("NYLL"), §§ 190 *et seq.* and 650 *et seq.*[1]  Doubletree Franchise LLC and Doubletree Hotel Systems, Inc. (collectively, "Franchisor Defendants") have moved to dismiss Plaintiffs' Second Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) (the "Motion").  For the following reasons, the Motion is denied.

## I.  Background

### A.  Factual Background

The following facts are drawn from Plaintiffs' Second Amended Complaint and are taken as true for the purpose of resolving the instant Motion.

455 Hospitality LLC ("455 Hospitality") is the owner, operator, and manager of the Double Tree by Hilton Hotel, located at 455 Broadway, Tarrytown, New York 10591 (the "Hotel").  (Second Am. Compl. ("SAC") ¶¶ 1, 56 (Dkt. No. 60).)  455 Hospitality is a franchisee of Doubletree Franchise LLC ("Doubletree LLC") and/or Doubletree Hotel Systems, Inc. ("Doubletree HIS"), (*id.* ¶ 61), which have granted licenses to various franchisees to operate Doubletree by Hilton Hotels in New York under the Doubletree "System," (*id.* ¶ 64).  Plaintiffs consist of banquet servers, housemen, a houseman supervisor, banquet supervisors, restaurant waiters, a room service water, housekeepers, and a kitchen sous chef who have been employed to work at the Hotel.  (*Id.* ¶ 1.)  They allege, inter alia, claims for unpaid minimum wages, overtime pay, gratuities, tips, failure to maintain records, and wage statement violations.  (*Id.* ¶ 6.)

---

[1] Since the filing of the Second Amended Complaint, numerous individuals have consented to join the Action.  (*See* Dkt. Nos. 92–108, 120–21, 123–26, 128–46, 148–76, 179–80, 196–97, 204–05.)  "Plaintiffs" also includes these members of the class.

B. Procedural Background

Plaintiffs commenced the instant Action on December 4, 2014, alleging Franchisor Defendants, 455 Hospitality, Norma Abdou ("Abdou"), Richard Friedman ("Friedman"), Nurul Haque ("Haque"), and David Ribbens ("Ribbens") (collectively, "Defendants") violated their rights under the FLSA and NYLL. (Dkt. No. 1.) 455 Hospitality, Abdou, Friedman, Haque, and Ribbens filed an Answer to Plaintiffs' Complaint on February 2, 2015. (Dkt. No. 15.) On February 23, 2015, Plaintiffs filed their First Amended Complaint. (Dkt. No. 19.) 455 Hospitality, Abdou, Friedman, Haque, and Ribbens filed an Answer to Plaintiffs' First Amended Complaint on March 13, 2015. (Dkt. No. 38.) Pursuant to a Scheduling Order adopted by the Court on May 13, 2015, (Dkt. No. 49), Plaintiffs filed their Second Amended Complaint on June 16, 2015, (Dkt. No. 60), and 455 Hospitality, Abdou, Friedman, Haque, Ribbens, and Doreem Clarke filed an Answer on August 5, 2015, (Dkt. No. 76).[2]

Plaintiffs filed their Motion for Conditional Collective Certification on August 5, 2015. (Dkt. Nos. 77–79.) Defendants submitted their opposition on September 2, 2015, (Dkt. Nos. 83–84), and Plaintiffs submitted their reply on September 18, 2015, (Dkt. No. 89). The Court held oral argument on February 26, 2016, (Dkt. (minute entry for Feb. 26, 2016)), granting in part and denying in part Plaintiffs' Motion for Conditional Collective Certification, (Dkt. No. 91).[3]

Pursuant to the Scheduling Order, (Dkt. No. 49), Franchisor Defendants filed their Motion To Dismiss and supporting papers on August 4, 2015. (Dkt. No. 75.) Plaintiffs filed

---

[2] The Second Amended Complaint added Doreen Clarke as a named Defendant. (*See* Dkt. No. 60.)

[3] By Order dated March 2, 2016, the Court, among other things, conditionally certified a FLSA class as to non-exempt workers in the Hotel's Food & Beverage and Housekeeping Departments. (Dkt. No. 91.)

their opposition on September 2, 2015, (Dkt. No. 85), and Franchisor Defendants filed their reply on September 18, 2015, (Dkt. No. 88).[4]

## II.  Discussion

### A.  Standard of Review

The Supreme Court has held that although a complaint "does not need detailed factual allegations" to survive a motion to dismiss, "a plaintiff's obligation to provide the grounds of his [or her] entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (alteration and internal quotation marks omitted).  Indeed, Rule 8 of the Federal Rules of Civil Procedure "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  "Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement." *Id.* (alteration and internal quotation marks omitted).  Rather, a complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.  Although "once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint," *id.* at 563, and a plaintiff must allege "only enough facts to state a claim to relief that is plausible on its face," *id.* at 570, if a plaintiff has not "nudged [his or her] claims across the line from conceivable to plausible, the[] complaint must be dismissed," *id.*; *see also Iqbal*, 556 U.S. at 679 ("Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.  But where the well-pleaded facts do not permit the court to infer

---

[4] Pursuant to an Order dated June 21, 2016, (Dkt. No. 147), Franchisor Defendants submitted appropriately redacted versions of their motion papers for public filing, (Dkt. Nos. 183, 198–203).

more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" (second alteration in original) (citation omitted) (quoting Fed. R. Civ. P. 8(a)(2))); *id.* at 678–79 ("Rule 8 marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions.").

"[W]hen ruling on a defendant's motion to dismiss, a judge must accept as true all of the factual allegations contained in the complaint." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam); *see also Aegis Ins. Servs., Inc. v. 7 World Trade Co.*, 737 F.3d 166, 176 (2d Cir. 2013) (explaining that a court "reviewing a dismissal pursuant to Rule 12(b)(6)" must "accept all factual allegations in the complaint as true" (alteration and internal quotation marks omitted)). Further, "[f]or the purpose of resolving [a] motion to dismiss, the [c]ourt . . . draw[s] all reasonable inferences in favor of the plaintiff." *Daniel v. T&M Prot. Res., Inc.*, 992 F. Supp. 2d 302, 304 n.1 (S.D.N.Y. 2014) (citing *Koch v. Christie's Int'l PLC*, 699 F.3d 141, 145 (2d Cir. 2012)).

Lastly, a court ruling on a Rule 12(b)(6) motion "may consider the complaint[,] . . . any written instrument attached to the complaint as an exhibit[,] or any statements or documents incorporated in it by reference," as well as "matters of which judicial notice may be taken, and documents either in [the] plaintiffs' possession or of which [the] plaintiffs had knowledge and relied on in bringing suit." *Kalyanaram v. Am. Ass'n of Univ. Professors at N.Y. Inst. of Tech., Inc.*, 742 F.3d 42, 44 n.1 (2d Cir.) (alterations and internal quotation marks omitted), *cert denied*, 135 S. Ct. 677 (2014); *see also Leonard F. v. Isr. Disc. Bank of N.Y.*, 199 F.3d 99, 107 (2d Cir. 1999) ("In adjudicating a Rule 12(b)(6) motion, a district court must confine its consideration to facts stated on the face of the complaint, in documents appended to the complaint or incorporated

in the complaint by reference, and to matters of which judicial notice may be taken." (internal quotation marks omitted)); *Wang v. Palmisano*, 157 F. Supp. 3d 306, 317 (S.D.N.Y. 2016) (same).

B.  Analysis

1.  Materials Properly Considered on the Motion

In support of the Motion, Franchisor Defendants have submitted the Franchise Agreement and three subsequent amendments.  (Decl. of Julie Garrison in Supp. of Mot. ("Garrison Decl.") Exs. B–E (Dkt. No. 199).)  They concede that Plaintiffs neither attached the contract to their pleadings nor specifically incorporated it therein by reference.  (*See* Moving Defs.' Mem. of Law in Supp. of Mot. ("Defs.' Mem.") 6 (Dkt. No. 200).)  Nevertheless, Franchisor Defendants argue that the submitted exhibits are "integral" to the Second Amended Complaint because Plaintiffs "clearly rely on selected elements of and discrete references to the Franchise Agreement."  (*Id.*)  In response, Plaintiffs argue that the "narrow exception [Franchisor Defendants] rely upon . . . only applies if the plaintiff's claim *solely* relies on the submitted document" and that the Second Amended Complaint "do[es] not solely rely upon the [F]ranchise [A]greement."  (Pls.' Mem. of Law in Opp'n to Mot. ("Pls.' Opp'n") 2 (Dkt. No. 85).)

As noted above, on a Rule 12(b)(6) motion, a court generally must consider only the complaint, which "is deemed to include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference." *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152 (2d Cir. 2002) (internal quotation marks omitted).[5]  A court may also consider a

---

[5] While Defendants do not argue that the Franchisor Agreement falls in either category, (*see* Defs.' Mem. 6), the Court takes a moment to affirm that it indeed does not.  The document was not attached to the pleadings and, although it is referenced in the Second Amended Complaint, the limited citations "are insufficient to deem [the] entire document incorporated." *Korova Milk Bar of White Plains, Inc. v. PRE Props., LLC*, No. 11-CV-3327, 2013 WL 417406,

document "where the complaint relies heavily upon its terms and effect, [which] render[s] the document integral to the complaint." *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010) (internal quotation marks omitted). The Second Circuit has cautioned, however, that "a plaintiff's *reliance* on the terms and effect of a document in drafting the complaint is a necessary prerequisite to the court's consideration of the document on a dismissal motion; mere notice or possession is not enough." *Chambers*, 282 F.3d at 153. Additionally, "[e]ven if a document is 'integral' to the complaint, it must be clear on the record that no dispute exists regarding the authenticity or accuracy of the document." *DiFolco*, 622 F.3d at 111 (some internal quotation marks omitted); *see also Fine v. ESPN, Inc.*, 11 F. Supp. 3d 209, 221 (N.D.N.Y. 2014) ("[E]ven implicit, conclusory, contradictory, or implausible objections to the authenticity or accuracy of a document render consideration impermissible.").[6]

---

at *6 n.3 (S.D.N.Y. Feb. 4, 2013); *see also Sira v. Morton*, 380 F.3d 57, 67 (2d Cir. 2004) ("Limited quotation from or reference to documents that may constitute relevant evidence in a case is not enough to incorporate those documents, wholesale, into the complaint."). Nor is the Franchisor Agreement a "matter[] of which judicial notice may be taken," *Leonard F.*, 199 F.3d at 107 (internal quotation marks omitted); *see also Medcalf v. Thompson Hine LLP*, 84 F. Supp. 3d 313, 321 (S.D.N.Y. 2015) ("In considering a motion to dismiss, a court is permitted to take judicial notice of public records . . . ."), as is evident from the fact that Franchisor Defendants filed the entire document and its amendments under seal, (Dkt. Nos. 75, 88). Thus, for purposes of the Motion, the Court may only consider the submitted exhibits if the documents are "integral" to the Second Amended Complaint. *See Chambers*, 282 F.3d at 153 (internal quotation marks omitted).

[6] When Franchisor Defendants first submitted their motion papers under seal, the Franchise Agreement was filed as an exhibit to a declaration by their counsel, Jonathan D. Levitan, Esq. (*See* Decl. of Jonathan D. Levitan in Supp. of Mot. ("Levitan Decl.") (Dkt. No. 75).) Plaintiffs argued that the document "cannot be considered by the Court in any way because it was submitted by counsel for . . . Franchisor Defendants, who does not have the personal knowledge to authenticate it." (Pls.' Mem. of Law in Opp'n to Mot. ("Pls.' Opp'n") 1 (Dkt. No. 85).) In publicly filing their motion papers, Franchisor Defendants submitted the Franchise Agreement and amendments as exhibits to the Declaration of Julie Garrison, (Garrison Decl. Exs. B–E), who at all relevant times served as Senior Director for Brand Performance of North America for Hilton Worldwide, Inc., (*see* Garrison Decl. ¶ 2). She attested to her familiarity with the relevant agreements and affirmed their authenticity. (*See id.* ¶ 4.) Regardless, the Court

As to whether the documents are "integral" to the Second Amended Complaint, the Court finds Plaintiffs' interpretation—i.e. that a plaintiff's allegations must exclusively rely on an extraneous document for it to be considered, (*see* Pls.' Opp'n 2, 21–22)—unavailing. The "integral" exception may be a narrow one, *see Allen v. Chanel Inc.*, No. 12-CV-6758, 2013 WL 2413068, at *6 (S.D.N.Y. June 4, 2013) (noting that the exception for an "integral" document "has been deemed narrow in scope" (citing *Williams v. Time Warner, Inc.*, 440 F. App'x 7, 9 (2d Cir. 2011))), but it is not so narrow as Plaintiffs suggest in pointing to *Roth v. Jennings*, 489 F.3d 499 (2d Cir. 2007), where the Second Circuit explained that "a document upon which the complaint *solely* relies and which is *integral to the complaint* may be considered by the court in ruling on [a Rule 12(b)(6)] motion." *Id.* at 509. This language of "solely" relying does not subsume the well-settled rule that a court may consider a document "where the complaint relies

---

notes that it would have considered the documents as submitted by counsel for Franchisor Defendants. Although the "'no dispute' requirement has been interpreted strictly," *Fine*, 11 F. Supp. 3d at 221, Plaintiffs did not dispute the authenticity or accuracy of the submitted exhibits in any material way. Rather, they merely asserted that defense counsel "lacks personal knowledge to authenticate [the Franchise Agreement]." (Pls.' Opp'n 1; *see also id.* at 18 (asserting that the Franchise Agreement "is unauthenticated" because defense counsel "had no personal knowledge regarding that document").) However, such an assertion regarding personal knowledge does not constitute an objection to the document's authenticity and thus would not preclude consideration of the Franchise Agreement for purposes of resolving the instant Motion. *See F.D.I.C. v. U.S. Mortg. Corp.*, 132 F. Supp. 3d 369, 381 (E.D.N.Y. 2015) ("[M]erely stating that counsel lacks personal knowledge of the documents, without specifically challenging their veracity, is insufficient to call their authenticity into question and prevent the [c]ourt from considering them."); *accord Breyan v. U.S. Cotton, LLC Long Term Disability Plan*, No. 12-CV-491, 2013 WL 5536795, at *5 (W.D.N.C. Oct. 7, 2013) (finding an extrinsic document "proper for consideration" on a motion to dismiss where the "[p]laintiff lodge[d] several objections against [its] consideration" but did not "actually dispute[] the authenticity or accuracy of the document"). Moreover, the original declaration from defense counsel states, under penalty of perjury, not only that he is "fully familiar with the facts and circumstances . . . set forth" but also that the attached exhibits are "true and correct." (Levitan Decl. 1.) The Court credits this affirmation. *See Wilson v. Kellogg Co.*, 111 F. Supp. 3d 306, 312 (E.D.N.Y. 2015) (crediting defense counsel's declaration as to the authenticity of an attached document, over the plaintiff's objection), *aff'd*, 628 F. App'x 59 (2d Cir. 2016).

*heavily* upon its terms and effect." *DiFolco*, 622 F.3d at 111 (emphasis added) (internal quotation marks omitted); *see also Lohan v. Perez*, 924 F. Supp. 2d 447, 453 (E.D.N.Y. 2013) (noting that a court may properly consider an extraneous document "if it is a document upon which the complaint solely relies and is integral to the complaint, *or* where the complaint relies heavily upon its terms and effect, thereby rendering the document integral to the complaint" (emphasis added) (alteration, citation, and internal quotation mark omitted)).  Indeed, the Court has found no controlling authority suggesting that a relied-upon document cannot be considered merely because a complaint also rests on additional facts.  *Cf. Fine*, 11 F. Supp. 3d at 221 (explaining only that "[t]he reliance must be substantial").

In this Action, there is clear evidence from the face of the Second Amended Complaint that Plaintiffs heavily relied on the Franchise Agreement in drafting their pleadings.  Plaintiffs expressly refer to the document eight times in the paragraphs setting forth allegations against Franchisor Defendants, (*see* SAC ¶¶ 167–74), in a subsection entitled "The Control Exerted *through the Franchise Agreement*," (*id.* at 29 (emphasis added)).  The Second Amended Complaint frames the relationship between Franchisor Defendants and 455 Hospitality "pursuant to the [F]ranchise [A]greement, (*see, e.g.*, *id.* ¶ 167 (alleging that "pursuant to the [F]ranchise [A]greement[,] . . . Franchisor Defendants mandated that 455 Hospitality require its employees to participate in . . . Franchisor Defendants' training programs)), whereby Plaintiffs argue they "have easily alleged plausible joint-employer-claims against . . . Franchisor Defendants," (Pls.' Opp'n 1; *see also id.* at 8–15 (alleging that Franchisor Defendants exerted functional control over Plaintiffs (citing, inter alia, SAC ¶¶ 167–69, 171–74))).  The critical element of Plaintiffs' claims against Franchisor Defendants turns on that relationship, given that, as discussed below,

"the relevant sections of the FLSA and NYLL apply only to employers," as defined by those statutes. *Olvera v. Bareburger Grp. LLC*, 73 F. Supp. 3d 201, 204 (S.D.N.Y. 2014).

Plaintiffs' heavy reliance on the Franchise Agreement is further evidenced by the Second Amended Complaint's inclusion of terminology and concepts plainly drawn from provisions of the document. For example, in alleging that Franchisor Defendants exerted control over employees at the Hotel, Plaintiffs devote 10 paragraphs to discussion of a quality assurance ("QA") program specifically articulated in the Franchise Agreement. (*Compare* SAC ¶¶ 175–84, *with* Garrison Decl. Ex. B ("Franchise Agreement") ¶ 3(e).) Their repeated use of the term "System" also refers directly to language contained in the Franchise Agreement. (*Compare* SAC ¶¶ 166, 171–72, 174, *with* Franchise Agreement ¶ 1(c) (defining "System" and "System Hotels" for purposes of the Franchise Agreement).) Clearly, and quite literally, Plaintiffs relied on the documents' "terms and effect" in drafting their pleadings. *See Annese v. Sodexo, Inc.*, No. 12-CV-412, 2012 WL 2571261, at *3 (N.D.N.Y. July 2, 2012) (finding a document integral where it "[wa]s referenced several times in the [a]mended [c]omplaint and [the plaintiff] clearly relie[d] heavily on its terms and effect"); *cf. Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 47 (2d Cir. 1991) (explaining that a plaintiff may not avoid consideration of a document integral to his or her complaint by failing to attach or incorporate it by reference).

Accordingly, the Court finds the Franchise Agreement integral to the Second Amended Complaint and thus will consider the submitted exhibits in resolving the instant Motion.

### 2. Merits of the Motion

Plaintiffs allege various violations of their rights under the FLSA and NYLL. (*See generally* SAC.) Franchisor Defendants, in turn, move to dismiss the Second Amended Complaint as to them. (Mot. (Dkt. No. 183).) Because the relevant sections of the FLSA and

NYLL apply only to employers, as defined by those statutes, *see Olvera*, 73 F. Supp. 3d at 204, Plaintiffs must plausibly plead facts that Franchisor Defendants were their "employers" in order for their claims to survive at this stage in the litigation. The Motion thus turns on that single question.

### a. Legal Definition of "Employer"

The FLSA defines "employer," in pertinent part, as "any person acting directly or indirectly in the interest of an employer in relation to an employee." 29 U.S.C. § 203(d).[7] The Supreme Court has emphasized that this is an expansive definition with "striking breadth." *Nationwide Mut. Ins. Co. v. Darden*, 503 U.S. 318, 326 (1992); *see also Olvera*, 73 F. Supp. 3d at 204 (same). "An individual may simultaneously have multiple 'employers' for the purposes of the FLSA, in which case 'all joint employers are responsible, both individually and jointly, for compliance with all of the applicable provisions of the [statute].'" *Olvera*, 73 F. Supp. 3d at 204 (quoting 29 C.F.R. § 791.2(a)).

"[W]hether an employer-employee relationship exists for purposes of the FLSA should be grounded in 'economic reality rather than technical concepts.'" *Barfield v. N.Y.C. Health & Hosps. Corp.*, 537 F.3d 132, 141 (2d Cir. 2008) (quoting *Goldberg v. Whitaker House Coop., Inc.*, 366 U.S. 28, 33 (1961)). In determining whether defendants are the plaintiffs' joint employers, a court must look to "the circumstances of the whole activity," *Olvera*, 73 F. Supp.

---

[7] The FLSA and NYLL employ nearly identical standards with respect to determining employment status. *Compare* 29 U.S.C.A. § 203(d) ("'Employer' includes any person acting directly or indirectly in the interest of an employer in relation to an employee . . . ."), *with* N.Y. Lab. Law § 190(3) ("'Employer' includes any person, corporation, limited liability company, or association employing any individual in any occupation, industry, trade, business or service."). Courts regularly apply the same tests to determine whether entities are joint employers for purposes of the FLSA and NYLL. *See, e.g., Olvera*, 73 F. Supp. 3d at 206; *Cano v. DPNY, Inc.*, 287 F.R.D. 251, 260 n.2 (S.D.N.Y. 2012).

11

3d at 205 (quoting *Rutherford Food Corp. v. McComb*, 331 U.S. 722, 730 (1947)), viewed in light of "economic reality," *Goldberg*, 366 U.S. at 33; *see also Benitez v. Demco of Riverdale, LLC*, No. 14-CV-7074, 2015 WL 803069, at *1 (S.D.N.Y. Feb. 19, 2015) (explaining that the definition of "employer" turns on "whether the person or entity possessed the power to control the workers in question, with an eye to the economic reality presented by the facts of each case" (internal quotation marks omitted)). "When it comes to 'employer' status under the FLSA, control is key." *Olvera*, 73 F. Supp. 3d at 205 (some internal quotation marks omitted).

In assessing economic reality, the Second Circuit has articulated two tests to determine whether an employment relationship existed for the purposes of the FLSA. The first, the formal control test, asks "whether the alleged employer (1) had the power to hire and fire the employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records." *Graziadio v. Culinary Inst. of Am.*, 817 F.3d 415, 422 (2d Cir. 2016) (internal quotation marks omitted); *see also Olvera*, 73 F. Supp. 3d at 205 (same). The standard "does not require continuous monitoring of employees, looking over their shoulders at all times, or any sort of absolute control of one's employees." *Hart v. Rick's Cabaret Int'l, Inc.*, 967 F. Supp. 2d 901, 939 (S.D.N.Y. 2013) (internal quotation marks omitted). Indeed, "[c]ontrol may be restricted, or exercised only occasionally, without removing the employment relationship from the protections of the FLSA." *Id.* (internal quotation marks omitted). "No one of the four factors standing alone is dispositive . . . ." *Graziadio*, 817 F.3d at 422 (internal quotation marks omitted).

Additionally, the Second Circuit has identified a number of factors pertinent to determining whether a person or entity, even if lacking formal control, exercised "functional control" over an employee. *See Zheng v. Liberty Apparel Co. Inc.*, 355 F.3d 61, 72 (2d Cir.

12

2003). Under this functional control test, courts look to the following relevant, though not exclusive, factors: "(1) whether the alleged employers' premises and equipment were used for the plaintiffs' work; (2) whether the subcontractors had a business that could or did shift as a unit from one putative joint employer to another; (3) the extent to which [the] plaintiffs performed a discrete line job that was integral to the alleged employers' process of production; (4) whether responsibility under the contracts could pass from one subcontractor to another without material changes; (5) the degree to which the alleged employers or their agents supervised [the] plaintiffs' work; and (6) whether [the] plaintiffs worked exclusively or predominantly for the alleged employers." *Olvera*, 73 F. Supp. 3d at 205–06 (alterations and internal quotation marks omitted) (quoting *Zheng*, 355 F.3d at 72).

Neither test for employment is a "rigid rule." *Barfield*, 537 F.3d at 143. Rather, these tests provide "a nonexclusive and overlapping set of factors to ensure that the economic realities test mandated by the Supreme Court is sufficiently comprehensive and flexible to give proper effect to the broad language of the FLSA." *Id.* (internal quotation marks omitted).

      b. Application

The Second Amended Complaint has pled facts to at least satisfy the functional control test.[8] Plaintiffs allege, inter alia, that Franchisor Defendants: (1) imposed mandatory training

---

[8] Franchisor Defendants argue that the functional control test "typically appl[ies] to cases that . . . involve 'outsourcing' or work through a contract/subcontractor relationship" and therefore is not applicable to the instant Action. (Defs.' Mem. 13.) This is contradicted by decisions that analyze the status of a franchisor defendant under the functional control test. *See, e.g.*, *Cordova v. SCCF, Inc.*, No. 13-CV-5665, 2014 WL 3512838, at *4–5 (S.D.N.Y. July 16, 2014) (analyzing the plaintiffs' allegations as to the franchisor defendant under "the functional control test outlined in *Zheng*"); *Olvera*, 73 F. Supp. 3d at 206–07 (concluding that the complaint pled facts that would satisfy both the formal control and the functional tests).

     In their opposition papers, Plaintiffs argue that they have alleged sufficient facts to establish Franchisor Defendants' "functional control." (*See* Pls.' Opp'n 8–15.) They do not, however, make any effort to satisfy the formal control test, (*see generally id.*), despite Franchisor

programs for employees at the Hotel, (SAC ¶¶ 167, 169), which was a pre-condition for the Hotel's opening, (*id.* ¶ 168), and a requirement for ongoing operations, (*id.* ¶ 170); (2) "maintain[ed] the right to inspect the Hotel at any time," (*id.* ¶ 171(a)); (3) imposed mandatory recordkeeping requirements on 455 Hospitality, (*id.* ¶ 171(b)); (4) established "standards and controls" that include "standards, specifications[,] and policies for construction, furnishing, operation, appearance, and service of the Hotel," (*id.* ¶ 172); (5) required that 455 Hospitality use a particular business software system to track the Hotel's revenue and operations, (*see id.* ¶ 173); (6) retained the unlimited "right to make changes" to the manner in which the Hotel is operated, (*id.* ¶ 174); (7) "regularly perform[ed] both scheduled and unannounced audits and inspections of the Hotel . . . to review 455 Hospitality's compliance with [their] financial recordkeeping requirements" and "QA standards," (*id.* ¶ 175; *see also id.* ¶ 179 (alleging that "Franchisor Defendants performed regular inspections of work performed by employees in the Housekeeping Department" and "of the Food & Beverage Department")), which incentivized good performance by Hotel employees, (*see, e.g.*, *id.* ¶ 182 (alleging that the Hotel could receive awards "[i]f the Hotel workers perform their duties such that the Hotel receives high QA scores")), and punished poor performance, (*see id.* (alleging that "when the Hotel receives poor QA scores from . . . Franchisor Defendants, Hotel employees are disciplined and/or reprimanded by 455 Hospitality")); (8) "maintain[ed] the right to terminate the Doubletree franchise" in the event that QA requirements are not met, "which thereby causes the termination of the employees' employment," (*id.* ¶ 183); and (9) were aware that Plaintiffs were not paid gratuities owed to

---

Defendants' contention that the Second Amended Complaint failed to plausibly plead an employment relationship under those factors, (*see* Defs.' Mem. 17 ("[W]hen the 'formal control' factors are applied to the [Second Amended Complaint], . . . Plaintiffs clearly failed to allege sufficient facts showing that [Franchisor] Defendants were their employers.")). Therefore, the Court will not analyze whether Franchisor Defendants exercised formal control over Plaintiffs.

them, (*see id.* 185–92), but "failed to stop the unlawful wage practices and policies that were perpetrated," (*id.* ¶ 193).[9]

Notwithstanding Franchisor Defendants' arguments to the contrary, (*see, e.g.*, Defs.' Mem. 8 (arguing that these "allegations do not plausibly allege that [Franchisor] Defendants had an employment relationship with Plaintiffs or controlled or had the right to control . . . Plaintiffs' employment")), the Court finds that these allegations, taken together, state a plausible claim that Franchisor Defendants were Plaintiffs' joint employers under the FLSA and NYLL.  Franchisor Defendants repeatedly assert that "the Franchise Agreement clearly shows that . . . Plaintiffs were employed by 455 Hospitality, which was merely an independent contractor of Doubletree [HIS] . . . ." (*Id.* at 16; *see also id.* at 7 (asserting that the franchisor-franchisee "relationship is expressly determined by paragraph 15 of the [Franchise] Agreement"); *id.* at 11 (asserting that, "as the Franchise Agreement makes abundantly clear, Plaintiffs' actual employer, 455 Hospitality, was . . . functioning as an independent contractor").)  However, though the Franchise Agreement may label 455 Hospitality "an independent contractor," (Franchise Agreement ¶ 15), "[e]conomic realities, not contractual labels, determine employment status for the remedial purposes of the FLSA," *Real v. Driscoll Strawberry Assocs., Inc.*, 603 F.2d 748, 755 (9th Cir. 1979) (citing, inter alia, *Rutherford*, 331 U.S. at 729); *see also Browning v. Ceva Freight, LLC*,

---

[9] Of these allegations, the first six point to the Franchise Agreement as the foundation of the control exerted by Franchisor Defendants over Hotel employees.  The substance of these allegations—that Franchisor Defendants maintained the right to inspect the Hotel, imposed recordkeeping requirements on 455 Hospitality, etc.—are consistent with provisions contained in the document.  (*See, e.g.*, Franchise Agreement ¶ 3(a) (training); *id.* ¶ 3(e) (inspections); *id.* ¶ 6(a) (operational requirements); *id.* ¶¶ 8(a)–(b) (recordkeeping requirements).)  Indeed, Franchisor Defendants do not dispute the existence of these conditions but rather challenge Plaintiffs' interpretation that such conditions indicate control.  (*See* Moving Defs.' Reply Mem. of Law in Supp. of Mot. ("Defs.' Reply") 3 (Dkt. No. 88) (arguing that "a laundry list of non-employee related brand requirements . . . cannot satisfy the functional control test").)

885 F. Supp. 2d 590, 599 (E.D.N.Y. 2012) (same); *Harris v. Attorney Gen. of the U.S.*, 657 F. Supp. 2d 1, 10 (D.D.C. 2009) ("While contracts manifest the parties' intent, they do not necessarily reflect 'economic realities.'").

In this Action, the "economic realities" as pled by Plaintiffs plausibly support an inference that Franchisor Defendants exerted control over Hotel employees.  Indeed, many of the Second Amended Complaint's allegations mirror those found by other courts to be suggestive of joint employer status.  *See, e.g.*, *Cordova v. SCCF, Inc.*, No. 13-CV-5665, 2014 WL 3512838, at *5 (S.D.N.Y. July 16, 2014) (finding that the complaint "plausibly pleaded facts suggestive of joint employment," such as the provision of "materials for use in training . . . and monitoring employee performance," "the right to visit the facilities within its network to determine if they were in compliance with those policies and practices," and the required "use [of] certain record keeping systems," which meant the defendant "knew or should have known of, and had the authority to exercise control over, the accuracy of records concerning [the] [p]laintiffs' hours and wages"); *Cano v. DPNY, Inc.*, 287 F.R.D. 251, 260 (S.D.N.Y. 2012) (finding allegation that the proposed franchisor defendant "had the right to inspect the [franchisee's] stores to ensure compliance with all of their policies" supported joint employer status); *accord Orozco v. Plackis*, No. 11-CV-703, 2012 WL 2577522, at *2–3, 6 (W.D. Tex. July 3, 2012) (report and recommendation) (denying motion to dismiss where the complaint alleged, inter alia, that the franchisor defendant "selected and set up timekeeping systems used at each [franchise store]," "trained each individual store owner or manager to use them," and "made regular announced and unannounced visits [to the independently owned franchise store]" to monitor the employees'

work).[10] For example, like the pleadings in *Olvera*, *see* 73 F. Supp. 3d at 207 (finding that the complaint "state[d] a plausible claim that the franchisor defendants were [the] plaintiffs' joint employers" by alleging, inter alia, that the franchisor defendants "guided franchisees on 'how to hire and train employees'" and "required franchises to 'employ recordkeeping' of operations"), the Second Amended Complaint points to training and recordkeeping requirements as indicators of Franchisor Defendants' control, (*see* SAC ¶¶ 167–70, 171(b)–(c)). Plaintiffs also similarly plead facts regarding the monitoring of Hotel employees, (*compare, e.g.*, *id.* ¶ 179 (alleging that Franchisor Defendants "performed regular inspections of work performed by employees"), *with Olvera*, 73 F. Supp. 3d at 207 (considering allegation that the franchisor defendants "monitored employee performance" to support an inference of control)), and the inspections/audits of the Hotel, (*compare* SAC ¶ 175 (alleging "both scheduled and unannounced audits and inspections of the Hotel"), *with Olvera*, 73 F. Supp. 3d at 207 (denying motion to dismiss where the complaint alleged, inter alia, "that the franchisor defendants had the right to inspect the facilities and operations of franchises" as well as "to audit any franchise's financial records")). As specific illustrations by which Franchisor Defendants "set and enforced requirements for the operation of franchises," *Olvera*, 73 F. Supp. 3d at 207, the Second Amended Complaint alleges

---

[10] "The Second Circuit has not yet considered whether a franchisor can qualify as a joint employer . . . ." *Cordova*, 2014 WL 3512838, at *4. To the Court's knowledge, only four decisions within the Second Circuit have ruled on the issue under the Rule 12(b)(6) standard, all of which found that the plaintiffs pled sufficient facts to survive a motion to dismiss. *See Benitez*, 2015 WL 803069, at *2 (holding that "[w]hether a franchisor . . . is a joint employer . . . cannot be resolved on a pre-answer motion to dismiss"); *Cordova*, 2014 WL 3512838, at *5 (denying motion to dismiss where the plaintiffs "plausibly pleaded facts suggestive of joint employment"); *Olvera*, 73 F. Supp. 3d at 208 ("Although [the] plaintiffs may ultimately fail to prove that the franchisor defendants were joint employers under the FLSA and NYLL, they have pled enough facts to survive a motion to dismiss, and are thus entitled to test their claims in discovery."); *Cano*, 287 F.R.D. at 260 (granting leave to file a second amended complaint because "the plaintiffs . . . pled enough to survive a motion to dismiss").

requirements for the purchase of certain furniture and equipment, (*see* SAC ¶ 171(d)), participation in certain marketing and guest programs, (*see id.* ¶ 171(e)), compliance with established conditions for operation, (*see id.* ¶ 172), and the use of a particular business software system, (*see id.* ¶ 173).

Moreover, Plaintiffs' point to Franchisor Defendants' right to terminate the franchise in the event of non-compliance with QA requirements, (*see id.* ¶ 183; *cf.* Franchise Agreement ¶ 14(a)), which they allege would lead to "the termination of the employees' employment at [the] [H]otel," (*see* SAC ¶ 183).[11]  By way of illustration, the Second Amended Complaint highlights one occasion on which "Franchisor Defendants exercised such termination rights" upon a franchisee's supposed failure of QA inspections.  (*Id.* ¶ 184.)[12]  While other courts have noted that "the power to terminate a franchisee alone is not sufficient to create a joint employment relationship," *Singh v. 7-Eleven, Inc.*, No. 05-CV-4534, 2007 WL 715488, at *4 (N.D. Cal. Mar. 8, 2007), Plaintiffs by no means rely on this allegation alone, as discussed above.

---

[11] In their reply, Franchisor Defendants assert that aside from "a reservation of rights clause, no sanctions for non-compliance are specified." (Defs.' Reply 7.)  This, however, directly contradicts the terms of the Franchise Agreement, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ (Franchise Agreement ¶ 14(a).)
Because this footnote quotes from a redacted portion of the Franchise Agreement, the Opinion will be redacted for public filing as well as filed under seal.

[12] In challenging this allegation as "unreliably anecdotal," (Defs.' Reply 8), Franchisor Defendants suggest a heightened standard that is inappropriate at this early stage, *see Twombly*, 550 U.S. at 570 (explaining that, to survive a motion to dismiss, a plaintiff must allege "only enough facts to state a claim to relief that is plausible on its face"); *Francis v. Donahoe*, No. 13-CV-359, 2014 WL 1292191, at *1 (D. Conn. Mar. 31, 2014) ("A motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6) is designed merely to assess the legal feasibility of a complaint, not to assay the weight of evidence which might be offered in support thereof." (internal quotation marks omitted)).

Indeed, based on a "review of the totality of the circumstances," *Barfield*, 537 F.3d at 142, the Court finds that Plaintiffs have pled sufficient facts to plausibly suggest functional control, *see Olvera*, 73 F. Supp. 3d at 204 (explaining that a complaint only must "plead facts sufficient to allege a plausible claim that the franchisor defendants were the plaintiffs' 'employers' under the FLSA and NYLL").[13]  Though Plaintiffs may ultimately fail to prove that Franchisor Defendants were joint employers under the FLSA and NYLL, the Second Amended Complaint has set forth enough allegations to survive a motion to dismiss, and Plaintiffs are thus entitled to test their claims in discovery.

---

[13] The decisions on which Franchisor Defendants rely are not to the contrary, first and foremost because none of those cases addresses the question of whether a *franchisor* qualifies as a joint employer. *See Lopez v. Acme Am. Envtl. Co.*, No. 12-CV-511, 2012 WL 6062501, at *4–5 (S.D.N.Y. Dec. 6, 2012) (analyzing whether companies within an "integrated enterprise" exercised control over the plaintiffs for purposes of the FLSA or NYLL); *Wolman v. Catholic Health Sys. of Long Is., Inc.*, 853 F. Supp. 2d 290, 297–99 (E.D.N.Y. 2012) (analyzing FLSA claims against entities in an "integrated enterprise"), *aff'd in part, rev'd in part sub nom. Lundy v. Catholic Health Sys. of Long Is. Inc.*, 711 F.3d 106 (2d Cir. 2013); *Diaz v. Consortium for Worker Educ., Inc.*, No. 10-CV-1848, 2010 WL 3910280, at *3 (S.D.N.Y. Sept. 28, 2010) (assessing employment relationship where two entities "shared a common goal" in a program's administration).  Additionally, the facts alleged in the Second Amended Complaint more strongly support joint employer status by suggesting a higher degree of control exercised by Franchisor Defendants over Plaintiffs' duties and the manner in which they perform those duties. *See Lopez*, 2012 WL 6062501, at *5 (granting motion to dismiss where, in "a collection of companies that perform separate services," the moving defendants "had no control over" the plaintiffs); *Wolman*, 853 F. Supp. 2d at 298 (dismissing FLSA claims because "assertions that [the] [d]efendants are an 'integrated enterprise,' 'have common ownership,' and are 'engage[d] in a joint venture' are . . . insufficient" to plead joint employer status (third alteration in original) (citations omitted)); *Diaz*, 2010 WL 3910280, at *4 (granting motion to dismiss where the complaint "contain[ed] no facts that indicate that [the defendant] had any direct role in managing the plaintiffs, hiring or firing the plaintiffs, determining their working hours, or maintaining employment records").

### III. Conclusion

For the foregoing reasons, Franchisor Defendants' Motion To Dismiss is denied. The Clerk of the Court is respectfully requested to terminate the pending Motion. (Dkt. No. 183.)

SO ORDERED.

DATED: September 14, 2016
White Plains, New York

KENNETH M. KARAS
UNITED STATES DISTRICT JUDGE