UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------------X

CARLOS OCAMPO, IGOR MOROZOV, JORGE
VILLANUEVA, AMAURY ORTIZ, PLINIO RETANA,
MANUEL CALDERON, SUTEE MONCHAITANAPAT,
DOUGLAS MOLINA, NELSON DELAROSA, FELIPE
BARRIGA, SONIA GONZALEZ, ALBERTO GONZALES,
PANFILO ESCOBAR, EDWARD SURIEL, ALEJANDRO
GONZALEZ, FRANCISCO SOLIS, CANDIDO SANCHEZ,
ESTELA PENALO DIAZ, LUCIA ROJAS-ESCOLASTICO,
JENNYS MOYA, CLARISA ROJAS-DELAROSA,
HILARIO KU, and MARIA LAMOTH, on behalf of
themselves and all others similarly situated,

Case No. 7:14-cv-09614-KMK

FOURTH AMENDED
CLASS & COLLECTIVE
ACTION COMPLAINT

JURY TRIAL DEMANDED

                                                    Plaintiffs,

                        -against-

455 HOSPITALITY LLC, DOUBLETREE FRANCHISE LLC,
DOUBLETREE HOTEL SYSTEMS, INC., RICHARD
FRIEDMAN, DAVID RIBBENS, NORMA ABDOU,
NURUL HAQUE, DOREEN CLARKE, ACCORD
HUMAN RESOURCES 14, INC. a/k/a ACCORD HUMAN
RESOURCES OF NEW YORK, INC., TRINET HR III, INC.
a/k/a TRINET HR CORPORATION, TEDDY LICHTSCHEIN,
ELIEZER SCHEINER, ALEXANDER SIROTKIN, EFRAIM
ELCHONEN, JORDAN LLC and BROWNE & APPEL, LLC,

                                                    Defendants.
-------------------------------------------------------------------------X

Plaintiffs Carlos Ocampo ("Ocampo"), Igor Morozov ("Morozov"), Jorge Villanueva

("Villanueva"), Amaury Ortiz ("Ortiz"), Plinio Retana ("Retana"), Manuel Calderon

("Calderon"), Sutee Monchaitanapat ("Monchaitanapat"), Douglas Molina ("Molina"), Nelson

Delarosa ("Delarosa"), Felipe Barriga ("Barriga"), Sonia Gonzalez ("S. Gonzalez"), Alberto

Gonzales ("Gonzales"), Panfilo Escobar ("Escobar"), Edward Suriel ("Suriel"), Alejandro

Gonzalez ("A. Gonzalez"), Francisco Solis ("Solis"), Candido Sanchez ("Sanchez"), Estela Penalo

Diaz ("Diaz"), Lucia Rojas-Escolastico ("Rojas-Escolastico"), Jennys Moya ("Moya"), Clarisa

Rojas-DeLaRosa ("Rojas-DeLaRosa"), Hilario Ku ("Ku"), and Maria Lamoth ("Lamoth")

(collectively "Plaintiffs"), by their attorneys, Smith, Buss & Jacobs, LLP and Vincent Volino PLLC, for their Complaint against defendants 455 Hospitality LLC ("455 Hospitality"), Doubletree Franchise LLC ("Doubletree LLC"), Doubletree Hotel Systems, Inc. ("Doubletree HSI"), Richard Friedman ("Friedman"), David Ribbens ("Ribbens"), Norma Abdou ("Abdou"), Nurul Haque ("Haque"), Doreen Clarke ("Clarke"), Accord Human Resources 14, Inc. a/k/a Accord Human Resources of New York, Inc. ("Accord"), TriNet HR III, Inc. a/k/a TriNet HR Corporation ("TriNet"), Teddy Lichtschein ("Lichtschein"), Eliezer Scheiner ("Scheiner"), Alexander Sirotkin ("Sirotkin"), Efraim Elchonen ("Elchonen"), Jordan LLC ("Jordan") and Browne & Appel, LLC ("Browne & Appel"), (collectively "Defendants"), allege as follows:

<u>INTRODUCTION</u>

1.      Plaintiffs have all been employed to work at DoubleTree by Hilton Hotel, located at 455 Broadway, Tarrytown, New York 10591 (the "Hotel"). Plaintiffs consist of banquet servers, housemen, a houseman supervisor, banquet supervisors, restaurant waiters, a room service water, housekeepers and a kitchen sous chef employed to work at the Hotel.

2.      Plaintiffs Ocampo, Morozov, Villanueva, Ortiz, Retana, Calderon, Monchaitanapat, Molina, Delarosa, Barriga, S. Gonzalez, Gonzales, Escobar, Suriel, A. Gonzalez, Solis, Sanchez and Ku shall be collectively referred to herein as the "Food & Beverage Plaintiffs."

3.      Plaintiffs Diaz, Rojas-Escolastico, Moya and Rojas-DeLaRosa shall be collectively referred to herein as the ("Housekeeping Plaintiffs").

4.      Defendants 455 Hospitality, Doubletree LLC, Doubletree HSI, Friedman, Ribbens, Abdou, Haque, Accord, TriNet, CUSA, Grand Bay, Gevity and Engage shall be collectively referred to herein as the "Food and Beverage Defendants."

5.      Defendants 455 Hospitality, Doubletree LLC, Doubletree HSI, Friedman, Clarke, Accord, TriNet, CUSA, Grand Bay, Gevity and Engage shall be collectively referred to herein as the "Housekeeping Defendants."

6.      By way of this action, Plaintiffs seek to recover damages they have incurred as a result of oppressive, unlawful, punitive and cruel employment practices perpetrated in violation of the Fair Labor Standards Act ("FLSA"), New York Labor Law ("NYLL") and applicable Federal and State regulations.  Plaintiffs' claims include, *inter alia,* claims for unpaid minimum wages, overtime pay, gratuities, tips, the failure to maintain records and wage statement violations.

7.      The Food & Beverage Defendants enforced unlawful policies and practices that deprived employees of overtime pay, much of which was documented in sign-in sheets and/or other Hotel records. Abdou confirmed the Hotel's policy and practice of refusing to pay overtime pay when she told banquet servers, in sum and substance, that the Hotel's policy was to pay a fixed amount of hours for parties booked at the Hotel no matter how many hours they worked. Consistent with the oppressive policies and practices enforced within the Food & Beverage Department, the employers withheld overtime pay from the plaintiff sous chef who worked in the banquet kitchen.

8.      Further, the Food & Beverage Defendants administered an unlawful tip pool which deprived the Food & Beverage Plaintiffs from receiving the full amounts of tips/gratuities owed to them. In addition, the Food & Beverage Defendants  violated the NYLL by failing to provide to the Food & Beverage Plaintiffs the written records required by the NYLL that verify how the tip pool compensation was calculated, despite repeated requests for such information. Defendants have also, upon information and belief, violated the NYLL by accepting and retaining an 11% "service charge" that banquet customers of the Hotel have regularly paid. Defendants have further

violated the FLSA and the NYLL by sharing tips with others who were not entitled to receive tips and by failing to otherwise properly administer the tip pool.

9.      Upon information and belief, Ribbens, Abdou, and Haque regularly participated in a management tip pool by which they confiscated and kept tip monies that customers have given to management to be passed on to the Food & Beverage Plaintiffs in violation of the FLSA & NYLL. As a result of these confiscations, the Food & Beverage Defendants were barred from taking the tip credits they took against employees' wages, and under the FLSA & NYLL, the Food & Beverage Defendants are now liable to the Food and Beverage Plaintiffs for these tip credit amounts.

10.     After the Food & Beverage Defendants' violations of law were reported to the New York Department of Labor by certain plaintiffs, the Food & Beverage Defendants engaged in a policy and practice of retaliating against them by, among other things, reducing their hours in violation of the FLSA and the NYLL.

11.     The Housekeeping Plaintiffs also suffered through the oppressive policies and practices that are enforced against non-exempt employees throughout the Hotel, including the failure to pay them overtime; the unlawful deduction for lunch expenses even when they did not eat lunch provided by the Hotel; the failure to pass customer tips along to them; and the failure to reimburse them for the costs of purchasing cleaning supplies, equipment and tools.

12.     Finally, and perhaps most egregiously, non-exempt employees employed throughout the Hotel including Plaintiffs have been subjected to a constant hostile work environment while working the jobs they desperately need to support their families. The General Manager of the Hotel, Friedman, fosters an oppressive and discriminatory culture by which he regularly demeans employees who do not speak English as a first language because of their accents

4

and manner of speaking, and regularly makes unwelcome sexually explicit remarks in the presence of employees. Upon information and belief, when an employee challenged Friedman for his discriminatory ways, he responded in words or substance, that he "discriminates against all races equally."

13.    Ribbens has enforced an intimidation management style whereby he regularly berated employees, all grown men and women, in public when they did not meet his ever evolving requirements. Defendant Clarke is similarly abusive.

14.    Clark assigns the Housekeeping Plaintiffs excessive workloads which often cannot be complete without working through break periods and/or working past scheduled hours.

15.    The Housekeeping Plaintiffs have not been paid for all hours worked because hours have been "shaved," so that they were not paid for all of the time in which they have worked.

16.    The Housekeeping Plaintiffs also have worked "off the clock" at various times by, *inter alia*, "clocking out" and then returning to work either during a meal break or at the end of a scheduled shift.

17.    If the Housekeeper Plaintiffs dared to question the information shown on their paychecks, Defendant Clarke became infuriated and made threats of punishment.

18.    The Housekeeping Plaintiffs assert that they have been forced to work under constant stress as they try to perform their duties in a hostile work environment imposed on them by Defendant Clarke.

19.    The Housekeeping Plaintiffs were deprived of tips and gratuities: (a) due to them being confiscated and/or misappropriated; and (b) due to the improper administration of an unlawful tip pool.

20.     Further, Doubletree HSI and Doubletree LLC (collectively referred to herein as the "Franchisor Defendants"), who are the franchisors of the Doubletree Hilton franchise owned by 455 Hospitality, are joint employers of Plaintiffs who are liable for Plaintiffs' damages because they exercise control over the physical manner in which Plaintiffs must perform their jobs through, among other things: the Franchisor Defendants' enforcement of the Doubletree Quality Assurance ("QA") Program; through regular inspections of the Hotel to determine if employees' work meets exacting QA standards; mandated employee training programs; and the mandatory periodic review of Hotel financial records by the Franchisor Defendants' auditors which, upon information and belief, likely contained information concerning the unlawful employment practices of Defendants, including, but not limited to the confiscation of gratuities and unlawful tip pooling.

21.     Plaintiffs allege liability against the following defendants based on the doctrine of piercing the corporate veil: Defendants Lichtschein, Scheiner, Sirotkin, Jordan and Browne & Appel.

22.     Plaintiffs also allege that Defendants Lichtschein, Scheiner, Sirotkin and Elchonen are individually liable under FLSA and NYLL due to the operational control of 455 Hospitality which they exerted.

23.     For all these reasons, explained in greater detail herein, Defendants are liable to Plaintiffs and all others similarly situated in an amount in excess of $10,000,000.00 as a result of Defendants' violations of the FLSA, the NYLL and applicable Federal and State regulations.

<u>JURISDICTION AND VENUE</u>

24.     This Court has jurisdiction over Plaintiffs' federal law claims pursuant to 28 U.S.C. § 1331 because they arise under the laws of the United States.is Court has jurisdiction over Plaintiffs' state law claims pursuant to 28 U.S.C. § 1367(a) because the state law claims are so

related to the federal law claims in that they form part of the same case or controversy under Article III of the United States Constitution.

25.    Venue is proper in the Southern District of New York pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claims occurred in this District.

<u>THE PARTIES</u>

26.    Plaintiff Ocampo is an individual who resides in Bergen County, New Jersey.

27.    Plaintiff Morozov is an individual who resides in Kings County, New York.

28.    Plaintiff Villanueva is an individual who resides Fairfield County, Connecticut.

29.    Plaintiff Ortiz is an individual who resides in Fairfield County, Connecticut.

30.    Plaintiff Retana is an individual who resides in Westchester County, New York.

31.    Plaintiff Calderon is an individual who resides in Westchester County, New York.

32.    Plaintiff Monchaitanapat is an individual who resides in Westchester County, New York.

33.    Plaintiff Molina is an individual who resides in Westchester County, New York.

34.    Plaintiff Delarosa is an individual who resides in Westchester County, New York.

35.    Plaintiff Barriga is an individual who resides in Westchester County, New York.

36.    Plaintiff S. Gonzalez is an individual who resides in Putnam County, New York.

37.    Plaintiff Gonzales is an individual who resides in Westchester County, New York.

38.    Plaintiff Escobar is an individual who resides in Westchester County, New York.

39.    Plaintiff Suriel is an individual who resides in Westchester County, New York.

40.    Plaintiff A. Gonzalez is an individual who resides in Westchester County, New York.

41.    Plaintiff Solis is an individual who resides in Westchester County, New York.

42.    Plaintiff Sanchez is an individual who resides in Westchester County, New York.

43.    Plaintiff Diaz is an individual who resides in Westchester County, New York.

44.    Plaintiff Rojas-Escolastico is an individual who resides in Westchester County, New York.

45.    Plaintiff Moya is an individual who resides in Westchester County, New York.

46.    Plaintiff Rojas-DeLaRosa is an individual who resides in Westchester County, New York.

47.    Plaintiff Ku is an individual who resides in Westchester County, New York.

48.    Plaintiff Lamoth is an individual who resides in Dutchess County, New York.

49.    At relevant times, each of the Plaintiffs was and/or is an "employee" of Defendants, through their work at the Hotel, as defined by the FLSA and the NYLL.

50.    Plaintiffs were not involved in interviewing, selecting, hiring or firing employees.

51.    Plaintiffs were not involved in adjusting employees' rates of pay or hours of work, or in directing the work of other employees.

52.    Plaintiffs were not involved in evaluating employees' productivity or efficiency for the purpose of recommending promotions or other changes in status, or in handling employee complaints and grievances.

53.    Plaintiffs were not involved in disciplining employees.

54.    Plaintiffs were not involved in planning the work, determining the techniques to be used, or apportioning the work among the employees.

8

55.     Plaintiffs were not responsible for providing for the safety and security of the employees or the property, planning and controlling the budget, or monitoring or implementing legal compliance measures.

56.     Accordingly, at all relevant times, Plaintiffs were non-exempt employees covered under the FLSA and the NYLL.

57.     Defendant 455 Hospitality is a limited liability company organized under the laws of the State of New York and is the owner, operator and manager of the Hotel.

58.     Upon information and belief, 455 Hospitality does business as "DoubleTree by Hilton Hotel Tarrytown."

59.     Upon information and belief, the members of 455 Hospitality are Browne & Appel, a New Jersey limited liability company, Lichtschein, Scheiner, and Jordan.

60.     Upon information and belief, Browne & Appel is owned by Sirotkin and Sirotkin is a Member of Browne & Appel.

61.     Upon information and belief, Jordan is the managing member of 455 Hospitality. Sirotkin and Lichtschein have been the managing member of Jordan, and therefore Sirotkin and Lichtschein have been the substantive managing members of 455 Hospitality.

62.     Upon information and belief, 455 Hospitality is a franchisee of Defendant Doubletree LLC and/or Defendant Doubletree HSI.

63.     Upon information and belief, Doubletree LLC is a limited liability company organized under the laws of the State of Delaware, with principal offices located at 7930 Jones Branch Drive, McClean, Virginia 22102.

64.     Upon information and belief, Defendant Doubletree HSI is a corporation organized under the laws of the state of Arizona, with principal offices located at 7930 Jones Branch Drive, McClean, Virginia 22102.

65.     Upon information and belief, the Franchisor Defendants have granted franchises to operate Doubletree by Hilton Hotels in New York under the Doubletree "System" and granted licenses to franchisees, including 455 Hospitality.

66.     Upon information and belief, Defendant Friedman is an individual residing in Westchester County, New York, who is, and has been, the General Manager of the Hotel.

67.     Upon information and belief, as the General Manager, Friedman is, and has been responsible for the operation of all aspects of the Hotel and all departments within it, and is, and has been, the supervisor of all of the Plaintiffs.

68.     Upon information and belief, Defendant Ribbens is an individual residing in Rockland County, New York, who was the Food and Beverage Director of the Hotel.

69.     Upon information and belief, as the Food & Beverage Director, Ribbens was responsible for the operation of all aspects of the Hotel's Food & Beverage Department including, but not limited to, banquets, the Hotel restaurant, and the banquet sales department. Ribbens was also the supervisor of all of the employees employed within the Food and Beverage Department, including all of the Food & Beverage Plaintiffs.

70.     Upon information and belief, Defendant Abdou is an individual residing in Westchester County, New York, who is, and has been, a Banquet Manager of the Hotel as well as a supervisor of the Food & Beverage Plaintiffs.

71.    Upon information and belief, Defendant Haque is an individual residing in Bronx County, New York, who is, and has been, a Banquet Manager of the Hotel as well as a supervisor of the Food & Beverage Plaintiffs.

72.    Upon information and belief, Defendant Clarke is an individual residing in Westchester County, New York, who is, and has been, the Director of Housekeeping of the Hotel as well as a supervisor of all of the Housekeeping Plaintiffs.

73.    Upon information and belief, Accord is a corporation organized under the laws of the State of New York, with principal offices located at 1100 San Leandro Blvd., Suite 400, San Leandro, CA 94577, who has, at relevant times, been an employer of Plaintiffs by contract.

74.    Upon information and belief, TriNet is a corporation organized under the laws of the State of California, with principal offices located at 1100 San Leandro Blvd., Suite 400, San Leandro, CA 94577, who has, at relevant times, been an employer of Plaintiffs by contract.

75.    Defendant Lichtschein is an individual who, upon information belief, resides in Spring Valley, New York, which is located in the County of Rockland, State of New York.

76.    At all relevant times, Defendant Lichtschein was a member of 455 Hospitality.

77.    Scheiner is an individual who, upon information and belief, resides in Suffern, New York, which is located in the County of Rockland, State of New York.

78.    At all relevant times, Defendant Scheiner was a member of 455 Hospitality.

79.    Sirotkin is an individual who, upon information and belief, resides in Short Hills, New Jersey, which is located in the County of Essex, State of New Jersey.

80.    At all relevant times, Defendant Sirotkin was a member of Defendant Browne and Appel, which was a member of 455 Hospitality.

81.    Defendant Elchonen is an individual who, upon information and belief, resides in

Brooklyn, New York, which is located in the County of Kings, State of New York.

82.    Defendant Elchonen was, and is, a high-ranking officer and employee of 455 Hospitality who began his employment with 455 Hospitality in or about January of 2012 and has served as its Chief Financial Officer ("CFO") and Owner's Representative from the start of his employment through the present time.

83.    Jordan is a limited liability company formed and existing under the laws of the State of New York.

84.    At all relevant times, Defendant Jordan was a member of 455 Hospitality.

85.    Upon information and belief, Browne & Appel is a limited liability company formed and existing under the laws of the State of New Jersey.

86.    At all relevant times, Defendant Browne & Appel was a member of 455 Hospitality.

87.    At all relevant times, Defendants, including the Franchisor Defendants, have, and continue to, employ and/or jointly employ Plaintiffs and similarly situated employees within the meaning of 29 U.S.C. § 203 and NYLL §§ 2(7) and 190(2).

88.    Upon information and belief, the Franchisor Defendants perform related activities through common control for a common business purpose and therefore constitute a single "enterprise" within the meaning of 29 U.S.C. § 203.

89.    Upon information and belief, at all relevant times, the Franchisor Defendants were engaged in commerce or in an industry or activity affecting commerce in an enterprise with annual gross volume sales or business done of not less than $500,000.

<u>COLLECTIVE ACTION ALLEGATIONS</u>

90.    Plaintiffs bring their first and third claims for relief under the FLSA as an "opt-in" collective action, pursuant to FLSA Section 16(b), 29 U.S.C. § 216(b), on behalf of themselves,

as well as all similarly situated persons who have worked for, or currently work for, Defendants at the Hotel at all relevant times comprised of all non-exempt employees including banquet servers, banquet supervisors, houseman, restaurant waiters, room service waiters, housekeepers and kitchen workers (the "Collective Action Members").

91.    Consistent with Defendants' policy and pattern or practice, Plaintiffs and the employees within the FLSA Collective were not paid minimum wages for all hours worked and overtime compensation for all hours worked beyond 40 per workweek.

92.    All of the work that Plaintiffs and the FLSA Collective have performed has been assigned by Defendants, and/or Defendants have been aware of all of the work that Plaintiffs and the FLSA Collective have performed.

93.    As part of its regular business practice, Defendants have intentionally, willfully, and repeatedly engaged in a pattern, practice, and/or policy of violating the FLSA with respect to Plaintiffs and the employees within the FLSA Collective. This policy and pattern or practice includes, but is not limited to:

(a)    willfully failing to pay its employees, including Plaintiffs and the FLSA Collective, minimum wages for all hours worked  and premium overtime wages for hours that they worked in excess of 40 hours per workweek; and

(b)    willfully failing to record all of the time that its employees, including Plaintiffs and the FLSA Collective, have worked for the benefit of Defendants.

94.    Defendants' unlawful conduct, as described herein, is pursuant to an employment policy or practice of minimizing labor costs by failing to record all hours worked by employees in order to gain a financial benefit at the expense of their employees.

95.     Defendants are aware or should have been aware that federal law required them to pay employees minimum wage for all of the hours they worked.

96.     Defendants are aware or should have been aware that federal law required them to pay employees performing non-exempt duties an overtime premium for hours worked in excess of 40 per workweek.

97.     Plaintiffs and the FLSA Collective perform or performed the same primary duties.

98.     Defendants' unlawful conduct has been widespread, repeated, and consistent.

## CLASS ACTION ALLEGATIONS

99.     Plaintiffs bring the second, fourth, fifth, sixth, seventh, eighth, ninth, tenth, eleventh, twelfth, thirteenth, fourteenth, fifteenth, sixteenth, seventeenth, eighteenth, nineteenth, twentieth and twenty-first claims for relief of herein, consisting of claims arising pursuant to New York law under Rule 23 of the Federal Rules of Civil Procedure, on behalf of themselves and three classes of persons (collectively, the "Rule 23 Class") consisting of:

> Class 1 - All persons who work or have worked in the Hotel Food & Beverage Department as non-exempt employees in any tipped position including banquet servers, banquet supervisors, restaurant waiters and room service waiters and/or similar persons employed at the Hotel during the period of time beginning six years prior to the date of the filing of the Complaint in the instant action and continuing through the date of the final judgment in the instant action.

> Class 2 - All persons who work or have worked in the Hotel Food & Beverage Department as non-exempt employees in any non-tipped position including housemen, houseman supervisors, kitchen workers and/or similar persons employed at the Hotel during the period of time beginning six years prior to the date of the filing of the Complaint in the instant action and continuing through the date of the final judgment in the instant action.

> Class 3 - All persons who work or have worked in the Hotel Housekeeping Department as non-exempt workers including housekeepers and/or similar persons employed at the Hotel during

the period of time beginning six years prior to the date of the filing of the Complaint in the instant action and continuing through the date of the final judgment in the instant action.

100.    Excluded from the Rule 23 Class are Defendants, Defendants' legal representatives, officers, directors, assigns, and successors, or any individual who has, or who at any time during the class period has had, a controlling interest in Defendants; and all persons who will submit timely and otherwise proper requests for exclusion from the Rule 23 Class.

101.    The members of the Rule 23 Class are so numerous that joinder of all members is impracticable.

102.    Upon information and belief, the total size of the Rule 23 Class is at least 450 individuals. Although the precise number of such employees is unknown, the facts on which the calculation of that number depends are presently within the sole control of Defendants.

103.    Defendants have acted or have refused to act on grounds generally applicable to the Rule 23 Class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the Rule 23 Class as a whole.

104.    Common questions of law and fact exist as to Class 1 that predominate over any questions only affecting them individually and include, but are not limited to, the following:

(a)    whether defendants other than Clarke (the "Class 1 Defendants") failed to pay Plaintiffs who worked in non-exempt tipped positions within the Hotel's Food & Beverage Department (the "Class 1 Plaintiffs") and Class 1 Members minimum wages for all of the hours they worked;

(b)    whether the Class 1 Defendants correctly compensated the Class 1 Plaintiffs and the Class 1 Members for hours worked in excess of 40 hours per workweek;

(c)    whether the Class 1 Defendants failed to provide the Class 1 Plaintiffs and Class 1 Members spread-of-hours pay;

(d)    whether the Class 1 Defendants misappropriated tips and/or "service charges" from the Class 1 Plaintiffs and Class 1 Members by demanding, handling, pooling, counting, distributing, accepting, and/or retaining tips and/or service charges paid by customers that were intended for Class 1 Plaintiffs and Class 1 Members, and/or which customers reasonably believed to be gratuities for the Class 1 Plaintiffs and Class 1 Members;

(e)    whether the Class 1 Defendants distributed a portion of the tips paid by customers to persons who were not entitled to receive tips under the NYLL;

(f)    whether the Class 1 Defendants failed to keep true and accurate time and pay records for all hours worked by the Class 1 Members, and other records required by the NYLL;

(g)    whether the Class 1 Defendants failed to furnish the Class 1 Plaintiffs and Class 1 Members with an accurate statement of wages, hours worked, rates paid, gross wages, and the claimed tip allowance as required by the NYLL;

(h)    whether the Class 1 Defendants failed to provide a uniform laundering allowance to the Class 1 Plaintiffs and Class 1 Members;

(i)    whether the Class 1 Defendants failed to provide meal periods to the Class 1 Plaintiffs and Class 1 Members;

(j)    whether the Class 1 Defendants failed to provide notice and information about employment laws;

(k)    whether the Class 1 Defendants unlawfully made mandatory deductions from the Class 1 Plaintiffs' paychecks and from Class 1 Members' paychecks;

(l)    whether the Class 1 Defendants' policy of failing to pay workers was instituted willfully or with reckless disregard of the law; and

(m)    the nature and extent of class-wide injury and the measure of damages for

those injuries.

105.    Common questions of law and fact exist as to Class 2 that predominate over any questions only affecting them individually and include, but are not limited to, the following:

(a)    whether defendants other than Clarke (the "Class 2 Defendants") failed to pay Plaintiffs who worked in non-exempt non-tipped positions within the Hotel's Food & Beverage Department (the "Class 2 Plaintiffs") and the Class 2 Members' minimum wages for all of the hours they worked;

(b)    whether the Class 2 Defendants correctly compensated the Class 2 Plaintiffs and the Class 2 Members for hours worked in excess of 40 hours per workweek;

(c)    whether the Class 2 Defendants failed to provide the Class 2 Plaintiffs and Class 2 Members spread-of-hours pay;

(d)    whether the Class 2 Defendants failed to keep true and accurate time and pay records for all hours worked by the Class 2 Plaintiffs and Class 2 Members, and other records required by the NYLL;

(e)    whether the Class 2 Defendants failed to furnish the Class 2 Plaintiffs and Class 2 Members with an accurate statement of wages, hours worked, rates paid, gross wages, and the claimed tip allowance as required by NYLL;

(f)    whether the Class 2 Defendants failed to provide a uniform laundering allowance to the Class 2 Plaintiffs and Class 2 Members;

(g)    whether the Class 2 Defendants failed to provide meal periods to the Class 2 Plaintiffs and Class 2 Members;

(h)    whether the Class 2 Defendants failed to provide notice and information about employment laws;

17

(i)     whether the Class 2 Plaintiffs unlawfully made mandatory deductions from the Class 2 Plaintiffs' paychecks and from Class 2 Members' paychecks;

(j)     whether the Class 2 Defendants' policy of failing to pay workers was instituted willfully or with reckless disregard of the law; and

(k)     the nature and extent of class-wide injury and the measure of damages for those injuries.

106.     Common questions of law and fact exist as to Class 3 that predominate over any questions only affecting them individually and include, but are not limited to, the following:

(a)     whether defendants other than Ribbens, Abdou and Haque (the "Class 3 Defendants") failed to pay Plaintiffs who worked in non-exempt positions within the Hotel's Housekeeping Department (the "Class 3 Plaintiffs") and Class 3 Members minimum wages for all of the hours they worked;

(b)     whether the Class 3 Defendants correctly compensated the Class 3 Plaintiffs and the Class 3 Members for hours worked in excess of 40 hours per workweek;

(c)     whether the Class 3 Defendants failed to provide the Class 3 Plaintiffs and Class 3 Members spread-of-hours pay;

(d)     whether the Class 3 Defendants misappropriated tips and/or service charges from the Class 3 Plaintiffs and Class 3 Members by demanding, handling, pooling, counting, distributing, accepting, and/or retaining tips and/or service charges paid by customers that were intended for the Class 3 Plaintiffs and Class 3 Members, and/or which customers reasonably believed to be gratuities for the Class 3 Plaintiffs and Class 3 Members;

(e)     whether the Class 3 Defendants distributed a portion of customer tips to workers who are not entitled to receive tips under the NYLL;

(f)      whether the Class 3 Defendants failed to keep true and accurate time and pay records for all hours worked by the Class 3 Plaintiffs and Class 3 Members, and other records required by the NYLL;

(g)      whether the Class 3 Defendants failed to furnish the Class 3 Plaintiffs and Class 3 Members with an accurate statement of wages, hours worked, rates paid, gross wages, and the claimed tip allowance as required by the NYLL;

(h)      whether the Class 3 Defendants failed to provide a uniform laundering allowance to the Class 3 Plaintiffs and Class 3 Members;

(i)      whether the Class 3 Defendants failed to provide meal periods to the Class 3 Plaintiffs and Class 3 Members;

(j)      whether the Class 3 Defendants failed to provide notice and information about employment laws;

(k)      whether the Class 3 Defendants unlawfully made mandatory deductions from the Class 3 Plaintiffs' paychecks and from Class 3 Members' paychecks;

(l)      whether the Class 3 Defendants failed to pay the Class 3 Plaintiffs and the Class 3 Members for "off the clock" work during lunch breaks and whether the Class 3 Defendants "shaved" hours,

(m)      whether the Class 3 Plaintiffs and the Class 3 Members should be reimbursed by the Class 3 Defendants for the purchase of cleaning supplies, equipment and tools;

(n)      whether the Class 3 Defendants' policy of failing to pay workers was instituted willfully or with reckless disregard of the law; and

(o)      the nature and extent of class-wide injury and the measure of damages for those injuries.

107.    The claims of Plaintiffs are typical of the claims of the Rule 23 Class they seek to represent. Plaintiffs and all of the Rule 23 Class members work, or have worked, for Defendants at the Hotel. Plaintiffs and the Rule 23 Class members enjoy the same statutory rights under the NYLL, including, *inter alia*, to be paid for all hours worked, to be paid overtime wages, to be paid spread-of-hours pay, and to receive customer tips intended for them. Plaintiffs and the Rule 23 Class members have all sustained similar types of damages as a result of Defendants' failure to comply with the NYLL. Plaintiffs and the Rule 23 Class members have all been injured in that they have been uncompensated or under-compensated due to Defendants' common policies, practices, and patterns of conduct.

108.    Each of the Class 1, Class 2 and Class 3 Plaintiffs will fairly and adequately represent and protect the interests of the corresponding categories of Class Members, i.e. Class 1, Class 2 or Class 3 Members. Plaintiffs understand that as class representatives, they assume a fiduciary responsibility to the class to represent its interests fairly and adequately. Plaintiffs recognize that as class representatives, they must represent and consider the interests of the class just as they would represent and consider their own interests. Plaintiffs understand that in decisions regarding the conduct of the litigation and its possible settlement, they must not favor their own interests over the class. Plaintiffs recognize that any resolution of a class action must be in the best interest of the class. Plaintiffs understand that in order to provide adequate representation, they must be informed of developments in litigation, cooperate with class counsel, and testify at deposition and/or trial. Plaintiffs have retained counsel competent and experienced in connection with complex class actions and employment litigation. There is no conflict between Plaintiffs and the Rule 23 members.

109.    A class action is superior to other available methods for the fair and efficient adjudication of this litigation. The members of the Rule 23 Class have been damaged and are entitled to recovery as a result of Defendants' violations of New York Labor Law, as well as their common and uniform policies, practices, and procedures. Although the relative damages suffered by individual Rule 23 Class members are not de minimis, such damages are small compared to the expense and burden of individual prosecution of this litigation. The individual Plaintiffs lack the financial resources to conduct a thorough examination of Defendants' timekeeping and compensation practices and to prosecute vigorously a lawsuit against Defendants to recover such damages. In addition, class litigation is superior because it will obviate the need for unduly duplicative litigation that might result in inconsistent judgments about Defendants' practices.

110.    This action is properly maintainable as a class action under Federal Rule of Civil Procedure 23(b)(3).

<u>FACTUAL BACKGROUND</u>

A.    <u>Plaintiffs' Employment At The Hotel</u>

111.    Plaintiffs Retana, Monchaitanapat and Morozov were first employed as full-time banquet servers, working at the Hotel when the Hotel opened as "Doubletree by Hilton" in or about October 2007, and have been employed in that position from such time to this day.

112.    Plaintiff Calderon was first employed as a part-time banquet server, working at the Hotel, in or about late 2007.

113.    Calderon began working as a full-time banquet server in or about 2009, and has been employed in that position from such time to this day.

114.    Plaintiff Ocampo was first employed as a full-time banquet server working at the Hotel in or about December 2010, and has been employed in that position from such time to this day.

115.    Plaintiff Villanueva was first employed as a full-time banquet server, working at the Hotel, on or about September 19, 2010, and has been employed in that position from such time to this day.

116.    Plaintiff Ortiz was first employed as a part-time banquet server, working at the Hotel, in or about December 2010.

117.    Ortiz began working as a full-time banquet server on or about December 10, 2012, and has been employed in that position from such time to this day.

118.    Plaintiff Molina was first employed as a banquet server working at the Hotel in or about 2010 and continued in that position into 2012

119.    Plaintiff Delarosa was first employed to work at the Hotel in or about 2008 and continued working for Defendants into 2013 as a houseman, houseman supervisor and/or banquet server.

120.    Plaintiff Barriga was first employed to work at the Hotel in or about 2007 and continued working for Defendants into 2013 as a banquet supervisor and/or banquet server.

121.    Plaintiff S. Gonzalez was first employed to work at the Hotel as a banquet server in 2007 and has continued in that position into 2015.

122.    Plaintiff Gonzales was first employed to work at the Hotel as a banquet server in 2007 and continued in that position into 2013.

123.    Plaintiff Escobar was first employed to work at the Hotel as a banquet server in 2012 and continued in that position into 2013.

124.    Plaintiff Suriel was first employed to work at the Hotel as a banquet server in 2007 and continued in that position into 2013, and also worked at the Hotel during that period as a houseman and restaurant waiter.

125.    Plaintiff A. Gonzalez has been employed to work at the Hotel as a banquet server from 2011 into 2015.

126.    Plaintiff Solis has been employed to work at the Hotel as a room service/restaurant waiter and a banquet server from 2009 and continues in those positions to this day.

127.    Plaintiff Sanchez has been employed to work at the Hotel as a banquet server, at times part-time and at other times full-time, from in or about 2010 and continues in that position to this day.

128.    Plaintiff Diaz has been employed to work at the Hotel as a housekeeper from in or about 2009 to in or about 2013.

129.    Plaintiff Rojas-Escolastico has been employed to work at the Hotel as a housekeeper from in or about 2009 into in or about 2015.

130.    Plaintiff Moya has been employed to work at the Hotel as a housekeeper from in or about 2009 into in or about 2015.

131.    Plaintiff Roja-DeLaRosa has been employed to work at the Hotel as a housekeeper from in or about August 2009 and continues in that position to this day.

132.    Plaintiff Ku has been employed to work at the Hotel as a banquet server and/or banquet supervisor from in or about 2009 and continues in that position to this day.

133.    Plaintiff Lamoth was employed to work at the Hotel as a kitchen sous chef from in or about August 2011 into in or about March 2014.

B.    The Food & Beverage Department

134.    From 2007 to the present, the Food & Beverage Defendants have implemented and enforced oppressive work conditions within the Food & Beverage department that violate the FLSA, the NYLL and applicable Federal and State regulations.

23

135.    During this period, the Food & Beverage Plaintiffs who worked on a full time basis regularly worked over 40 hours per week, and often in excess of 60 hours per week.

136.    However, the Food & Beverage Defendants regularly failed to pay these employees the overtime wages they were entitled to under the FLSA, NYLL and applicable Federal and State regulations.

137.    Instead, during the relevant time period, the Food & Beverage Defendants have regularly paid the Food & Beverage Plaintiffs who worked on a full time basis every two weeks a total of approximately 80 hours, even though they often worked well more than 40 hours each week, and at times in excess of 60 hours in a week.

138.    The Food & Beverage Plaintiffs' true overtime hours were, much of the time, plainly reflected in the employee sign-in sheets.

139.    Similarly, Abdou told several of the Food & Banquet Plaintiffs, in sum and substance, that the Hotel's policy is to pay them a fixed amount of hours for the breakfast, lunch and dinner parties they work no matter how many hours they actually work at such parties.

140.    At times, the Food & Beverage Plaintiffs who worked in excess of forty hours per week were not paid overtime wages. At other times, the Food & Beverage Plaintiffs worked less than forty hours per week, but were not paid for all of the hours they worked due to the Food & Beverage Defendants' "shaving" of hours.

141.    Plaintiff banquet servers have been paid a wage comprised of a regular rate amount and a tip credit that purportedly totaled the minimum wage required by the FLSA and the NYLL.

142.    A tip credit is a credit an employer may take towards the basic minimum hourly rate if a service employee or food service worker receives enough tips, if the employee has been

notified of the tip credit, and if the employer adheres to the pertinent regulations regarding the administration of the tip pool.

143.    However, Defendants were barred from taking a "tip credit" under the FLSA and NYLL because: (a) the requisite notices regarding the tip pool were not provided; (b) tips were paid to employees who were not entitled to receive tips; (c) tips were confiscated by management and/or others; and (d) the tip pool was unlawfully administered.

144.    In addition, the Food & Beverage Defendants have purportedly paid the Food & Beverage Plaintiffs a gratuity of 12% of the cost of each banquet they work through a "tip pool." In actuality, upon information and belief, the Food & Beverage Plaintiffs have not received their full share of the 12% gratuities because, among other things, their tip pool compensation has not reflected the full hours they have worked and/or the full cost of the banquets.

145.    Under the NYLL, employers that pay employees through a tip pool must keep a written record of the tips collected by each employee and the formula for calculating the portion of the tips each employee is to receive, and must make these records available to the participants in the tip pool.

146.    However, the Food & Beverage Defendants have violated NYLL by not providing the Food & Beverage Plaintiffs the required written records of the tip pool compensation, despite repeated demands by certain of the Food & Beverage Plaintiffs that the Food & Beverage Defendants verify how the tip pool compensation is calculated.

147.    Further, upon information and belief, customers of the Hotel have regularly paid the Hotel an 11% fee labeled as a "service charge" for events held at the Hotel.

148.     Under the NYLL, the Hotel has been required to pay the said "service charge" to the Food & Beverage Plaintiffs as a gratuity, unless customers were properly notified that the Food & Beverage Plaintiffs would not be so paid.

149.     Upon information and belief, during the course of the employment of the Food & Beverage Plaintiffs, the Food & Beverage Defendants frequently failed to properly notify customers that the service charge was not paid to the Food & Beverage Plaintiffs, and failed to pay the Food & Beverage Plaintiffs such service charges as tips in violation of the NYLL.

150.     In addition, upon information and belief, Ribbens, Abdou, and Haque regularly participated in a management tip pool by which they confiscated and kept tip monies that customers gave to management to be passed on to the Food & Beverage Plaintiffs. Specifically, upon information and belief, Abdou actively solicited banquet customers for cash tips to be paid to the Food & Beverage Plaintiffs, and then gave the monies to Ribbens who calculated the monies that he, Abdou, Haque and/or others kept.

151.     Upon information and belief, another banquet manager employed by the Food & Beverage Defendants complained to Ribbens and Friedman about this unlawful practice, but no one did anything to stop the managers from pilfering the tips that the Food & Beverage Plaintiffs have earned.

152.     As a result of these failures by the Food & Beverage Defendants to pay over to the Food & Beverage Plaintiffs the gratuities and tips that the Food & Beverage Defendants received, the Hotel did not qualify for the tip credits taken against the wages of the Food and Beverage Plaintiffs, and under the FLSA and NYLL, the Food & Beverage Defendants are now liable to the Food and Beverage Plaintiffs for these tip credit amounts.

153.    The Food & Beverage Defendants' abusive work policies encompassed numerous other violations of the FLSA and/or the NYLL including, but not limited to:

    (a)    failing to pay the Food & Beverage Plaintiffs "spread of hours pay," which is required under the NYLL when an employee's shift exceeds ten hours;

    (b)    failing to provide to the Food & Beverage Plaintiffs  written notice of their pay rate, and their overtime pay rates;

    (c)    failing to give the Food & Beverage Plaintiffs breaks during their work day;

    (d)    failing to pay the Food & Beverage Plaintiffs a uniform maintenance allowance as required by NYLL;

    (e)    failing to pay the Food & Beverage Plaintiffs  minimum wage by, among other things, shaving hours, failing to pay them for non-tipped duties, requiring them to work overlapping parties (but only paying them for one party) and implementing a mandatory paycheck deduction for meals even though they did not uniformly eat meals provided by the Hotel; and

    (f)    upon information and belief, the destruction of payroll records that the Food & Beverage Defendants were required to keep under the FLSA, NYLL and applicable Federal and State regulations.

154.    In addition, after the Food & Beverage Defendants' violations of the FLSA and NYLL were reported to the New York Department of Labor by Plaintiffs Ocampo, Morozov, Villanueva, Ortiz, Retana, Calderon, Monchaitanapat and Suriel, the Food & Beverage Defendants engaged in a policy and practice of retaliating against them by, among other things, reducing their hours in retaliation in violation of the FLSA and the NYLL.

155.    In addition, kitchen employees who work within the Food & Beverage Department of the Hotel are not paid for the overtime hours they regularly work, including Plaintiff Lamoth, who worked as a kitchen sous chef during the time she was employed.

156.    Hotel Management, particularly Ribbens, has supervised employees working in the Food & Beverage Department through threats, intimidation and public berating.  As such, Hotel management has created an oppressive and hostile work environment that has caused employees to continuously fear for the loss of the jobs they need to support their families

157.    This hostile work environment has been fostered by the General Manager, Friedman, who has frequently mocked the accents and manner of speaking of employees whose first language is not English, and frequently offends employees by the use of sexually explicit and highly inappropriate language.

158.    The hostile and unlawful work conditions maintained by the employers are not confined to banquet events. It is pervasive throughout the rest of the Food & Beverage Department and the Hotel as a whole.

159.    Plaintiff Solis has worked in the restaurant as a room service waiter and as a waiter to customers dining within the Hotel restaurant.

160.    Customers who purchase meals in the restaurant and via room service pay an included 18% gratuity charge to be paid to the restaurant or room service waiter.

161.    At various times during Solis' employment, he did not receive the full 18% gratuity he was entitled to when working as a room service waiter.

162.    During Solis' employment at the Hotel, from the period of approximately 2009 to approximately July 2014, on a regular weekly basis, he worked as a room service waiter and/or restaurant waiter, and as an "on call" banquet server within the banquet department of the Hotel.

28

163.    During this period, Solis regularly worked well over 40 hours per week, and at times as much as 60 or 70 hours per week.

164.    However, during this period, Solis' wage statements did not reflect the overtime hours he worked.

165.    As a result of this policy and practice, Solis did not receive the overtime pay to which he was entitled.

C.    The Housekeeping Department

166.    Defendant Clarke has been the Director of Housekeeping and is the supervisor of the housekeepers who are employed in the housekeeping department of the Hotel.

167.    Defendant Clarke has subjected the Housekeeping Plaintiffs to an oppressive, hostile and cruel employment environment.

168.    The unlawful and repressive employment practices imposed upon the Housekeeping Plaintiffs are strictly controlled and enforced by Defendant Clarke.

169.    Defendant Clarke assigns the Housekeeping Plaintiffs excessive workloads which they often cannot complete without working through break periods and/or working through scheduled shifts.

170.    The Housekeeping Plaintiffs have not been paid for all hours worked because hours have been "shaved" so that they were not paid for all of the time during which they have worked. The Housekeeping Plaintiffs also worked "off the clock" at various times by, inter alia, "clocking out" and returning to work either during a meal break or at the end of a scheduled shift.

171.    At times, the Housekeeping Defendants worked in excess of forty (40) hours per week and did not receive overtime compensation.  At other times, the Housekeeping Defendants worked less than forty (40) hours per week, but were not paid for all compensable time.

172.    The Housekeeping Plaintiffs were assigned workloads which often times could not be completed without working during a "break" or clocking out at the end of a scheduled shift and then returning to work, so that they could complete the work they were expected to complete that day.

173.    If the Housekeeper Plaintiffs dared to question the information shown on their paychecks, Defendant Clarke became infuriated and made threats of punishment.  Some of the Housekeeping Plaintiffs have been reprimanded by Defendant Clarke for raising questions about a paycheck.

174.    The Housekeeping Plaintiffs were forced to regularly purchase their own cleaning supplies, equipment and tools in order to perform their work.

175.    The Housekeeping Plaintiffs assert that they have been forced to work under constant stress as they try to perform their duties in a hostile work environment imposed on them by Defendant Clarke.

176.    The Housekeeping Plaintiffs were deprived of tips and gratuities: (a) due to them being confiscated and/or misappropriated; and (b) due to the improper administration of an unlawful tip pool.

D.    The Franchisor Defendants' Control of Hotel Employees

(i)    The Control Exerted through the Franchise Agreement

177.    Upon information and belief, in or about 2007, Doubletree LLC became the franchisor of hotels which operate under the "DoubleTree," "Doubletree By Hilton," and "DoubleTree Suites By Hilton" brands in the 50 states of the United States, its Territories and Possessions and the District of Columbia.

178.    Upon information and belief, Doubletree HSI is the predecessor of Doubletree LLC.

179.    Upon information and belief, Doubletree LLC's direct corporate parent is Hilton Franchising Holding LLC, and its indirect corporate parent is Hilton Worldwide, Inc.

180.    Upon information and belief, Doubletree LLC's ultimate corporate parent is Hilton Worldwide Holdings, Inc.

181.    Upon information and belief, in or about 2005, Doubletree LLC and/or Doubletree HSI granted 455 Hospitality a franchise to operate a Doubletree by Hilton Hotel, under the DoubleTree System at 455 Broadway, Tarrytown, NY 10591.

182.    Upon information and belief, pursuant to the franchise agreement that 455 Hospitality and the Franchisor Defendants entered into and/or succeeded to, as well as the Franchisor Defendants' and 455 Hospitality's practices, the Franchisor Defendants mandated that 455 Hospitality require its employees to participate in the Franchisor Defendants' training programs.

183.    Upon information and belief, pursuant to the franchise agreement that 455 Hospitality and the Franchisor Defendants entered into and/or succeeded to, as well as the Franchisor Defendants' and 455 Hospitality's practices, the full training of 455 Hospitality's employees, pursuant to training programs provided by the Franchisor Defendants, was a condition that 455 Hospitality had to meet before the Franchisor Defendants certified the opening of the Hotel.

184.    Upon information and belief, pursuant to the franchise agreement that 455 Hospitality and the Franchisor Defendants entered into and/or succeeded to, as well as the Franchisor Defendants' and 455 Hospitality's practices, after the Hotel was opened, the Franchisor Defendants required 455 Hospitality to implement a new employee training program, which is

31

mandatory for all new employees, that includes, among other things, an orientation, and training regarding job and service skills required for all jobs.

185.    Upon information and belief, pursuant to the franchise agreement that 455 Hospitality and the Franchisor Defendants entered into and/or succeeded to, as well as the Franchisor Defendants' and 455 Hospitality's practices, the Franchisor Defendants mandate that 455 Hospitality must train its staff to operate the Hotel in accordance with the Franchisor Defendants' manual and such other instructions that they may require.

186.    Upon information and belief, pursuant to the franchise agreement that 455 Hospitality and the Franchisor Defendants entered into and/or succeeded to, as well as the Franchisor Defendants' and 455 Hospitality's practices, the Franchisor Defendants have maintained control of 455 Hospitality, by, among other things:

      (a)    maintaining the right to inspect the Hotel at any time to ensure compliance with System standards;

      (b)    requiring that 455 Hospitality maintain complete and accurate records concerning the Hotel's finances, the operation of the Hotel and other aspects of the Hotel, and maintain an accounting system that accurately reflects all financial aspects of the Hotel and its business;

      (c)    requiring 455 Hospitality to deliver daily, monthly, quarterly and annual profit and loss statements, balance sheets, and other reports that the Franchisor defendants require;

      (d)    requiring 455 Hospitality to purchase and/or lease equipment, furnishings, furniture, computer terminals and other items in order for the Hotel to qualify as a "System" hotel; and

(e)    requiring 455 Hospitality to participate in and pay all charges related to all of the Franchisor Defendants' marketing programs and guest frequency programs including the Hilton HHonors Worldwide guest reward programs.

187.    Upon information and belief, pursuant to the franchise agreement that 455 Hospitality and the Franchisor Defendants entered into and/or succeeded to, as well as the Franchisor Defendants' and 455 Hospitality's practices, by the System, the Franchisor Defendants have set standards and controls for 455 Hospitality that allows for 455 Hospitality's use of the Doubletree brand and trademarks, and 455 Hospitality's use of numerous programs under conditions that have been set by the Franchisor Defendants, including a reservation service; advertising, publicity and other marketing programs and materials; and standards, specifications and policies for construction, furnishing, operation, appearance, and service of the Hotel.

188.    Upon information and belief, pursuant to the franchise agreement that 455 Hospitality and the Franchisor Defendants entered into and/or succeeded to, as well as the Franchisor Defendants' and 455 Hospitality's practices, the Franchisor Defendants required 455 Hospitality to purchase and install a business software system, known as "OnQ", which includes a proprietary management component, reservations component, revenue management component, rate and inventory component, forecast management component, learning management component, and other components that are considered necessary to support activities including reservations, distribution, sales, customer relationship management, Hotel operations, and business intelligence gathering and analysis.

189.    Upon information and belief, pursuant to the franchise agreement that 455 Hospitality and the Franchisor Defendants entered into and/or succeeded to, as well as the Franchisor Defendants' and 455 Hospitality's practices, there is, and has been, no limit to the

Franchisor Defendants' right to make changes to the System, and 455 Hospitality is obligated to comply with all changes to the System that Defendants make in their absolute, and unlimited, discretion.

  (ii)  The Franchisor Defendants' Physical Control Over Employees' Job Duties And Requirements Exerted Through The Quality Assurance Program

190. With respect to the Franchisor Defendants' right to inspect the Hotel, upon information and belief, the Franchisor Defendants regularly perform both scheduled and unannounced audits and inspections of the Hotel, often multiple times in a year, to review 455 Hospitality's compliance with the Franchisor Defendants' financial record keeping requirements, as well as the Franchisor Defendants' QA standards.

191. Upon information and belief, from the time 455 Hospitality receives notice of a planned audit or inspection, its management puts Hotel employees on "red alert," and its managers and supervisors prepare for the audits by inspecting, and repairing or maintaining if necessary, all areas within the Hotel including the banquet rooms, the kitchen, the bathrooms and the fire place(s).

192. During the audits and inspections, the Franchisor Defendants' auditors spent hours, if not days, reviewing the financial records of the Hotel; spent many hours meeting with the General Manager and Food and Beverage Director at the Hotel; and inspected the restaurant, banquet rooms, guest rooms, and the kitchens, including the banquet kitchen where banquet servers and housemen perform their work on the banquets held at the Hotel.

193. By the regular QA inspections and audits, the Franchisor Defendants enforced their control over Hotel employees by mandating the manner and quality of their work.

194. As such, QA personnel dispatched by the Franchise Defendants performed regular inspections of work performed by employees in the Housekeeping Department as well the services

provided by employees of the Food & Beverage Department to ensure that the Franchisor Defendants rigorous QA standards were met.

195.    Through the QA audits, the performance of employees is scored by the Franchisor Defendants. Housekeeping employees are scored with respect to, among other things, their helpfulness; the cleanliness of the guest rooms; cleanliness of bathrooms; whether guest rooms smell fresh and clean; and the overall cleanliness of the Hotel.

196.    The work of the employees within the Food & Beverage Department is scored with respect to, among other things, the appearance of the restaurant and banquet rooms; the quality of service provided by restaurant staff; the quality of the food prepared by the kitchens; whether room service provided by employees is timely; and whether the room service orders are accurately provided by employees.

197.    If the Hotel workers perform their duties such that the Hotel receives high QA scores, the Hotel is eligible for the "Housekeeping Award of Excellence" and/or the "Food and Beverage Award of Excellence." Upon information and belief, when the Hotel receives poor QA scores from the Franchisor Defendants, Hotel employees are disciplined and/or reprimanded by 455 Hospitality.

198.    Upon information and belief, if the employees of a Doubletree franchise hotel do not perform the work duties as required by the Franchisor Defendants' QA requirements as set forth in the Doubletree manual, the Franchisor Defendants maintain the right to terminate the Doubletree franchise, which thereby causes the termination of the employees' employment at a Doubletree hotel.

199.    In fact, upon information and belief, the Franchisor Defendants exercised such termination rights when, in or about 2013, they terminated the Doubletree franchise operated out

of a Doubletree hotel located in Jamaica, New York because that franchise allegedly failed QA inspections.

(iii)    The Franchisor Defendants' Failure to Bar
Gratuity Misappropriations That, Upon
Information And Belief, Were Revealed In
<u>The Revenue Records That They Controlled</u>

200.    Upon information and belief, with respect to the scheduled audits of the Hotel's financial records by the Franchisor Defendants, the audits were the mechanism by which the Franchisor Defendants tracked the revenue that 455 Hospitality received.

201.    Among the revenues received by 455 Hospitality were revenues received from banquets, including gratuities to be paid to the Food & Beverage Plaintiffs under written contracts that banquet customers entered into with the Hotel.

202.    Upon information and belief, that revenue of the Hotel included monies received by 455 Hospitality that should have been (but were not) paid to the Food & Beverage Plaintiffs as set forth in banquet customer contracts and a document known as a Banquet Event Order ("BEO") which provided for a mandatory 12% gratuity charge and 11% "service" charge, each of which should have been paid to the Food & Beverage Plaintiffs.

203.    Upon information and belief, during their financial audits, the Franchisor Defendants inspected the BEOs and banquet customer contracts that set forth the mandatory 12% gratuity charge and 11% service charge because these charges constituted Hotel revenue that should have been itemized within the records reflecting all financial aspects of the Hotel.

204.    In addition, upon information and belief, the Housekeeping Plaintiffs were deprived of gratuities that should have been paid to them pursuant to customer contracts.

205.    Upon information and belief, all revenues of the Hotel, such as the mandatory 12% gratuity charge and 11% service charge to banquet customers, as well as the aforementioned

gratuities that should have been paid to housekeepers, were reflected in the "OnQ" software system that the Franchisor Defendants required the Hotel to use, and all such revenues were disclosed to the Franchisor Defendants during their audits of 455 Hospitality's financial records.

206.    Thus, upon information and belief, the Franchisor Defendants had knowledge of, or at the very least should have known, that gratuities were not paid to employees in compliance with the NYLL and that the Hotel failed to pay the so-called "service charge" in violation of the NYLL.

207.    Upon information and belief, the Franchisor Defendants have financially benefitted from the unlawful employment practices of 455 Hospitality which have cheated Defendants out of wages duly owed to them because the revenue derived from tips and gratuities has increased the amount of royalties paid to the Franchisor Defendants by 455 Hospitality.

208.    Upon information and belief, despite the Franchisor Defendants' control over the employees of the Hotel and the Hotel's financial/revenue records, they failed to stop the unlawful wage practices and policies that were perpetrated against the Plaintiffs.

E.    Alter Ego/Piercing the Corporate Veil Allegations

209.    Defendant Lichtschein used corporate funds of 455 Hospitality for personal purposes.

210.    Defendant Scheiner used corporate funds of 455 Hospitality for personal purposes.

211.    Defendant Sirotkin used corporate funds of 455 Hospitality for personal purposes.

212.    Defendant Jordan used corporate funds of 455 Hospitality for purposes unrelated to 455 Hospitality.

213.    Defendant Browne & Appel used corporate funds of 455 Hospitality for purposes unrelated to 455 Hospitality.

214.    Upon information and belief, Defendant Lichtschein orchestrated an illegal "cash business" whereby customers would make cash payments for catering events which were not recorded in the books and records of 455 Hospitality and such cash was diverted and not used for the legitimate corporate purposes of 455 Hospitality such that, among other things, 455 Hospitality was without sufficient funds to pay the Plaintiffs the wages and gratuities it seeks in this action.

215.    Upon information and belief, Defendant Scheiner orchestrated an illegal "cash business" whereby customers would make cash payments for catering events which were not recorded in the books and records of 455 Hospitality and such cash was diverted and not used for the legitimate corporate purposes of 455 Hospitality such that, among other things, 455 Hospitality was without sufficient funds to pay the Plaintiffs the wages and gratuities it seeks in this action.

216.    Upon information and belief, Defendant Sirotkin orchestrated an illegal "cash business" whereby customers would make cash payments for catering events which were not recorded in the books and records of 455 Hospitality and such cash was diverted and not used for the legitimate corporate purposes of 455 Hospitality such that, among other things, 455 Hospitality was without sufficient funds to pay the Plaintiffs the wages and gratuities it seeks in this action.

217.    Upon information and belief, Defendant Jordan orchestrated an illegal "cash business" whereby customers would make cash payments for catering events which were not recorded in the books and records of 455 Hospitality and such cash was diverted and not used for the legitimate corporate purposes of 455 Hospitality such that, among other things, 455 Hospitality was without sufficient funds to pay the Plaintiffs the wages and gratuities it seeks in this action.

218.    Upon information and belief, Defendant Browne & Appel orchestrated an illegal "cash business" whereby customers would make cash payments for catering events which were not recorded in the books and records of 455 Hospitality and such cash was diverted and not used

for the legitimate corporate purposes of 455 Hospitality such that, among other things, 455 Hospitality was without sufficient funds to pay the Plaintiffs the wages and gratuities it seeks in this action.

219. Defendant Lichtschein fleeced 455 Hospitality by having lavish personal parties at the Hotel without paying 455 Hospitality fair value for the parties, financially burdening 455 Hospitality for a purely personal gain.

220. Defendant Scheiner fleeced 455 Hospitality by having lavish personal parties at the Hotel without paying 455 Hospitality fair value for the parties, financially burdening 455 Hospitality for a purely personal gain.

221. Defendant Sirotkin fleeced 455 Hospitality by having lavish personal parties at the Hotel without paying 455 Hospitality fair value for the parties, financially burdening 455 Hospitality for a purely personal gain.

222. In order to accommodate personal parties for Defendants Lichtschein, Scheiner and Sirotkin, 455 Hospitality was forced to forego other events which would have been more lucrative, causing 455 Hospitality to suffer financially solely for the personal gain of said Defendants.

223. The employee who was the CFO and Owner's Representative before Defendant Elchonen was hired was forced to resign due to the personal misuse of Hotel resources which she could not condone without breaching her fiduciary duty to 455 Hospitality.

224. Defendant Lichtschein shuttled hundreds of thousands, if not millions, of dollars into and out of 455 Hospitality's bank accounts for no legitimate business purpose of 455 Hospitality.

225. Defendant Scheiner shuttled hundreds of thousands, if not millions, of dollars into and out of 455 Hospitality's bank accounts for no legitimate business purpose of 455 Hospitality.

226.    Defendant Lichtschein, who controls numerous entities that own or operate nursing homes in various states, commingled funds of 455 Hospitality with the funds of such entities.

227.    Defendant Scheiner, who controls numerous entities that own or operate nursing homes in various states, commingled funds of 455 Hospitality with the funds of such entities.

228.    Defendant Lichtschein diverted funds belonging to 455 Hospitality to entities he controlled which own or operate nursing homes and have no legitimate business connection to the Hotel operated by 455 Hospitality.

229.    Defendant Sirotkin approved of the diversion of funds belonging to 455 Hospitality to nursing home entities that have no legitimate business connection to the Hotel operated by 455 Hospitality.

230.    Defendants Scheiner, Lichtschein and Sirotkin engaged in a sham transaction which was fraudulently structured to portray three million dollars ($3,000,000.00) paid by Sirotkin to 455 Hospitality as being paid in connection with a tax-exempt real estate transaction pursuant to 26 U.S.C. § 1031 when, in reality, that payment was not part of a legitimate tax-exempt transaction pursuant to that statute.

231.    Upon information and belief, Defendants Scheiner, Lichtschein and Sirotkin used 455 Hospitality to perpetrate a fraud in connection with the purported "1031" transaction referred to above.

232.    The sham "1031" transaction referred to above was a commingling of personal and corporate assets and demonstrates an abuse of 455 Hospitality for personal purposes.

233.    At least one of the members of 455 Hospitality has openly admitted that the purported "1031" transaction referred to above was "illegal."

234.    One or more of Defendants Scheiner, Lichtschein and Sirotkin caused certain payments to be made from 455 Hospitality in connection with the sham "1031" transaction referenced above.

235.    Defendants Lichtschein and/or Scheiner took one million dollars ($1,000,000.00) from 455 Hospitality and used it for personal purposes and/or for the purpose of an entirely separate business venture which was unrelated to the business of 455 Hospitality.

236.    The intentional diversion of one million dollars ($1,000,000.00) of 455 Hospitality's funds by Defendants Lichtschein and/or Scheiner so that it could be used for personal purposes and/or for the purpose of an entirely separate business venture unrelated to the business of 455 Hospitality constituted a commingling of assets, caused financial damage to 455 Hospitality and, among other things, caused it to become undercapitalized and underfunded.

237.    Upon information and belief, while Defendants Lichtschein, Scheiner and Sirotkin abused 455 Hospitality by funneling hundreds of thousands, if not millions, of dollars into and out of its bank accounts without any legitimate business purpose of 455 Hospitality for doing so, 455 Hospitality was caused to operate at a loss and without sufficient funds to pay its debts or properly compensate its employees.

238.    Upon information and belief, Defendants Lichtschein, Scheiner and Sirotkin diverted funds of 455 Hospitality out of 455 Hospitality's bank accounts and into the possession of other persons and entities, leaving 455 Hospitality operating at a loss, undercapitalized and without sufficient funds to pay its debts or to pay wages and gratuities to the employees of the Hotel.

239.    Defendant Lichtschein and/or Defendant Scheiner transferred hundreds of thousands of dollars, if not millions, from 455 Hospitality's bank accounts to bank accounts

maintained by other entities owned or controlled by Defendant Lichtschein and/or Defendant Scheiner some of which were alleged to have been a part of a fraudulent Medicare scheme involving nursing home entities controlled by Defendants Lichtschein and Scheiner.

240.    Defendants Lichtschein and Scheiner repeatedly caused transfers of money between 455 Hospitality and another Scheiner/Lichtschein entity that was, according to a Connecticut Bankruptcy Trustee, involved in an elaborate fraud concocted by Defendants Lichtschein and Scheiner by which all of a nursing home debtor's assets were transferred to other entities they own to the detriment of creditors.  Said transfers constituted, among other things, a commingling of assets.

241.    Upon information and belief, Defendant Lichtschein and/or Defendant Scheiner, for no legitimate business purpose of 455 Hospitality, transferred substantial amounts of money into 455 Hospitality's bank accounts only to make withdrawals of the same amounts of money within days.

242.    Upon information and belief, Defendant Lichtschein and/or Defendant Scheiner, for no legitimate business purpose of 455 Hospitality, transferred substantial amounts of money out of 455 Hospitality's bank accounts only to transfer back into 455 Hospitality's bank accounts the same amounts of money within days.

243.    At relevant times, Defendant Lichtschein was an alter ego of 455 Hospitality.

244.    At relevant times, Defendant Scheiner was an alter ego of 455 Hospitality.

245.    At relevant times, Defendant Sirotkin was an alter ego of 455 Hospitality.

246.    At relevant times, Defendant Jordan  was an alter ego of 455 Hospitality.

247.    At relevant times, Defendant Browne & Appel was an  alter ego of 455 Hospitality.

248.    At relevant times, Defendant Lichtschein exercised complete domination and control over 455 Hospitality.

249.    At relevant times, Defendant Scheiner exercised complete domination and control over 455 Hospitality.

250.    At relevant times, Defendant Sirotkin exercised complete domination and control over 455 Hospitality.

251.    At relevant times, Defendant Jordan exercised complete domination and control over 455 Hospitality.

252.    At all relevant times, Defendant Browne & Appel exercised complete domination and control over 455 Hospitality.

253.    The domination and control over 455 Hospitality exercised by Defendant Lichtschein was used to commit a fraud or perpetrate a wrong against the Plaintiffs by, among other things, causing 455 Hospitality  to be undercapitalized and unable to pay debts as well as wages and gratuities owed to the Plaintiffs.

254.    The domination and control over 455 Hospitality exercised by Defendant Scheiner was used to commit a fraud or perpetrate a wrong against the Plaintiffs by, among other things, causing 455 Hospitality  to be undercapitalized and unable to pay debts as well as wages and gratuities owed to the Plaintiffs.

255.    The domination and control over 455 Hospitality exercised by Defendant Sirotkin was used to commit a fraud or perpetrate a wrongful or unjust act against the Plaintiffs by among other things, causing 455 Hospitality  to be undercapitalized and unable to pay debts as well as wages and gratuities owed to the Plaintiffs.

256.    The domination and control over 455 Hospitality exercised by Defendant Jordan was used to commit a fraud or perpetrate a wrongful or unjust act against the Plaintiffs by, among other things, causing 455 Hospitality to be undercapitalized and unable to pay debts as well as wages and gratuities owed to the Plaintiffs.

257.    The domination and control over 455 Hospitality exercised by Defendant Browne & Appel was used to commit a fraud or perpetrate a wrongful or unjust act against the Plaintiffs by, among other things, causing 455 Hospitality to be undercapitalized and unable to pay debts as well as wages and gratuities owed to the Plaintiffs.

258.    At relevant times, Defendant Lichtschein diverted funds belonging to 455 Hospitality to himself and/or other entities in which he had an interest and commingled the funds of 455 Hospitality with his own funds and/or the funds of other entities in which he held an interest.

259.    At relevant times, Defendant Scheiner diverted funds belonging to 455 Hospitality to himself and/or other entities in which he had an interest and commingled the funds of 455 Hospitality with his own funds and/or the funds of other entities in which he held an interest.

260.    At relevant times, Defendant Sirotkin diverted funds belonging to 455 Hospitality to himself and/or other entities in which he had an interest and commingled the funds of 455 Hospitality with his own funds and/or the funds of other entities in which he held an interest.

261.    At relevant times, Defendant Jordan LLC diverted funds belonging to 455 Hospitality to itself and/or other entities and commingled the funds of 455 Hospitality with its own funds and/or the funds of other entities.

262.    At relevant times, Defendant Browne & Appel, LLC diverted funds belonging to 455 Hospitality to itself and/or other entities and commingled the funds of 455 Hospitality with its own funds and/or the funds of other entities.

263.    At relevant times, Defendant Lichtschein blatantly disregarded the corporate form of 455 Hospitality.

264.    At relevant times, Defendant Scheiner blatantly disregarded the corporate form of 455 Hospitality.

265.    At relevant times, Defendant Sirotkin blatantly disregarded the corporate form of 455 Hospitality.

266.    At relevant times, Defendant Jordan blatantly disregarded the corporate form of 455 Hospitality.

267.    At relevant times, Defendant Browne & Appel blatantly disregarded the corporate form of 455 Hospitality.

268.    455 Hospitality was not able to pay wages and gratuities owed to the Plaintiffs because of the complete domination and control exercised by Defendant Lichtschein, and the wrongful conduct of said defendant of depriving the Plaintiffs of wages and gratuities owed to them caused the Plaintiffs to suffer severe financial harm.

269.    455 Hospitality was not able to pay wages and gratuities owed to the Plaintiffs because of the complete domination and control exercised by Defendant Scheiner, and the wrongful conduct of said defendant of depriving the Plaintiffs of wages and gratuities owed to them caused the Plaintiffs to suffer severe financial harm.

270.    455 Hospitality was not able to pay wages and gratuities owed to the Plaintiffs because of the complete domination and control exercised by Defendant Sirotkin, and the wrongful conduct of said defendant of depriving the Plaintiffs of wages and gratuities owed to them caused the Plaintiffs to suffer severe financial harm.

271.    455 Hospitality was not able to pay wages and gratuities owed to the Plaintiffs because of the complete domination and control exercised by Defendant Jordan, and the wrongful conduct of said defendant of depriving the Plaintiffs of wages and gratuities owed to them caused the Plaintiffs to suffer severe financial harm.

272.    455 Hospitality was not able to pay wages and gratuities owed to the Plaintiffs because of the complete domination and control exercised by Defendant Browne & Appel, and the wrongful conduct of said defendant of depriving the Plaintiffs of wages and gratuities owed to them caused the Plaintiffs to suffer severe financial harm.

F.    Operational Control of 455 Hospitality by Defendants Lichtschein, Scheiner, Sirotkin and Elchonen

273.    Defendant Lichtschein exercised operational control over 455 Hospitality.

274.    Defendant Scheiner exercised operational control over 455 Hospitality.

275.    Defendant Sirotkin exercised operational control over 455 Hospitality.

276.    Defendant Elchonen exercised operational control over 455 Hospitality.

277.    Upon information and belief, Defendant Lichtschein had the power to, and did, hire and fire employees of 455 Hospitality.

278.    Upon information and belief, Defendant Scheiner had the power to, and did, hire and fire employees of 455 Hospitality.

279.    Upon information and belief, Defendant Sirotkin had the power to, and did, hire and fire employees of 455 Hospitality.

280.    Upon information and belief, Defendant Elchonen had the power to, and did, hire and fire employees of 455 Hospitality.

281.    Upon information and belief, Defendant Lichtschein had the power to, and did, supervise and control employees of 455 Hospitality.

282.    Upon information and belief, Defendant Scheiner had the power to, and did, supervise and control employees of 455 Hospitality.

283.    Upon information and belief, Defendant Sirotkin had the power to, and did, supervise and control employees of 455 Hospitality.

284.    Upon information and belief, Defendant Elchonen had the power to, and did, supervise and control employees of 455 Hospitality.

285.    Upon information and belief, Defendant Lichtschein had the power to, and did, make personnel decisions regarding employees of 455 Hospitality, including, but not limited to, the disciplining of employees.

286.    Upon information and belief, Defendant Scheiner had the power to, and did, make personnel decisions regarding employees of 455 Hospitality, including, but not limited to, the disciplining of employees.

287.    Upon information and belief, Defendant Sirotkin had the power to, and did, make personnel decisions regarding employees of 455 Hospitality, including, but not limited to, the disciplining of employees.

288.    Upon information and belief, Defendant Elchonen had the power to, and did, make personnel decisions regarding employees of 455 Hospitality, including, but not limited to, the disciplining of employees.

289.    Upon information and belief, Defendant Lichtschein determined the rates and methods of payment for employees of the Hotel.

290.    Upon information and belief, Defendant Scheiner determined the rates and methods of payment for employees of the Hotel.

291.    Upon information and belief, Defendant Sirotkin determined the rates and methods of payment for employees of the Hotel.

292.    Upon information and belief, Defendant Elchonen determined the rates and methods of payment for employees of the Hotel.

293.    Upon information and belief, Defendant Lichtschein supervised and controlled employee work schedules and conditions of employment for employees of the Hotel.

294.    Upon information and belief, Defendant Scheiner supervised and controlled employee work schedules and conditions of employment for employees of the Hotel.

295.    Upon information and belief, Defendant Sirotkin supervised and controlled employee work schedules and conditions of employment for employees of the Hotel.

296.    Upon information and belief, Defendant Elchonen supervised and controlled employee work schedules and conditions of employment for employees of the Hotel.

297.    Upon information and belief, Defendant Lichtschein maintained employment records for employees of the Hotel.

298.    Upon information and belief, Defendant Scheiner maintained employment records for employees of the Hotel.

299.    Upon information and belief, Defendant Sirotkin maintained employment records for employees of the Hotel.

300.    Upon information and belief, Defendant Elchonen maintained employment records for employees of the Hotel.

301.    Upon information and belief, Defendant Lichtschein managed the Hotel and conducted the day-to-day operations of the Hotel.

302.    Upon information and belief, Defendant Scheiner managed the Hotel and conducted the day-to-day operations of the Hotel.

303.    Upon information and belief, Defendant Sirotkin managed the Hotel and conducted the day-to-day operations of the Hotel.

304.    Upon information and belief, Defendant Elchonen managed the Hotel and conducted the day-to-day operations of the Hotel.

305.    Upon information and belief, Defendant Sirotkin had an office in the Hotel out of which he conducted Hotel operations.

306.    Upon information and belief, Defendant Elchonen had an office in the Hotel out of which he conducted Hotel operations.

307.    Upon information and belief, Defendant Lichtschein supervised and managed the employees of the Hotel.

308.    Upon information and belief, Defendant Scheiner supervised and managed the employees of the Hotel.

309.    Upon information and belief, Defendant Sirotkin supervised and managed the employees of the Hotel.

310.    Upon information and belief, Defendant Elchonen supervised and managed the employees of the Hotel.

311.    Upon information and belief, Defendant Lichtschein was physically present at the Hotel on a regular basis.

312.    Upon information and belief, Defendant Scheiner was physically present at the Hotel on a regular basis.

313.    Upon information and belief, Defendant Sirotkin was physically present at the Hotel on a regular basis.

314.    Upon information and belief, Defendant Elchonen was physically present at the Hotel on a regular basis.

315.    Defendants Lichtschein, Scheiner and Sirotkin spoke directly to Hotel employees, including the Food and Beverage Director (who the Plaintiffs allege overtly stole from them).

316.    Upon information and belief, Defendant Lichtschein was the Managing Member of Jordan, and Jordan was the Managing Member of 455 Hospitality.

317.    As the Managing Member of Jordan, which was the Managing Member of 455 Hospitality, Defendant Lichtschein was the key person responsible for the operation of the Hotel, and Defendant Lichtschein did, in fact, conduct the operations of the Hotel through his authority as the Managing Member of Jordan, which was the Managing Member of 455 Hospitality.

318.    Upon information and belief, Defendants Lichtschein, Scheiner and Sirotkin were "hands-on" owners who directed the operations of the Hotel with the assistance of Defendant Elchonen, their "Owner's Representative."

319.    Upon information and belief, Defendants Lichtschein, Scheiner and Sirotkin made operational decisions regarding 455 Hospitality which were effectuated by Defendant Elchonen who served as the CFO and "Owner's Representative."

320.    Upon information and belief, Defendants Lichtschein, Scheiner and Sirotkin reviewed financial reports, income and expense information and made important financial decisions regarding 455 Hospitality, including, but not limited to, financial decisions regarding 455 Hospitality's employees and employee compensation.

321.    Upon information and belief, Defendants Lichtschein, Scheiner and Sirotkin reviewed and approved budgets and financial plans.

322.    Upon information and belief, Defendants Lichtschein, Scheiner and Sirotkin made decisions regarding repairs and improvements to, as well as the renovation and maintenance of, the Hotel.

323.    Defendant Elchonen as the CFO and "Owner's Representative" was a high-ranking employee of 455 Hospitality whose power and authority exceeded that of all other Hotel employees.

324.    Defendant Elchonen referred to himself as "the Boss" of the Hotel.

325.    Defendant Elchonen was so far up in the hierarchy of employees of 455 Hospitality that he was considered to be above the General Manager of the Hotel and the General Manager's "Boss."

326.    Defendant Elchonen exercised his power and authority over Hotel employees by among other things, hiring employees, terminating employees, disciplining employees and instructing employees as to how their jobs should be done.

327.    Defendant Elchonen handled financial reporting and tax matters for the Hotel, coordinated with the franchisor of the Hotel, participated in the preparation of the Hotel's employee handbook, and coordinated with the Professional Employment Organization retained by 455 Hospitality regarding employment matters and payroll issues.

328.    Defendant Elchonen issued written employment warnings, prepared disciplinary forms and has terminated staff of the Hotel.

329.    Defendant Elchonen participated in weekly Food and Beverage meetings at which decisions regarding the operations of the Food and Beverage Department were made.

330.    At relevant times, upon information and belief, Defendant Elchonen communicated with Defendants Lichtschein, Scheiner and/or Sirotkin on a regular basis about the operations of the Hotel and carried out instructions provided by Defendants Lichtschein, Scheiner and/or Sirotkin.

331.    Upon information and belief, Defendants Lichtschein, Scheiner and Sirotkin exercised control, supervision, oversight and direction over the operation of the Hotel on their own and through Defendant Elchonen, the CFO and "Owner's Representative."

FIRST CLAIM FOR RELIEF
FAIR LABOR STANDARDS ACT – UNPAID MINIMUM WAGE
(29 U.S.C. § 201, et seq.)

*(On behalf of Plaintiffs & the FLSA Collective and Against Defendants)*

332.    Plaintiffs, on behalf of themselves and the Collective Action Members, repeat and reallege each and every allegation of the preceding paragraphs hereof with the same force and effect as though fully set forth herein.

333.    Defendants have failed to pay minimum wages by, among other things: (a) withholding and misappropriating gratuities and tips from Plaintiffs, which thereby barred Defendants from the right to take a tip credit with respect to Plaintiffs' wages; (b) failing to comply with applicable requirements for the administration of a tip pool and failing to comply with 29 U.S.C. § 203(m) and 29 C.F.R. § 531.59(b), which thereby barred Defendants from the right to take a tip credit with respect to Plaintiffs' wages; (c) providing tips to employees of the Hotel who were not entitled to receive tips (including management personnel), which thereby barred Defendants from the right to take a tip credit with respect to Plaintiffs' wages; (d) "shaving" hours; (e) failing to pay Plaintiffs for non-tipped duties and requiring Plaintiffs to work overlapping

parties, but only paying them for one party; (f) implementing a mandatory paycheck deduction for meals even though Plaintiffs did not uniformly eat meals provided by the Hotel; (g) failing to pay wages for hours worked in excess of forty (40) hours per week; (h) requiring Plaintiffs to wear uniforms, thereby imposing costs upon Plaintiffs for the laundering and maintenance of said uniforms, and thereby reducing Plaintiffs' actual wages.

334.    Defendants otherwise imposed unlawful deductions from wages, which deprived Plaintiffs from receiving minimum wages.

335.    By failing to pay minimum wages for all hours worked, Defendants have violated and continue to violate FLSA, 29 U.S.C. § 201 et seq., including 29 U.S.C. §§ 203(m), 206 and 215 (a)(2).

336.    The foregoing conduct, as alleged, constitutes a willful violation of the FLSA within the meaning of 29 U.S.C. § 255(a).

337.    Defendants' failure to pay minimum wages caused Plaintiffs and the Collective Action Members to suffer loss of wages and interest thereon.

338.    Plaintiffs and the Collective Action Members are entitled to recover from Defendants their unpaid minimum wages including the amount of the tip credits that were taken by Defendants, damages for unreasonably delayed payment of wages, liquidated damages, reasonable attorneys' fees and costs and disbursements of the action pursuant to 29 U.S.C. § 216(b).

SECOND CLAIM FOR RELIEF
NEW YORK LABOR LAW – UNPAID MINIMUM WAGES
(NYLL § 650, et seq. & 12 NYCRR § 146)

*(On behalf of Plaintiffs & the Rule 23 Class Members and Against Defendants)*

339.    Plaintiffs repeat and reallege each and every allegation of the preceding paragraphs hereof with the same force and effect as though fully set forth herein.

340.    Defendants willfully and in bad faith violated Plaintiffs' rights, and the rights of the Rule 23 Class Members, by failing to pay Plaintiffs' minimum wages for all hours worked in violation of the NYLL and regulations promulgated thereunder.

341.    Defendants have failed to pay minimum wages by, among other things: (a) withholding gratuities and tips and improperly distributing tips to employees who were not entitled to receive tips (including management personnel), which thereby barred Defendants from the right to take a tip credit with respect to wages; (b) failing to comply with Federal and State requirements for the administration of a tip pool and failing to comply with tip related provisions contained in 12 NYCRR § 146, which thereby barred Defendants from the right to take a tip credit with respect to wages; (c) "shaving" hours; (d) failing to pay wages for non-tipped duties, requiring the same employees to work overlapping parties, but only paying them for one of them; (d) implementing a mandatory paycheck deduction for meals even though meals were not furnished to employees at the Hotel; (e) failing to pay wages for hours worked in excess of forty (40) hours per week; and (f) imposing other unlawful deductions from wages.

342.    Plaintiffs, and the Rule 23 Class Members, are entitled to recover from Defendants their unpaid minimum wages, including the amount of the tip credits that were improperly taken, damages for unreasonably delayed payment of wages, liquidated damages, reasonable attorneys' fees, and costs and disbursements of the action pursuant to the NYLL.

### THIRD CLAIM FOR RELIEF
### FAIR LABOR STANDARDS ACT – UNPAID OVERTIME
### (29 U.S.C. § 201, et seq.)

*(On behalf of Plaintiffs & the FLSA Collective and Against Defendants)*

343.    Plaintiffs, on behalf of themselves and the Collective Action Members, repeat and reallege each and every allegation of the preceding paragraphs hereof with the same force and effect as though fully set forth herein.

344.    By failing to pay overtime at a rate not less than one and one-half times the regular rate of pay for work performed in excess of forty (40) hours per week, Defendants have violated and continue to violate the FLSA, 29 U.S.C. § 201 et seq., including 29 U.S.C. §§ 207(a)(l) and 215(a)(2).

345.    Defendants failed to compensate Plaintiffs for work performed "off the clock" and for work performed during scheduled lunch/meal breaks.

346.    Defendants engaged in a practice of "shaving" hours, i.e. paying Plaintiffs for less hours than the Plaintiffs worked in a given workweek.

347.    The foregoing conduct, as alleged, constitutes a willful violation of the FLSA within the meaning of 29 U.S.C. § 255(a).

348.    Defendants' failure to pay overtime caused Plaintiffs, with the exception of Plaintiffs Escobar and Alejandro Gonzalez, and the Collective Action Members to suffer loss of wages and interest thereon.

349.    Plaintiffs, with the exception of Plaintiffs Escobar and Alejandro Gonzalez, and the Collective Action Members are entitled to recover from Defendants their unpaid overtime premium compensation, damages for unreasonably delayed payment of wages, liquidated damages, reasonable attorneys' fees, and costs and disbursements of the action pursuant to 29 U.S.C. § 216(b).

## FOURTH CLAIM FOR RELIEF
## NEW YORK LABOR LAW – UNPAID OVERTIME
## (NYLL & 12 NYCRR § 146)

*(On behalf of Plaintiffs & the Rule 23 Class Members and Against Defendants)*

350.    Plaintiffs repeat and reallege each and every allegation of the preceding paragraphs hereof with the same force and effect as though fully set forth herein.

351.    Defendants willfully and in bad faith violated Plaintiffs' (with the exception of Plaintiffs Escobar and Alejandro Gonzalez) rights, and the rights of the Rule 23 Class Members, by failing to pay overtime compensation at a rate of not less than one and one-half times the regular rate of pay for hours worked in excess of forty (40) each week, in violation of the NYLL and regulations promulgated thereunder.

352.    Defendants' failure to pay overtime premium compensation caused Plaintiffs, with the exception of Plaintiffs Escobar and Alejandro Gonzalez, to suffer loss of wages and interest thereon.

353.    Defendants failed to compensate Plaintiffs for work performed "off the clock" and for work performed during scheduled lunch/meal breaks.

354.    Defendants engaged in a practice of "shaving" hours, i.e. paying Plaintiffs for less hours than the Plaintiffs worked in a given workweek.

355.    Plaintiffs, with the exception of Plaintiffs Escobar and Alejandro Escobar, and the Rule 23 Class Members, are entitled to recover from Defendants their unpaid overtime compensation, damages for unreasonably delayed payment of wages, liquidated damages, reasonable attorneys' fees, and costs and disbursements of the action pursuant to the NYLL and 12 NYCRR § 146.

FIFTH CLAIM FOR RELIEF
NEW YORK LABOR LAW – UNLAWFUL TIP POOL
(NYLL & 12 NYCRR § 146)

*(On behalf of the Food & Beverage Plaintiffs & Class 1 Members and Against
the Food & Beverage Defendants)*

356.    Plaintiffs repeat and reallege each and every allegation of the preceding paragraphs hereof with the same force and effect as though fully set forth herein.

357.    Pursuant to NYCRR§ 146-2.17, the Food & Beverage Defendants were obligated to keep accurate records of the tips collected by and for the Food & Beverage Plaintiffs, and the amount of tips that each employee receives from the tip pool.

358.    Upon information and belief, the Food & Beverage Defendants violated the aforesaid record keeping requirements by failing to keep such records.

359.    The Food & Beverage Defendants violated the record keeping requirements by failing to provide such records despite the Food & Beverage Plaintiffs' repeated requests to review these records, and for an explanation of how their tips were calculated under the tip pool system created and implemented by the Food & Beverage Defendants.

360.    The Food & Beverage Defendants also violated other tip-related provisions of 12 NYCRR § 146, including, but not limited to, 12 NYCRR § 146-1.3, 12 NYCRR § 146-2.4, 12 NYCRR § 146-2.9, 12 NYCRR § 146-2.16, 12 NYCRR § 146-2.17, 12 NYCRR § 146-2.18, 12 NYCRR § 146-2.19, 12 NYCRR § 146-2.20.

361.    The Food & Beverage Defendants have wrongfully paid tips and gratuities from the tip pool to persons who were not entitled to share in the tip pool, including, but not limited to individuals who were employed in management capacities at the Hotel.  The Food & Beverage Defendants unlawfully operated the tip pool, depriving the Food & Beverage Plaintiffs & Class 1

Members of tips rightfully earned. The aforementioned conduct concerning the unlawful tip pool was willful and done in bad faith.

362.    Due to the Food & Beverage Defendants' NYLL violations, the Food & Beverage Plaintiffs and Class 1 Members are entitled to recover from the Food & Beverage Defendants their unpaid gratuities, liquidated damages, pre-judgment and post-judgment interest, reasonable attorneys' fees, and costs and disbursements of the action pursuant to the NYLL.

SIXTH CLAIM FOR RELIEF
NEW YORK LABOR LAW – FAILURE TO PAY GRATUITIES
(NYLL § 196-d, NYLL §198 & 12 NYCRR § 146)

*(On behalf of the Food & Beverage Plaintiffs & Class 1 Members and Against
the Food & Beverage Defendants)*

363.    Plaintiffs repeat and reallege each and every allegation of the preceding paragraphs hereof with the same force and effect as though fully set forth herein.

364.    Section 196-d of the NYLL prohibits employers from demanding, accepting, or retaining directly or indirectly, any part of an employee's gratuity.

365.    Upon information and belief, among other things, Abdou has regularly solicited from customers tips to be paid to the Food & Beverage Plaintiffs, and then kept the money she received from such customers.

366.    Upon information and belief, among other things, the Food & Beverage Defendants have regularly cheated the Food & Beverage Plaintiffs, and Class 1 Members, out of tips by failing to pay the Food & Beverage Plaintiffs tips they were entitled to receive from the tip pool.

367.    Upon information and belief, the Food & Beverage Defendants have failed to pay the Food & Beverage Plaintiffs, and Class 1 Members, gratuities that customers have paid to the Food & Beverage Defendants as "service charges" even though the Food & Beverage Plaintiffs, and Class 1 Members, were entitled to receive said charges.

368.    The Food & Beverage Defendants have unlawfully confiscated withheld and denied the Food and Beverage Plaintiffs, and Class 1 Members, their rightful gratuities in violation of NYLL § 196-d, NYLL §198 & 12 NYCRR § 146.

369.    The Food & Beverage Defendants have wrongfully paid tips and gratuities from the tip pool to persons who were not entitled to share in the tip pool, including, but not limited to individuals who were employed in management capacities at the Hotel.

370.    Due to the Food & Beverage Defendants' violations of the NYLL and the provisions of 12 NYCRR § 146, the Food & Beverage Plaintiffs are entitled to recover from the Food & Beverage Defendants their unpaid gratuities and tips, the tip credits that the Food and Beverage Defendants deducted from the Food & Beverage Plaintiffs' wages, liquidated damages, pre-judgment and post-judgment interest, reasonable attorneys' fees, and costs and disbursements of the action pursuant to the NYLL.

371.    The aforesaid conduct in retaining gratuities which should have been received by the Food & Beverage Plaintiffs was willful and in bad faith.

SEVENTH CLAIM FOR RELIEF
NEW YORK LABOR LAW – WAGE STATEMENT VIOLATIONS
(NYLL § 195, NYLL & 198 12 NYCRR § 146-2.3)

*(On behalf of Plaintiffs & the Rule 23 Class Members and Against Defendants)*

372.    Plaintiffs repeat and reallege each and every allegation of the preceding paragraphs hereof with the same force and effect as though fully set forth herein.

373.    Defendants have willfully failed to provide proper wage statements to Plaintiffs and the Rule 23 Class Members as required by the NYLL.

374.     With respect to Plaintiffs who received tips, their wage statements did not set forth how the tip amount they were receiving was computed.  .

375.     The wage statements provided by Defendants to Plaintiffs and the Rule 23 Class Members did not comply with NYLL § 195(3).

376.     Defendants further violated NYLL § 195(3) by failing to furnish an explanation in writing as to the computation of Plaintiffs' wages upon request.

377.     Defendants' wage statement violations alleged herein was willful and done in bad faith.

378.     Defendants have violated, inter alia, NYLL § 195, NYLL & 198, 12 NYCRR § 146-2.3 by failing to comply with the requirements set forth therein.

379.     Due to Defendants' violations of the NYLL and applicable regulations provided in 12 NYCRR § 146, Plaintiffs, and the Rule 23 Class Members, are entitled to recover from Defendants two-hundred and fifty dollars ($250) per employee for each workweek that the violations occurred or continued to occur, or a total of five thousand dollars ($5,000) per employee pursuant to NYLL § 198, plus liquidated damages as provided for in the NYLL, reasonable attorneys' fees, costs, pre-judgment and post-judgment interest, and injunctive and declaratory relief.

EIGHTH CLAIM FOR RELIEF
NEW YORK LABOR LAW – UNPAID UNIFORM LAUNDERING ALLOWANCE
(NYLL & 12 NYCRR § 146-1.7)

*(On behalf of Plaintiffs & the Rule 23 Class Members and Against Defendants)*

380.     Plaintiffs repeat and reallege each and every allegation of the preceding paragraphs hereof with the same force and effect as though fully set forth herein.

381.    Employers are required to compensate employees beyond that specified by the minimum wage for laundering and maintaining required uniforms pursuant to NYLL, including 12 N.Y.C.R.R. § 146-1.7.

382.    Defendants failed to pay Plaintiffs, and the Rule 23 Class Members, additional pay beyond that specified by the minimum wage for laundering and maintaining required uniforms. Therefore, Defendants violated the NYLL and applicable regulations, including 12 NYCRR § 146-1.7.

383.    Defendants' failure to pay the additional pay beyond that specified by the minimum wage for laundering and maintaining required uniforms is in violation of the NYLL and applicable regulations, including 12 NYCRR § 146, and was willful and done in bad faith.

NINTH CLAIM FOR RELIEF
NEW YORK LABOR LAW – SPREAD-OF-HOURS PAY
(NYLL & 12 NYCRR § 146-1.6)

*(On behalf of Plaintiffs & the Rule 23 Class Members and Against Defendants)*

384.    Plaintiffs repeat and reallege each and every allegation of the preceding paragraphs hereof with the same force and effect as though fully set forth herein.

385.    The NYLL requires employers to pay an extra hour's pay for each day that an employee works an interval in excess of ten hours pursuant to the NYLL § 190 et seq. and NYLL § 650 et seq. and applicable regulations, including, 12 NYCRR § 146-1.6.

386.    Defendants failed to pay Plaintiffs, and the Rule 23 Class Members, an extra hour's pay at the minimum wage rate for every day that Plaintiffs worked an interval in excess of ten hours.

387.    Defendants' failure to Plaintiffs, and the Rule 23 Class Members, spread-of-hours pay was willful and in bad faith.

TENTH CLAIM FOR RELIEF
NEW YORK LABOR LAW – FAILURE TO PROVIDE MEAL PERIODS
(NYLL & 12 NYCRR § 146)

*(On behalf of Plaintiffs & the Rule 23 Class Members and Against Defendants)*

388.    Plaintiffs repeat and reallege each and every allegation of the preceding paragraphs hereof with the same force and effect as though fully set forth herein.

389.    The NYLL requires that employers provide: (a) a noon day meal period of at least 30 minutes for employees who work a shift of more than six hours extending over the noon day meal period from 11 am to 2 pm; (b) an additional meal period between 5 pm and 7 pm of at least 20 minutes for employees whose shift started before 11 am and continues later than then 7 pm; and/or (c) a 45 minute meal period at a time midway between the beginning and end of the shift for employees whose shift lasts more than 6 hours and starts between 1 pm and 6 am.

390.    Defendants failed to provide the meal periods required by the NYLL and applicable regulations, including 12 NYCRR § 146-2.8.

391.    Defendants' failure to provide the meal periods required by the NYLL was willful and in bad faith.

ELEVENTH CLAIM FOR RELIEF
NEW YORK LABOR LAW – MAINTENANCE OF EMPLOYMENT RECORDS
(NYLL § 195 & 12 NYCRR § 146)

*(On behalf of Plaintiffs & the Rule 23 Class Members and Against Defendants)*

392.    Plaintiffs repeat and reallege each and every allegation of the preceding paragraphs hereof with the same force and effect as though fully set forth herein.

393.    The NYLL requires employers to maintain adequate and accurate written records of the actual hours that employees have worked and the true wages earned by them.

394.     Upon information and belief, Defendants failed to maintain adequate and accurate written records of the actual hours worked and the true wages earned by Plaintiffs and the Rule 23 Class Members.

395.     Defendants, among other things, failed to comply with the requirements of, inter alia, NYLL § 195, 12 NYCRR § 146-2.1 and 12 NYCRR § 146-2.18.

396.     Defendants' failure to maintain adequate and accurate written records of the actual hours worked and the true wages earned by Plaintiffs, and the Rule 23 Class Members, was willful and in bad faith.

TWELFTH CLAIM FOR RELIEF
NEW YORK LABOR LAW – FAILURE TO PROVIDE NOTICE
AND INFORMATION ABOUT EMPLOYMENT LAWS
(NYLL & 12 NYCRR § 146)

*(On behalf of Plaintiffs & the Rule 23 Class Members and Against Defendants)*

397.     Plaintiffs repeat and reallege each and every allegation of the preceding paragraphs hereof with the same force and effect as though fully set forth herein.

398.     The NYLL and related regulations require employers to notify employees of their intent to apply a tip credit and post a notice conspicuously explaining the employment laws' requirements.

399.     During the period that Plaintiffs, and the Rule 23 Class Members, have been employed by Defendants, Defendants have not posted the notices required by the NYLL informing Plaintiffs of the requirements of such laws, and/or have not otherwise informed Plaintiffs about those requirements.

400.     Defendants violated 12 NYCRR § 146-2.4, by, among other things, failing to post the information requested therein.

401. Defendants' failure to post the required notices and/or otherwise inform Plaintiffs, and the Rule 23 Class Members, of the requirements of the employment laws was willful and in bad faith.

### THIRTEENTH CLAIM FOR RELIEF
### NEW YORK LABOR LAW – ILLEGAL DEDUCTIONS
### (NYLL § 193, 12 NYCRR § 146)

*(On behalf of Plaintiffs & the Rule 23 Class Members and Against Defendants)*

402. Plaintiffs repeat and reallege each and every allegation of the preceding paragraphs hereof with the same force and effect as though fully set forth herein.

403. The NYLL allows certain deductions from an employee's wages as long as they are voluntary, and prohibits deductions other than those allowed by law.

404. Defendants violated 12 NYCRR § 146-1.7, 12 NYCRR § 146-1.9, 12 NYCRR § 146-2.7 and 12 NYCRR § 146-2.8 with respect to their practice of imposing unlawful deductions.

405. In violation of the NYLL, Defendants unlawfully made regular mandatory deductions for meals from Plaintiffs' paychecks, without ever requesting the consent of Plaintiffs to such deductions. Said meal deductions were taken even when Plaintiffs did not eat meals provided by the Hotel.

406. Defendants regular deduction for meals, even when no meals were requested by or furnished to Plaintiffs, is a clear violation of the NYLL and 12 NYCRR § 146-1.9.

407. Defendants' violation of taking unlawful deductions was willful and done in bad faith.

### FOURTEENTH CLAIM FOR RELIEF
### NEW YORK LABOR LAW- FREQUENCY OF WAGE PAYMENTS
### (NYLL § 191)

*(On behalf of Plaintiffs & the Rule 23 Class Members and Against Defendants)*

408.    Plaintiffs repeat and reallege each and every allegation contained in the preceding paragraphs hereof with the same force and effect as if set forth herein.

409.    Under NYLL § 191, Plaintiffs, and the Rule 23 Class Members, at all times, should have been paid on a weekly basis.

410.    Defendants violated NYLL § 191 by failing to pay Plaintiffs, and the Rule 23 Class Members, on a weekly basis for certain periods of time.

411.    Defendants' violation of NYLL § 191 was willful and in bad faith.

FIFTEENTH CLAIM FOR RELIEF
NEW YORK LABOR LAW - FAILURE TO PAY FOR ALL
COMPENSABLE TIME WORKED
(NYLL § 191 & 12 NYCRR § 146)

*(On behalf of Plaintiffs & the Rule 23 Class Members and Against Defendants)*

412.    Plaintiffs repeat and reallege each and every allegation contained in the preceding paragraphs hereof with the same force and effect as if set forth herein.

413.    Defendants failed to pay Plaintiffs, and the Rule 23 Class Members, for all compensable work in violation of NYLL § 191. Defendants engaged in a practice of "shaving" hours, i.e. paying employees for less hours than the hours that the employees worked.

414.    Defendants engaged in a practice of not paying for "off the clock" work performed by Plaintiffs. For example, Plaintiffs failed to receive compensation for work performed after Plaintiffs "clocked out" but continued to work.

415.    Defendants assigned excessive workloads to Plaintiffs, and the Rule 23 Class Members, requiring "off the clock" work in order to complete Plaintiffs' and the Rule 23 Class Members' assigned duties.  However, Defendants failed and refused to compensate Plaintiffs, and the Rule 23 Class Members, for such "off the clock" work.

416.     Plaintiffs were required to work through break periods, yet were not compensated for work performed during the break periods.

417.     The aforementioned violation of failing to pay Plaintiffs, and the Rule 23 Class Members, for all compensable work time was willful and in bad faith.

SIXTEENTH CLAIM FOR RELIEF - BREACH OF CONTRACT
FAILURE TO PROVIDE PAID HOLIDAYS
(NEW YORK STATE LAW)

*(On behalf of Plaintiffs & the Rule 23 Class Members and Against Defendants)*

418.     Plaintiffs repeat and reallege each and every allegation contained in the preceding paragraphs hereof with the same force and effect as if set forth herein.

419.     Defendants agreed to provide Plaintiffs, and the Rule 23 Class Members, with certain paid holidays, which was reflected in an employee manual, which, upon information and belief, was required to be signed by Hotel employees.

420.     Providing the said paid holidays became a well-established employment policy of the Defendants.

421.     Although Defendants initially did provide paid holidays in compliance with the aforementioned agreement and policy, Defendants began to violate the terms of the said agreement and policy by suddenly failing and refusing to provide paid holidays.

422.     In lieu of providing the paid holidays which Defendants agreed to provide, Defendants began automatically docking each employee with one vacation day for each holiday. Said vacation days were docked in violation of the aforementioned agreement and employment policy without permission from the affected employees. As a result, Plaintiffs and the Rule 23 Class Members were damaged thereby.

SEVENTEENTH CLAIM FOR RELIEF-
NEW YORK LABOR LAW: POSTING VIOLATIONS
(NYLL & 12 NYCRR § 146)

*(On behalf of Plaintiffs & the Rule 23 Class Members and Against Defendants)*

423. Plaintiffs repeat and reallege each and every allegation contained in the preceding paragraphs hereof with the same force and effect as if set forth herein.

424. Defendants were required to post certain material in compliance with the NYLL and 12 NYCRR § 146-2.4.

425. Defendants violated the NYLL and 12 NYCRR § 146-2.4 by failing and refusing to post all of the required material.

426. The aforementioned violation of the posting requirements contained in the NYLL and 12 NYCRR § 146-2.4 was willful and in bad faith.

EIGHTEENTH CLAIM FOR RELIEF
NEW YORK LABOR LAW:
WORK PERFORMED DURING LUNCH BREAKS
(NYLL § 191 & 12 NYCRR § 146)

*(On behalf of the Housekeeping Plaintiffs & the Class 3 Members
and Against the Housekeeping Defendants)*

427. Plaintiffs repeat and reallege each and every allegation contained in the preceding paragraphs hereof with the same force and effect as if set forth herein.

428. The Housekeeping Plaintiffs, and the Class 3 Members, often had to work during lunch breaks.

429. The Housekeeping Plaintiffs were considered to be "off the clock" during this time regardless of whether they worked.

430.    The Housekeeping Defendants knew, or should have known, that the Housekeeping Plaintiffs were performing work at this time on their behalf and permitted the Housekeeping Plaintiffs to continue performing work.

431.    The Housekeeping Plaintiffs, and the Class 3 Members, should have been paid for work performed during their lunch breaks, and the Housekeeping Defendants failed to pay them for this time worked.

432.    The Housekeeping Defendants' violation of failing to pay the Housekeeping Plaintiffs, and the Class 3 Members, for work performed during lunch breaks was willful and in bad faith.

NINETEENTH CLAIM FOR RELIEF
NEW YORK LABOR LAW – PURCHASE OF
SUPPLIES, EQUIPMENT & TOOLS
(NYLL § 193 & 12 NYCRR § 146)

*(On behalf of the Housekeeping Plaintiffs & the Class 3 Members
and Against the Housekeeping Defendants)*

433.    Plaintiffs repeat and reallege each and every allegation contained in the preceding paragraphs hereof with the same force and effect as if set forth herein.

434.    The Housekeeping Plaintiffs, and Class 3 Members, were required to purchase their own cleaning supplies, equipment and tools in order to perform their duties on +

435.    The Housekeeping Defendants knew of such purchases and payments and failed to reimburse the Housekeeping Plaintiffs for these costs.

436.    The Housekeeping Defendants violated NYLL § 193 & 12 NYCRR § 146-2.7 in connection with the purchase of the aforementioned cleaning supplies, equipment and tools.

437.    The failure to reimburse the Housekeeping Plaintiffs, and Class 3 Member, for the purchasing of the aforementioned cleaning supplies, equipment and tools resulted in improper

charges against and deductions from the Housekeeping Plaintiffs' wages which effectively lowered the regular and overtime wage rates of the Housekeeping Plaintiffs.

438.    The Housekeeping Defendants, and Class 3 Members, are, among other things, entitled to reimbursement for the purchasing of the aforementioned cleaning supplies, equipment and tools.

439.    The Housekeeping Defendants' failure to reimburse the Housekeeping Plaintiffs, and Class 3 Members, for the purchasing of the aforementioned cleaning supplies, equipment and tools was intentional and was not in good faith.

TWENTIETH CLAIM FOR RELIEF
NEW YORK LABOR LAW - FAILURE TO PAY GRATUITIES
(NYLL § 196-d, NYLL §198 & 12 NYCRR § 146)

*(On behalf of the Housekeeping Plaintiffs & the Class 3 Members
and Against the Housekeeping Defendants)*

440.    Plaintiffs repeat and reallege each and every allegation of the preceding paragraphs hereof with the same force and effect as though fully set forth herein.

441.    Section 196-d of the NYLL prohibits employers from demanding, accepting, or retaining directly or indirectly, any part of an employee's gratuity.

442.    The Housekeeping Defendants have failed to pay the Housekeeping Plaintiffs, and Class 3 Members, gratuities from hotel customers that were intended to go to the Housekeeping Plaintiffs.

443.    Upon information and belief, the Housekeeping Defendants procured gratuities from certain hotel customers with the understanding that the gratuities would be passed along to the Housekeeping Plaintiffs.  However, the Housekeeping Defendants have confiscated and retained said gratuities and have not paid said gratuities over to the Housekeeping Plaintiffs.

444.    Upon information and belief, among other things, the Housekeeping

445.    Defendants solicited and accepted tips intended for the Housekeeping and then did not provide them to the Housekeeping Plaintiffs.

446.    The Housekeeping Defendants have willfully and unlawfully confiscated, withheld and denied the Housekeeping Plaintiffs and Class 3 Members their rightful gratuities in violation of NYLL § 196-d, NYLL §198 & 12 NYCRR § 146..

447.    Upon information and belief, the Housekeeping Plaintiffs and Class 3 Members were deprived of gratuities that should have been paid to them pursuant to customer contracts.

448.    The aforesaid conduct in retaining gratuities which should have been received by the Housekeeping Plaintiffs was willful and in bad faith.

449.    Due to the Housekeeping Defendants' violations of the NYLL and the provisions of 12 NYCRR § 146, the Housekeeping Plaintiffs, and Class 3 Members, are entitled to recover from the Housekeeping Defendants their unpaid gratuities and tips, liquidated damages, pre-judgment and post-judgment interest, reasonable attorneys' fees, and costs and disbursements of the action pursuant to the NYLL.

TWENTY-FIRST CLAIM FOR RELIEF
NEW YORK LABOR LAW - UNLAWFUL TIP POOL
(NYLL & 12 NYCRR § 146)

*(On behalf of the Housekeeping Plaintiffs & the Class 3 Members
and Against the Housekeeping Defendants)*

450.    Plaintiffs repeat and reallege each and every allegation of the preceding paragraphs hereof with the same force and effect as though fully set forth herein.

451.    The Housekeeping Defendants operated an unlawful tip pool with respect to tips provided for the Housekeeping Plaintiffs.

452. With respect to any tip pool, the Housekeeping Defendants were obligated to keep accurate records of the tips collected and the amount of tips that each employee receives from the tip pool.

453. The Housekeeping Defendants directed tips intended for the Housekeeping Plaintiffs, and Class 3 Members, into an unlawful tip pool which did not comply with applicable laws, rules and regulations.

454. Among other things, the Housekeeping Defendants failed to keep accurate records in connection with the tip pool maintained for tips intended for the Housekeeping Plaintiffs.

455. The Housekeeping Defendants violated the tip-related provisions of 12 NYCRR § 146.

456. The Housekeeping Defendants have wrongfully paid tips and gratuities from the tip pool to persons who were not entitled to share in the tip pool, including, but not limited to individuals who, upon information and belief, were employed in management capacities at the Hotel.

457. Due to the Housekeeping Defendants' NYLL violations, the Housekeeping Plaintiffs, and the Class 3 Members are entitled to recover from the Housekeeping Defendants their unpaid gratuities, liquidated damages, pre-judgment and post-judgment interest, reasonable attorneys' fees, and the costs and disbursements of the action pursuant to the NYLL.

458. The aforesaid violations regarding the unlawful tip pool maintained by the Housekeeping Defendants for tips intended for the Housekeeping Plaintiffs, and Class 3 Members, were willful and in bad faith.

TWENTY-SECOND CLAIM FOR RELIEF
FAIR LABOR STANDARDS ACT – RETALIATION
(29 U.S.C. § 215(a)(3))

*(On behalf of Plaintiffs Ocampo, Morozov, Villanueva, Ortiz, Retana, Calderon,*
*Monchaitanapat and Suriel and Against the Food & Beverage Defendants)*

459.    Plaintiffs repeat and reallege each and every allegation of the preceding paragraphs hereof with the same force and effect as though fully set forth herein.

460.    The FLSA prohibits employers from discriminating, or taking other adverse actions, against an employee because he or she has engaged in protected activity such as making a complaint to the New York State Department of Labor about employment law violations.

461.    Plaintiffs Ocampo, Morozov, Villanueva, Ortiz, Retana, Calderon, Monchaitanapat and Suriel have engaged in protected activity as defined under the FLSA.

462.    The Food & Beverage Defendants have engaged in a policy, pattern and/or practice of retaliating against Plaintiffs Ocampo, Morozov, Villanueva, Ortiz, Retana, Calderon, Monchaitanapat and Suriel who engaged in protected activity by, among other things, selectively reducing work hours.

463.    Defendants' policy, pattern and/or practice of retaliating adversely affects Defendants' employees by chilling their participation in protected activity.

464.    The aforedescribed retaliatory action taken against the said Food & Beverage Plaintiffs was in violation of 29 U.S.C. § 215(a)(3).

465.    Defendants' policy, pattern and/or practice in connection with the aforesaid retaliatory action in violation of 29 U.S.C. § 215(a)(3) was willful.

TWENTY-THIRD CLAIM FOR RELIEF
NEW YORK LABOR LAW – RETALIATION
(NYLL § 215)

*(On behalf of Plaintiffs Ocampo, Morozov, Villanueva, Ortiz, Retana, Calderon,
Monchaitanapat and Suriel and Against the Food & Beverage Defendants)*

466.     Plaintiffs repeat and reallege each and every allegation of the preceding paragraphs hereof with the same force and effect as though fully set forth herein.

467.     The NYLL prohibits employers from discriminating, or taking other adverse actions, against an employee because he or she has engaged in protected activity such as making a complaint to an employer, or other entity, about employment law violations.

468.     Plaintiffs Ocampo, Morozov, Villanueva, Ortiz, Retana, Calderon, Monchaitanapat and Suriel have engaged in protected activity as defined in the NYLL.

469.     The Food & Beverage Defendants have engaged in a policy, pattern and/or practice of retaliating against Plaintiffs Ocampo, Morozov, Villanueva, Ortiz, Retana, Calderon, Monchaitanapat and Suriel who engaged in protected activity by, among other things, selectively reducing work hours.  Said retaliation is in violation of NYLL § 215.

470.     The Food & Beverage Defendants' policy, pattern and/or practice of retaliating adversely affects the employees of the Food & Beverage Defendants by chilling their participation in protected activity.

471.     The aforementioned retaliation was willful and not in good faith.

TWENTY-FOURTH CLAIM FOR RELIEF
ALTER EGO/PIERCING THE CORPORATE VEIL
(FEDERAL/NEW YORK LAW)

*(On behalf of Plaintiffs Against Defendants Lichtschein, Scheiner, Sirotkin, Elchonen, Jordan and Browne & Appel)*

472.    Plaintiffs repeat and reallege each and every allegation of the preceding paragraphs hereof with the same force and effect as though fully set forth herein.

473.    Defendant Lichtschein is personally liable with respect to each of the claims for relief set forth above pursuant to the doctrine of alter ego/piercing the corporate veil.

474.    Defendant Scheiner is personally liable with respect to each of the claims for relief set forth above pursuant to the doctrine of alter ego/piercing the corporate veil.

475.    Defendant Jordan is liable with respect to each of the claims for relief set forth above pursuant to the doctrine of alter ego/piercing the corporate veil.

476.    Defendant Browne & Appel is liable with respect to each of the claims for relief set forth above pursuant to the doctrine of alter ego/piercing the corporate veil.

477.    Although not a member of 455 Hospitality, Defendant Sirotkin exercised domination and control over 455 Hospitality such that Defendant Sirotkin may be deemed an equitable owner of 455 Hospitality and, as an equitable owner of 455 Hospitality, Defendant Sirotkin is personally liable with respect to each of the claims for relief set forth above pursuant to the doctrine of piercing the corporate veil.

478.    It would be unjust and inequitable for Defendant Lichtschein to not be held personally liable, pursuant to the doctrine of piercing the corporate veil, for the claims for relief set forth herein.

479.   It would be unjust and inequitable for Defendant Scheiner to not be held personally liable, pursuant to the doctrine of piercing the corporate veil, for the claims for relief set forth herein.

480.   It would be unjust and inequitable for Defendant Sirotkin to not be held personally liable, pursuant to the doctrine of piercing the corporate veil, for the claims for relief set forth herein.

481.   It would be unjust and inequitable for Defendant Jordan to not be held liable, pursuant to the doctrine of piercing the corporate veil, for the claims for relief set forth herein.

482.   It would be unjust and inequitable for Defendant Browne & Appel, to not be held liable, pursuant to the doctrine of piercing the corporate veil, for the claims for relief set forth herein.

<u>JURY TRIAL DEMAND</u>

Plaintiffs demand a trial by jury on all issues properly before this Court and all questions of fact raised by this Complaint.

<u>PRAYER FOR RELIEF</u>

WHEREFORE, Plaintiffs on behalf of themselves, the FLSA Collective and the Rule 23 Class respectfully request that this Court enter a judgment providing the following relief:

(a)    Certification of this action as collective action pursuant to the FLSA;

(b)    Certification of the instant action as a class action under Rule 23 of the Federal Rules of Civil Procedure;

(c)    Issuance of a declaratory judgment that the practices complained of in this complaint are unlawful;

(d)    An order requiring the payment of all unpaid minimum wages, the tip credits that were unlawfully deducted from wages, overtime wages, gratuities, tips, all unlawful deductions, and all other wages or sums of money owed pursuant to 29 U.S.C. § 201 *et seq*. and applicable regulations, plus liquidated damages pursuant to 29 U.S.C. § 216, amounting in total to not less than $10,000,000;

(e)    An order requiring the payment of all unpaid minimum wages, the tip credits that were unlawfully deducted from Plaintiffs wages, overtime pay, gratuities, tips, spread-of-hours pay, all other unlawful deductions and all other wages or sums of money owed pursuant to NYLL § 190, *et seq*., NYLL § 650 *et seq*., and applicable regulations, plus liquidated damages pursuant to NYLL § 198, amounting in total to not less than $10,000,000.

(f)    Damages, including, but not limited to monetary damages, pursuant to NYLL § 191, NYLL § 193, NYLL § 195 and NYLL § 198, including, but not limited to, monetary damages pursuant to NYLL § 198(1-d);

(g)    Damages, including, but not limited to monetary damages, pursuant to NYLL § 215;

(h)    Damages, including, but not limited to monetary damages, pursuant to 29 U.S.C. § 216;

(i)    An order pursuant to the NYLL requiring Defendants to immediately comply with all applicable employment laws, including providing meal breaks, paying appropriate minimum wage rates and overtime pay, paying tip wages, paying gratuity wages, spread-of-hours pay, compensation for uniform  laundering,  maintaining the required records of, *inter alia*, the hours, pay, deductions, time for untipped work, time worked doing other work, and informing employees of the requirements of the employment law;

(j)      Legal and equitable relief pursuant to 29 U.S.C. § 216;

(k)      Legal and equitable relief as a remedy for the retaliation against Plaintiffs, including, but not limited to, declaratory relief declaring the subject actions as retaliatory, prohibiting future retaliation, payment of lost wages resulting from retaliatory actions, as well as other lost compensation in an amount not less than $100,000 and punitive damages in an amount not less than $500,000;

(l)      Pre-judgment interest and post-judgment interest, as allowed by law;

(m)      Attorneys' fees pursuant to 29 U.S.C. § 216(b) and NYLL §§ 198 & 663;

(n)      The costs and disbursements of this action; and

(o)      Such other relief as this Court deems just and proper.

Dated:  White Plains, New York
       September 24, 2019

SPOLZINO SMITH BUSS & JACOBS, LLP

By:    */s/ John J. Malley*_____
       John J. Malley, Esq. (JM3900)
       81 Main Street, Suite 306
       White Plains, New York 10601
       Tel: (914) 476-0600
       Fax: (914) 499-3910
       jmalley@ssbjlaw.com

         -and-
       VINCENT VOLINO PLLC
       Vincent Volino, Esq. (VV1101)
       1250 Central Park Avenue
       Yonkers, New York 10704
       Tel: (914) 423-2023
       Fax: (914) 423-8964
       vvolino@volinolaw.com

       *Attorneys for Plaintiffs*