UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------------------x

CARLOS OCAMPO, IGOR MOROZOV, JORGE
VILLANUEVA, AMAURY ORTIZ, PLINIO RETANA,
MANUEL CALDERON, SUTEE MONCHAITANAPAT,
DOUGLAS MOLINA, NELSON DELAROSA, FELIPE
BARRIGA, SONIA GONZALEZ, ALBERTO GONZALES,
PANFILO ESCOBAR, EDWARD SURIEL, ALEJANDRO
GONZALEZ, FRANCISCO SOLIS, CANDIDO SANCHEZ,
ESTELA PENALO DIAZ, LUCIA ROJAS-ESCOLASTICO,
JENNYS MOYA, CLARISA ROJAS-ESCOLASTICO,
HILARIO KU and MARIA LAMOTH on behalf of
themselves and all others similarly situated,

                                        Plaintiffs,

                    -against-

455 HOSPITALITY LLC, DOUBLETREE FRANCHISE
LLC, DOUBLETREE HOTEL SYSTEMS, INC., RICHARD
FRIEDMAN, DAVID RIBBENS, NORMA ABDOU,
NURUL HAQUE, DOREEN CLARKE, ACCORD HUMAN
RESOURCES 14, INC. a/k/a ACCORD HUMAN
RESOURCES OF NEW YORK, INC., TRINET HR III,
INC. a/k/a TRINET HR CORPORATION, TEDDY
LICHTSCHEIN, ELIEZER SCHEINER, ALEXANDER
SIROTKIN, EFRAIM ELCHONEN, JORDAN LLC and
BROWNE & APPEL, LLC,

                                        Defendants.

-------------------------------------------------------------------------x

Civ. No.:  14-CIV-9614 (KMK)

## <u>CLASS SETTLEMENT AGREEMENT AND RELEASE</u>

WHEREAS, Plaintiffs Carlos Ocampo, Igor Morozov, Jorge Villanueva, Amaury Ortiz, Plinio Retana, Manuel Calderon, Sutee Monchaitanapat, Douglas Molina, Nelson Delarosa, Felipe Barriga, Sonia Gonzalez, Alberto Gonzalez, Panfilo Escobar, Edward Suriel, Alejandro Gonzalez, Francisco Solis, Candido Sanchez, Estela Penalo Diaz, Lucia Rojas-Escolastico, Jennys Moya, Clarisa Rojas-Escolastico, Hilario Ku and Maria Lamoth (the "Named Plaintiffs"), individually and on behalf of a putative class of individuals the Plaintiffs purport to represent (the "Settlement Class"), and Defendants 455 Hospitality LLC ("455"), Doubletree Franchise LLC (Hilton Franchise Holding LLC (as successor-in-interest to Doubletree Franchise, LLC)), Doubletree Hotel Systems, Inc., Richard Friedman, David Ribbens, Norma Abdou, Nurul Haque, Doreen Clarke, Accord Human Resources 14, Inc. a/k/a Accord Human Resources of New York, Inc. TriNet HR III, Inc. a/k/a TriNet HR Corporation (collectively "TriNet"), Jordan LLC, Teddy

Lichtschein, Eliezer Scheiner and Efraim Elchonen (collectively the "Settling Defendants") (together with the Named Plaintiffs, the "Parties"), desire to resolve, settle and agree to dismiss with prejudice any and all claims which Plaintiffs have made in or by the Fourth Amended Complaint filed in the above-captioned action pending in the U.S. District Court for the Southern District of New York, Case No. 14-CV-09614 (KMK) (the "Litigation"), without further litigation or adjudication;

WHEREAS, the Fourth Amended Complaint asserted class claims under the New York Labor Law ("NYLL") and collective-action claims under the Fair Labor Standards Act ("FLSA"), and sought recovery for, among other things, alleged unpaid wages and overtime, unpaid spread of hours, unpaid gratuities, as well as alleged statutory penalties for pay statement and/or pay frequency violations, liquidated damages, and attorneys' fees and costs; and, for seven Named Plaintiffs alleged retaliation under both the FLSA and the NYLL (together herein, the "Claims");

WHEREAS, the Settling Defendants have denied and continue to deny all of the allegations made by Plaintiffs in the Litigation and have denied and continue to deny that they are liable or owe damages to anyone with respect to the alleged facts or causes of action asserted in the Litigation against them. Nonetheless, the Settling Defendants have agreed, subject to Court approval, to settle the Litigation on the terms and conditions set forth in this Agreement, to avoid the burden, expense, and uncertainty of continuing the Litigation;

WHEREAS, the Parties have engaged in extensive discovery including, but not limited to, exchanging initial disclosures, reviewing tens of thousands of documents produced by the Settling Defendants and analyzing volumes of information including, but not limited to, time and payroll records, event contracts and other records relating to work performed by the Named Plaintiffs and the members of the Settlement Class;

WHEREAS, by Order dated March 2, 2016 (Dkt. No. 91) the Court conditionally certified the Litigation as a collective action pursuant to 29 U.S.C. § 216(b) for the claims asserted under the FLSA. Prior to and following Court-authorized notice, 111 individuals (including the Named Plaintiffs) filed a Consent to Join the claims under the FLSA and designating Class Counsel (defined below) as their attorneys in the Litigation. The Court has not, however, certified the Litigation as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure;

WHEREAS, a *bona fide* dispute exists as to the Claims of the Named Plaintiffs and for the Settlement Class;

WHEREAS, the Named Plaintiffs and the Settling Defendants understand and agree that neither the making of this Agreement nor anything contained herein shall be construed or considered in any way to be an admission by the Settling Defendants or any other person or entity of guilt or noncompliance with any federal, state, or local statute, order, regulation, or ordinance, public policy, tort law, contract (whether oral or written, express or implied), common law, the Settling Defendants' practices, policies, benefit plans, compensation plans or procedures, or of any other wrongdoing whatsoever;

WHEREAS, 455 had indicated that it was in financial distress throughout the above proceedings;

2

WHEREAS, on or about November 15, 2020, CIBC, Inc., 455's lender, filed a verified complaint for foreclosure against 455 Hospitality LLC et al. in the Supreme Court of the State of New York, County of Westchester;

WHEREAS, CIBC, Inc. maintains in said action that it has a perfected first priority lien against the real and personal property of 455 Hospitality LLC;

WHEREAS, on or about December 3, 2020, the Honorable Justice Woods of the Supreme Court of the State of New York, County of Westchester entered an Order appointing a Receiver. See, Order Appointing Receiver in Mortgages Foreclosure Action, Index Number 62831/2020;

WHEREAS, pursuant to Justice Woods' Order, Defendant 455, the direct employer of all Plaintiffs, was ordered in part to "deliver and attorn to the Receiver," among other things, "all monies constituting operating, reserve or escrow funds presently on deposit at any financial institution on or for the account of the borrower or the Mortgaged Premises," and it did so;

WHEREAS, the Order also indicated in part that the "Receiver be and hereby is empowered and directed to demand, collect and receive…and to collect all other rents, issues and profits and other benefits of or from the Mortgaged Premises";

WHEREAS, pursuant to the Order, the Borrower, 455, was enjoined and restrained from collecting "charges derived from the Mortgaged Premises or any part thereof, and from operating the Mortgaged Premises….";

WHEREAS, the Receiver appointed has refused to permit funds in his possession or future receipts to be utilized to pay any portion of this Settlement;

WHEREAS, 455, Richard Friedman, David Ribbens, Norma Abdou, Nurul Haque, Doreen Clarke, Teddy Lichtschein, Eliezer Scheiner and Efraim Elchonen are Insureds under an insurance policy (the "Policy") and such insurer (the "Insurer") is defending 455, Richard Friedman, David Ribbens, Norma Abdou, Nurul Haque, Doreen Clarke, Teddy Lichtschein, Eliezer Scheiner and Efraim Elchonen (collectively, the "Insureds") under the Policy in connection with the Litigation, subject to a full and complete reservations of rights;

WHEREAS, the Insureds understand based on the information available that (i) the Policy does not provide  indemnification on any claims, with the exception of potential indemnification coverage for the individual retaliation claims, and (ii) the Policy's applicable limit of liability will be exhausted defending the Insureds through trial making any potential indemnification for the individual retaliation claims a moot point in any case;

WHEREAS, without obligation, subject to the terms hereof, the Insureds and the Insurer have agreed that, in light of the projected exhaustion of the Policy's applicable limit of liability on defense through trial, the Insureds  may contribute the remaining applicable limit of liability towards the settlement of the Litigation, subject to no obligation to contribute on similar terms as to any other Claim made against any other insured, including the Insureds; however, if the Litigation does not settle on the terms set forth in this Agreement and/or the Final Effective Date does not occur, such offer of contribution of funds toward a settlement will be withdrawn and the

funds will instead be utilized to defend the Insureds, subject to a reservation of rights, until the Policy's applicable limit of liability is exhausted by covered Loss, and

WHEREAS, upon Court approval of this Agreement the Lawsuit shall be dismissed in its entirety and with prejudice as to the Settling Defendants upon the entry of an Order for same consistent with the Parties' Agreement as set forth below:

NOW THEREFORE, IT IS STIPULATED AND AGREED BY AND BETWEEN THE PARTIES that:

1.   **DEFINITIONS**.

The defined terms set forth in this Agreement have the meanings ascribed to them as set forth below.

1.1.   **Acceptance Period.**  "Acceptance Period" means the date by which any Class Member who wishes to qualify as an Authorized Claimant must timely file a Claim Form with the Claims Administrator pursuant to Section 2.5 of this Agreement, which shall be: (i) forty-five (45) days from the date of the Claims Administrator's initial mailing of the Notice and Claim Form (or as otherwise set by the Court); and (ii) an additional ten (10) days for any Class Member who did not receive the Notice, or who was unable to file the Claim Form within the original forty-five (45) days from mailing allotted due to such factors as change of address, military service, hospitalization, or other extraordinary circumstances.

1.2.   **Agreement.**  "Agreement" means this Class Settlement Agreement and Release.

1.3.   **Authorized Claimant.** "Authorized Claimant" means each Class Member, or the authorized legal representative of such Class Member, who timely files a Claim Form in accordance with the terms of this Agreement, and who is therefore entitled to receive a Settlement Check.  The Named Plaintiffs and any Class Member who has heretofore filed a Consent To Join are deemed Authorized Claimants upon execution of this Agreement and need not return a claim form.

1.4.   **Claims Administrator.**  <u>"Claims Administrator" shall mean Class Counsel and the accounting firm of Robert N. Lang, C.P.A, 1250 Central Park Ave., Yonkers, NY 10704, who will   provide notice to the Class and administer payment of the settlement to Authorized Claimants.</u>

1.5.   **Claim Form.** "Claim Form" means the form, a copy of which is attached to the Notice of Settlement of Class Action Lawsuit, that Class Members must sign and return during the Acceptance Period to become an Authorized Claimant.

1.6.   **Class Counsel or Plaintiffs' Counsel.**  "Class Counsel or Plaintiffs' Counsel" means Jack Malley, Esq., Smith, Buss & Jacobs, LLP, 733 Yonkers Avenue, Yonkers, New York 10704, and Vincent Volino, Esq., Vincent Volino PLLC, 1250 Central Park Avenue, Yonkers, NY 10704.

1.7. **Class List.** "Class List" means a list in electronic format, preferably in Microsoft Excel, that includes (to the extent known by the Settling Defendants) the: (i) name; (ii) last known address; (iii) job title; (iv) dates of employment; (v) social security number, and (vi) last known telephone number. The Class List has been provided to Class Counsel, without social security numbers. The Class List is to be used by Class Counsel and the Claims Administrator solely to effectuate settlement, and may not be copied, disseminated or used for any other purpose.

1.8. **Class Members.** "Class Members" means the Named Plaintiffs, Opt-In Plaintiffs, and all individuals employed at the Doubletree by Hilton Hotel located at 455 S. Broadway, Tarrytown, New York 10591 (the "Hotel") at any time from December 4, 2008 until March 18, 2016, and held a non-exempt position within the Food and Beverage Department or the Housekeeping Department including in any of the following positions: banquet server, waiter/waitress, host/hostess, dishwasher, sous chef, cook, room service attendant, dining room attendant, banquet houseman, housekeeper, room attendant, housekeeping houseman.

1.9. **Class Representatives.** "Class Representatives" means the Named Plaintiffs.

1.10. **Costs and Fees.** "Costs and Fees" means, collectively, Class Counsel's reasonable attorneys' fees, costs, and expenses.

1.11. **Court.** "Court" means the U.S. District Court for the Southern District of New York, located at 300 Quarropas Street, White Plains, New York 10601.

1.12. **Days.** "Days" means calendar days.

1.13. **Settling Defendants.** "Settling Defendants" means 455, Doubletree Franchise LLC (Hilton Franchise Holding LLC (as successor-in-interest to Doubletree Franchise, LLC)), Doubletree Hotel Systems, Inc., Richard Friedman, David Ribbens, Norma Abdou, Nurul Haque, Doreen Clarke, TriNet, Jordan LLC, Teddy Lichtschein, Eliezer Scheiner and Efraim Elchonen, and their past and present officers, trustees, directors, members, shareholders, owners, employees, agents, parents, subsidiaries, predecessors, affiliates, managers, administrators, attorneys, accountants, insurers, re-insurers, lenders, successors and assigns (each in his, her or its capacity as such) and their heirs executors, administrators, successors and assigns of any such person or entity except Sirotkin and Browne & Appel, LLC which have chosen not to participate in the settlement.

1.14. **Non-Settling Defendants.** "Non-Settling Defendants" means Alexander Sirotkin and Browne & Appel, LLC.

1.15. **Defendants' Counsel.** "Defendants' Counsel" or "Settling Defendants' Counsel" means the following:

    A.    On behalf of 455, Richard Friedman, David Ribbens, Norma Abdou, Nurul Haque, Doreen Clarke and Efraim Elchonen: Jonathan M. Kozak, Esq.,

Michael A. Frankel, Esq. and Brian A. Bodansky, Esq. of Jackson Lewis P.C., 44 South Broadway, 14th Floor, White Plains, New York 10601.

**B.**     On behalf of Doubletree Franchise LLC and Doubletree Hotel Systems, Inc.: Jonathan Levitan, Esq. of The Law Offices of Jonathan D. Levitan, LLC, 430 Williams Road, Wynnewood, Pennsylvania 19096 and Caren Litvin, Esq. of Litvin Law Office, 150 N. Radnor Chester Road, Radnor, PA 19087.

**C.**     On behalf of TriNet: David Edward Strand, Esq., Fisher & Phillips, LLP, 430 Mountain Avenue, Suite 303, Murray Hill, New Jersey 07974.

**D.**     On behalf of Jordan LLC: Laura M Catina, Esq. Law Office of Laura M. Catina, PLLC, 3 E. Evergreen Rd. #358, Suite 502, New City, New York 10956.

**E.**     On behalf of Teddy Lichtschein, Eliezer Scheiner: Tara Rosenbaum, Esq of Rosenbaum and Associates, PO Box 588, Cross River, NY 10518.

1.16.   **Employer-Side Employment Taxes.**   "Employer-Side Employment Taxes" means all taxes and withholdings the Settling Defendants may be required to make arising out of or based upon the payment of taxable employment compensation in this Lawsuit, including but not limited to FICA, FUTA, and SUTA obligations.

1.17.   **Employee-Side Employment Taxes.**   "Employee-Side Employment Taxes" means all ordinary and regular taxes required to be withheld from an employee's compensation or other income.

1.18.   **Final Effective Date.**  "Final Effective Date" means thirty-five (35) days after the Court has entered the Final Approval Order dismissing the Lawsuit as to the Settling Defendants, and the time to appeal from the Final Approval Order has expired and no notice of appeal has been filed or if a notice of appeal is filed, the latest of the following, if applicable, has occurred: (1) any appeal from the Final Approval Order has been finally dismissed; (2) the Final Approval Order has been affirmed on appeal in a form substantially identical to the form of the Final Approval Order entered by the Court; (3) the time to petition for review with respect to any appellate decision affirming the Final Approval Order has expired; and (4) if a petition for review of an appellate decision is filed, the petition has been denied or dismissed, or, if granted, has resulted in affirmance of the Final Approval Order in a form substantially identical to the form of the Final Approval Order entered by the Court.

1.19.   **Fairness Hearing.**  "Fairness Hearing" means the hearing before the Court relating to the Motion for Final Approval.

1.20.   **Final Approval Order.**  "Final Approval Order" means the Order entered by the Court after the Fairness Hearing, approving the terms of this Agreement, dismissing

the Complaint with prejudice, and entering a judgment consistent with the Parties' settlement terms.

**1.21.** **Individual Gross Amount.** "Individual Gross Amount" means the amount allocated to each individual Authorized Claimant pursuant to Section 3.4(B), prior to any deduction for Employee-Side Employment Taxes required to be withheld from employee compensation or other income.

**1.22.** **Individual Net Amount.** "Individual Net Amount" means the amount paid to the individual Authorized Claimants after deduction for Employee-side Employment Taxes required to be withheld from employee compensation or other income, pursuant to Section 3.5.

**1.23.** **Motion for Final Approval.** "Motion for Final Approval" means the Motion for Final Approval of Settlement, Payment of Service Awards, and Payment of Class Counsel's Legal Fees and Costs, and other documents to be filed with the Court seeking final approval of the settlement.

**1.24.** **Named Plaintiffs.** "Named Plaintiffs" means Carlos Ocampo, Igor Morozov, Jorge Villanueva, Amaury Ortiz, Plinio Retana, Manuel Calderon, Sutee Monchaitanapat, Douglas Molina, Nelson Delarosa, Felipe Barriga, Sonia Gonzalez, Alberto Gonzales, Panfilo Escobar, Edward Suriel, Alejandro Gonzalez, Francisco Solis, Candido Sanchez, Estela Penalo Diaz, Lucia Rojas-Escolastico, Jennys Moya, Clarisa Rojas-Escolastico, Hilario Ku and Maria Lamoth

**1.25.** **Net Settlement Fund.** "Net Settlement Fund" means the remainder of the Qualified Settlement Fund after deductions for: (1) Court-approved attorneys' fees and costs for Class Counsel; (2) claims administration costs, and (3) Court-approved Service Awards made in return for an individual general release from each Class Representative requesting a Service Award.

**1.26.** **Notice(s).** "Notice(s)" means the Court-approved Notice of Proposed Settlement of Class Action and Collective Action Lawsuit, attached to this Agreement as Exhibit "A".

**1.27.** **Notice Response Deadline or Bar Date.** "Notice Response Deadline" or "Bar Date" means the last day of the forty-five (45) day Acceptance Period in which Class Members can timely complete and submit their Claim Form or opt-out of the settlement.

**1.28.** **Objector.** "Objector" means an individual who timely files an objection to the settlement.

**1.29.** **Opt-In Plaintiffs.** "Opt-In Plaintiffs" means the Named Plaintiffs, and any Class Members who have previously filed Consents to Join.

1.30. **Opt-out Statement.** "Opt-out Statement" means a written signed statement that an individual Class Member has decided to opt-out of the settlement and not be included in this Agreement.

1.31. **Parties.** "Parties" means the Named Plaintiffs and the Settling Defendants.

1.32. **Preliminary Approval Order.** "Preliminary Approval Order" shall mean the Order entered by the Court: (i) certifying the Class Members as a class solely for purposes of effectuating the terms of this Agreement; (ii) preliminarily approving the terms and conditions of this Agreement; (iii) appointing Smith, Buss, and Jacobs LLP and Vincent Volino, PLLC as Class Counsel; (iv) directing the manner and timing of providing Notice to the Class Members; (v) appointing a Claims Administrator, and (vi) setting dates to effectuate the terms of this Agreement, including the date of the Fairness Hearing.

1.33. **Qualified Settlement Fund ("QSF").** "Qualified Settlement Fund" or "QSF" means the account established by Class Counsel and/or the Claims Administrator for the settlement funding paid by or on behalf of the Settling Defendants. The QSF will be controlled by Class Counsel subject to the terms of this Agreement and the Court's Orders for Preliminary Approval and Final Order of Approval. Interest, if any, earned on the QSF, will become part of the Net Settlement Fund.

1.34. **Released Claims.** "Released Claims" mean all Claims as set forth in Section 4 of this Agreement.

1.35. **Settlement Amount.** "Settlement Amount" means One Million Four Hundred Thousand Dollars and Zero Cents ($1,400,000.00), which is the total amount to be paid by or on behalf of the Settling Defendants to settle the Claims as set forth in this Agreement.

1.36. **Settlement Checks.** "Settlement Checks" means the set of checks issued to Authorized Claimants for their share of the Net Settlement Fund calculated in accordance with the terms and conditions set forth in this Agreement.

2. **APPROVAL AND PROCEDURE.**

2.1. **Binding Agreement.** This Agreement is a binding agreement and contains all material agreed-upon terms for the Parties to seek a full and final settlement of the Lawsuit.

2.2. **Settlement Class.** Strictly for purposes of this Agreement, and without admitting any wrongdoing or liability, the Settling Defendants agree to class certification pursuant to Rule 23 of the Federal Rules of Civil Procedure to include all Class Members as defined in Section 1.8 of this Agreement.

2.3. **Responsibilities of the Administrator.** The Administrator shall be responsible for:

    A.      preparing, printing and disseminating the Notice to the Class;

8

**B.**       copying Counsel for the Settling Defendants on material correspondence;

**C.**       promptly furnishing to Counsel for the Settling Defendants copies of any Opt-out Statements, objections or other written or electronic communications from the Class Members which the Administrator receives;

**D.**       keeping track of Claims Forms and Opt-out Statements including maintaining the original mailing envelope in which the request was mailed;

**E.**       mailing all required tax forms to Class Members and as provided herein;

**F.**       setting up a Settlement Account to be used for the distribution of all Settlement Checks to Class Members, Class Counsel, the Claims Administrator and to Named Plaintiffs;

**G.**       calculating the amount of each Class Member's Settlement Check;

**H.**       calculating the employer-side payroll taxes required pursuant to the settlement;

**I.**       calculating each Class Member's W-2 taxes to be withheld, paying the withheld amounts to the appropriate government authority  and preparing appropriate tax forms for Corporate Defendants and for each Class Member;

**J.**       mailing the Settlement Checks to Class Members;

**K.**       ascertaining to the extent possible current address and addressee information for each Notice returned as undeliverable and the remailing of the applicable Notice if current address and addressee information can be located;

**L.**       responding to inquiries of the Class regarding procedures for filing objections and Opt-out Statements;

**M.**       responding to inquiries from Class Counsel and Counsel for the Settling Defendants consistent with the Administrator's duties specified herein;

**N.**       promptly apprising Counsel for the Settling Defendants of the material activities of the Administrator;

**O.**       maintaining adequate records of its activities, including the dates of the mailing of Notice(s), returned mail and other communications and attempted written or electronic communications with the Class;

**P.**     confirming in writing to Class Counsel and Counsel for the Settling Defendants its completion of the administration of the settlement;

**Q.**     timely responding to communications from the Parties or their counsel; and

**R.**     such other tasks Class Counsel and Defense Counsel mutually agree.

In addition, no later than fifteen (15) days prior to the Fairness Hearing, the Administrator shall certify jointly and provide to Counsel for the Settling Defendants: (a) a list of all Authorized Claimants with their estimated awards; (b) a list of all Class Members who filed timely objections, and (c) a list of all Class Members who requested to opt-out of the settlement.  The Administrator shall also provide Counsel for the Settling Defendants with an updated address list for the Authorized Claimants. .

**2.4.** <u>**Preliminary Approval Motion**</u>.

**A.**     Following the Parties' execution of this Agreement, Class Counsel shall file a Motion for Preliminary Approval of the Class Action Settlement ("Preliminary Approval Motion").

**B.**     The Preliminary Approval Motion shall include: (1) the proposed Notice and Claim Form; (2) the proposed Preliminary Approval Order; (3) an executed copy of this Agreement; and (3) any other necessary documents, memorandum, affidavits and exhibits for the purposes of certifying, for settlement purposes only, a class pursuant to Fed. R. Civ. P. 23 of all Class Members and preliminarily approving the settlement.  Class Counsel shall submit to the Settling Defendants' Counsel for comment and review at least seven (7) days prior to filing the (i) Notice of Motion for Preliminary Approval of the Settlement; (ii) Memorandum of Law and all declaration(s), document(s), and other motion papers in support thereof.

**C.**     In the Motion for Preliminary Approval, Class Counsel will inform the Court of the intended process to obtain the Final Approval Order that will, among other things, seek to: (1) approve the settlement as fair, adequate, and reasonable; (2) incorporate the terms of the release of Released Claims as described herein; (3) dismiss the Lawsuit with prejudice as to the Settling Defendants; (4) award Class Counsel its reasonable fees and costs; and (5) award the Service Awards to Named Plaintiffs.

**D.**     The Parties will work together, diligently and in good faith, to expeditiously obtain a Preliminary Approval Order, Final Approval Order, and Dismissal of the Lawsuit.

**E.**     If the Court denies the Preliminary Approval Motion, then the Parties to this Agreement agree to jointly seek reconsideration or seek Court approval of a renegotiated settlement.  Should reconsideration and/or should the Parties'

attempt to secure Court approval of a renegotiated settlement be denied, the case will proceed as if no settlement had been attempted, and the Settling Defendants shall retain the right to contest whether this case should be maintained as a class action or collective action and to contest the merits of the Claims being asserted by the Named Plaintiffs in this Lawsuit.  In such a case, the Parties will negotiate and submit for Court approval a revised case management schedule.  Additionally, any monies paid into the QSF shall be returned to the payor(s) of same within 5 business days after the Settling Defendants' written request for same, less any expenses or costs reasonably incurred by the Claims Administrator to that point.

2.5.  **Notice and Claim Forms to Class Members**.

A.  Within fifteen (15) days after the issuance of the Preliminary Approval Order, 455 will provide the Class Members' social security numbers to the Claims Administrator in electronic form. All information provided regarding the Class Members will be treated as confidential information by Class Counsel and the Claims Administrator. Said information will not be used by Class Counsel or the Administrator for any purpose other than to effectuate the terms of settlement.

B.  Within fifteen (15) days after 455 provides the Class Members' social security numbers to the Claim Administrator, the Administrator shall mail to all Class Members, at the addresses provided by the Settling Defendants, via First Class United States Mail, postage prepaid, the Court-approved Notice and Claim Form.

C.  The Claims Administrator shall notify the Settling Defendants' Counsel of any Notice and Claim Form sent to a Class Member that is returned as undeliverable after the first mailing, as well as any such Notice and Claim Form returned as undeliverable after any subsequent mailing(s) as set forth in this Agreement.  Nothing herein precludes the Claims Administrator from re-mailing a Notice and Claim Form to a Class Member in the event such a re-mailing becomes necessary.  Further, if a Notice and Claim Form is returned as undeliverable, the Claims Administrator may take reasonable steps to obtain a current address, including one skip trace, and may re-mail the Notice and Claim Form to such address.  All costs of locating Class Members will be paid from the QSF.  In the event that the Claims Administrator is able to obtain better addresses for any Class Member, it may use such addresses for the purposes of mailing the Notice and Claim Form.

D.  Class Members who return their completed Claim Form by the Bar Date will be deemed Authorized Claimants.  To be effective for the purposes of becoming an Authorized Claimant, a Claim Form must be post-marked or faxed to the Claims Administrator by the Bar Date.  To the extent that the

envelope does not contain a post-mark, the date that the Claims Administrator receives the envelope or Claim Form shall apply.

**2.6.**    **Opt-Outs: Class Members who Opt-Out of the Settlement**.

**A.**    Class Members who choose to opt-out of the settlement as set forth in this Agreement must mail to the Claims Administrator an Opt-out Statement via First Class United States Mail, postage prepaid. Such Opt-out Statement must state that the Class Member is opting out of the settlement, and include his or her name, job title, address, and telephone number and must also state the following words, "I opt out from the settlement in *Ocampo v. 455 Hospitality*" in order to be valid. In addition, to be effective, an Opt-out Statement must be postmarked within forty-five (45) days after the Claims Administrator has mailed the Notice and Claim Form to such Class Member.

**B.**    The end of the time-period for a Class Member to opt-out of the settlement ("Opt-out Period") shall be forty-five (45) days after the day on which the Claims Administrator successfully mails a Notice and Claim Form to a Class Member.

**C.**    The Claims Administrator will, within ten (10) days after the last day on which it mails the last Notice and Claim Form to any Class Member, notify Counsel for the Settling Defendants in writing by email of the precise date of the end of the Opt-out Period.

**D.**    The Claims Administrator shall stamp the postmark date on the original of each Opt-out Statement that it receives and shall serve copies of each Opt-out Statement on Class Counsel and Counsel for the Settling Defendants not later than three (3) business days after receipt thereof. Class Counsel shall file with the Clerk of the Court stamped copies of all Opt-out Statements with the Motion for Final Approval (as defined below). The Claims Administrator will, within 24 hours after the end of the Opt-out Period, send a final list of all Opt-out Statements it received to Counsel for the Settling Defendants along with copies of all Opt-out Statements and all envelopes accompanying same.

**E.**    Any Class Member who does not properly submit an Opt-out Statement pursuant to this Agreement, will be deemed to have accepted the settlement and the terms of this Agreement, and will, by means of the Final Approval Order, release all claims as set forth therein.

**F.**    The Settling Defendants shall have the right to revoke this Agreement in the event 15% or more of the Class Members file Opt-out Statements requesting to be excluded from the class settlement by the deadline set by the Court for the submission of Opt-out Statements.

**2.7.**    **Objections to the Settlement.**

A.     Objectors who wish to present objections to the proposed settlement at the Fairness Hearing must first do so in writing.  To be considered, such statement must be mailed to the Claims Administrator via First-Class United States Mail, postage prepaid, and be post-marked by a date certain no more than forty-five (45) days after the Claims Administrator mails a Notice to such Objector, unless a new mailing was sent as set forth in Section 2.4(C), at which time the date until which that Objector may opt-out controls.  The statement must include all reasons for the objection and any reasons not included in the statement will not be considered.  The statement must also include the name, job title, address, and telephone numbers for the Class Member making the objection.  It must also contain the words, "I object to the settlement in *Ocampo v. 455 Hospitality*."  The Claims Administrator will stamp the date received on the original and send copies of each objection to Counsel for the Settling Defendants by email no later than three (3) days after receipt thereof.  Class Counsel shall file the date-stamped copies of all objections with the Court with the Motion for Final Approval.

B.     An Objector who wishes to appear at the Fairness Hearing must state his or her intention to do so in writing on his or her written objections at the time he or she submits same to the Claims Administrator.  An Objector may withdraw his or her objections at any time.  No Objector may present an objection at the Fairness Hearing based on a reason not stated in his or her written objections.  A Class Member who has submitted an Opt-out Statement may not submit objections to the Settlement, and an Opt-out Statement will take precedence over a submitted objection, unless directed otherwise by the Court.

C.     The Parties may file with the Court written responses to any objections filed by an Objector prior to the Fairness Hearing.

**2.8.    Fairness Hearing and Motion For Final Approval and Dismissal.**

A.     After the Bar Date, consistent with the Court's ruling on the Motion for Preliminary Approval, Class Counsel will prepare the Motion for Final Approval.  Class Counsel shall prepare, and the Settling Defendants' Counsel shall review and approve, a proposed Final Approval Order.  For settlement purposes only, the Settling Defendants will not oppose the Motion for Final Approval.

B.     At the Fairness Hearing and in the Motion for Final Approval, the Parties will request that the Court, among other things: (1) certify the Class for purposes of settlement; (2) approve this settlement and Agreement as fair, reasonable, adequate, and binding on all Class Members who have not timely filed an Opt-out Statement; (3) order the Claims Administrator to distribute Settlement Checks from the Net Settlement Fund to Authorized Claimants and Service Awards to the Class Representatives to be paid as

described in this Agreement; (4) order the reasonable attorneys' fees and costs to be paid to Class Counsel; (5) order the dismissal with prejudice of all claims asserted in the Lawsuit and the claims of all Class Members who did not timely file an Opt-out Statement with respect to the Settling Defendants.

C.    If the Court fails to enter the Final Approval Order in accordance with this Agreement, or if the Final Approval Order is set aside by appeal, the Lawsuit will proceed as if there were no attempt at settlement. The Settling Defendants may contest whether the Lawsuit should be maintained as a class action or collective action, and may contest the merits of the claims being asserted in the Lawsuit.

D.    If the Court fails to enter a Final Approval Order, Class Counsel will provide notice to Class Members that the Agreement did not receive Final Approval and that, as a result, no payments will be made to Class Members under the Agreement. The content of such notice shall be agreed to by the Parties and such notice shall be mailed by Class Counsel via First Class United States Mail, postage prepaid, to the addresses used by Class Counsel in mailing the most recent copy of the Notice and Claim Form to respective Class Members.

E.    The Final Approval Order will direct the Claims Administrator to (1) provide verification to Class Counsel and to Counsel for the Settling Defendants that it has distributed the Settlement Checks to Authorized Claimants, (2) retain copies of all of the endorsed Settlement Checks, and (3) provide the Settling Defendants' Counsel with copies of the endorsed Settlement Checks in accordance with this Agreement and the Court's Final Approval Order.

**2.9.    <u>Claim Form and Consent to Join</u>.**

A.    Authorized Claimants will be issued a Settlement Check by the Claims Administrator for their share of the Net Settlement Fund in accordance with the Final Approval Order.

B.    Authorized Claimants are the Named Plaintiffs, the Opt-in Plaintiffs, and those Class Members who have timely and properly completed and returned on or before the Bar Date (i.e., within 45 days) a Claim Form and Release containing the following statement:

> **My signature below constitutes a full and complete release and discharge of 455 Hospitality LLC, Michael J. Khader, as Receiver of 455 Hospitality LLC, Doubletree Franchise LLC (Hilton Franchise Holding LLC (as successor-in-interest to Doubletree Franchise, LLC)), Doubletree Hotel Systems, Inc., Richard Friedman, David Ribbens, Norma Abdou, Nurul**

14

**Haque, Doreen Clarke, Accord Human Resources 14, Inc. a/k/a Accord Human Resources of New York, Inc. and TriNet HR III, Inc. a/k/a TriNet HR Corporation, Jordan LLC, Teddy Lichtschein, Eliezer Scheiner and Efraim Elchonen**, and their **past and present officers, trustees,** directors, members, shareholders, owners, **employees, agents, parents, subsidiaries, predecessors, affiliates, managers, administrators, attorneys,** accountants, **insurers, re-insurers,** lenders, **successors and assigns (each in his, her or its capacity as such) and their heirs executors, administrators, successors and assigns of any such person or entity, by me and by my respective heirs, beneficiaries, devisees, legatees, executors, administrators, trustees, conservators, guardians, personal representatives, successors-in-interest, and assigns, from all wage and hour claims that were or could have been asserted in the Lawsuit captioned *Ocampo v. 455 Hospitality, 14-CV-9614,* including any wage, wage payment or other wage-related claims, any claims under the New York Labor Law and any corresponding applicable regulations, including, but not limited to, claims for minimum wages, gratuities, overtime, liquidated damages and/or penalties, or any claim brought pursuant to purported contract for all time periods through [*date of preliminary court approval of settlement*], and expressly release such claims."**

C.   Any modification or amendment of the above-language by the Authorized Claimant at the Settling Defendants' discretion may not be accepted and may void the Claim Form.

D.   The Claims Administrator shall be responsible for reviewing the Claim Forms for completeness.  If a Claim Form is invalid or incomplete, the Claims Administrator shall attempt to cure the defect, including by follow-up with the Class Member.  If the defect cannot be cured, the Claims Administrator shall reject the claim. All Claim Forms must be submitted or postmarked on or prior to the end of the Acceptance Period.

3.   <u>**SETTLEMENT TERMS**</u>.

3.1.   <u>**Amount**</u>.

A.   Plaintiffs demanded a settlement amount of no less than $2,800,000 from all of the Defendants.  The foregoing said, Plaintiffs recognize the difficulty in obtaining payment after judgment from the direct employer (455) and they recognize the litigation risk and potential for lesser allocations of liability against the remaining defendants. Under the circumstances, despite their demand, Plaintiffs believe that they will be fairly compensated by entering into this Agreement and will have a particularly favorable outcome considering the doubtfulness of collection from 455. As explained below,

this Agreement allows Plaintiffs to obtain for themselves and the Class $1,400,000 in cash ("the Settlement Sum"), and for Plaintiffs to also receive an assignment of rights from 455. The assignment of rights is to pursue collection of an amount between $700,000 and $1,400,000 following a consent arbitration proceeding between Plaintiffs and 455 ("the Excess Judgment"), with Plaintiffs standing in the shoes of 455, against its non-contributing member, Browne & Appel, and against Alexander Sirotkin, who is alleged to be the de-facto manager of 455 and the Hotel during the period that the policies at issue were put into place.

B.      The Settling Defendants disagreed with the settlement value of this case, and believe that $1,400,000 fairly and fully compensates Plaintiffs and the Class. With the exception of 455, they also believe themselves to be inappropriate defendants and not to have liability even if Plaintiffs were to prove at trial entitlement to damages on the claims asserted.

C.      The foregoing said, due to the anticipated cost of defense through trial, litigation risks, and the fact that 455 will not likely have the ability to contribute to any judgment, the Settling Defendants collectively support the settlement as set forth herein.

D.      455 does not dispute that it was and is a legitimate party defendant with respect to the claims asserted against it, as the direct employer, but sets forth that it has no funds of its own with which to settle; no current expectations of gaining funds in the future; and disputes that the foregoing amount is owed to the Plaintiffs. It believes that $1,400,000 is adequate compensation for Plaintiffs and the Class to support the settlement of this matter. The foregoing said, 455 understands that its insurance limits will be exhausted in defense potentially leaving it with no ability to otherwise contribute to a settlement and perhaps with inadequate funds to defend itself through trial.

E.      After engaging in complex negotiation, Plaintiffs (for themselves and the Class) and the Settling Defendants agreed, and were able, in part through an agreement for contribution by the Insurer on behalf of the Insureds as set forth herein, to collectively pay the plaintiffs One Million, Four Hundred Thousand ($1,400,000) dollars in cash, and for 455 and Plaintiffs to further agree to participate in binding arbitration at which an Arbitrator will determine the remainder of the amount to be owed by 455 toward the settlement which by a high low agreement shall be a minimum of $700,000 and a maximum of $1,400,000. This additional amount to be determined by the Arbitrator shall not be collectable against the Settling Defendants, but 455 is herein providing an assignment of certain claims to satisfy its obligations in full.

F.      The breakdown of the payment to Plaintiff from the Settling Defendants are as follows:

16

i.      On behalf of 455 (the direct employer) and Richard Friedman, David Ribbens, Norma Abdou, Nurul Haque, Doreen Clarke, Teddy Lichtschein, Eliezer Scheiner and Efraim Elchonen — cash payment of $405,000 in the aggregate;

ii.     455 (the direct employer) and Jordan LLC (the manager of the direct employer)– a judgment against 455, subordinate to the prior perfected security interests of CIBC, Inc., in the additional amount of no less than $700,000 and no more than $1,400,000, to be determined in binding Arbitration by an arbitrator after hearing (the "Excess Judgment"), provided that such Judgment may not be collected from 455, Michael J. Khader, as Receiver of 455, Jordan LLC or any of the Settling Defendants , except that Plaintiffs may pursue their rights to suit and collection against the Non-Settling Defendants directly and/or through the assignments tendered pursuant to this Agreement.

iii.    455, as and for further consideration, hereby assigns to Plaintiffs any and all claims that 455 has or will have against Alexander Sirotkin and/or Browne & Appel, LLC relating to or arising from any of the following: (a) the conduct alleged in the Complaint filed in the above-captioned action to the extent such conduct relates to the Plaintiffs' compensation and/or working conditions and/or claims; (b) this settlement, the Excess Judgment and/or the Arbitration referenced above; and (c) Alexander Sirotkin's and/or Browne & Appel, LLC's individual or collective refusal to fund this employment litigation and/or settlement.  Such assigned claims shall include, but not be limited to, claims for breach of duty, contribution and/or indemnification relating to or arising from any of the foregoing set forth in (a), (b) and (c) in this Section 3.1(F)(iii). Notwithstanding the foregoing, the Plaintiffs shall not be entitled to recover more than the amount of the Excess Judgment in the prosecution of any one or more of the claims assigned pursuant to this Section 3.1(F)(iii).

iv.    Teddy Lichtschein and Eliezer Scheiner, on behalf of themselves and 455 and Jordan LLC--$500,000 in the aggregate;

v.    TriNet  – $495,000 in the aggregate.

**G.**    Given the range of claimed damages, the Settling Defendants consent to the entry of Judgement against 455 in an amount within that range to be determined in an arbitration as set forth in Section 3.1(I) herein.

**H.**    The Settling Defendants agree to pay or to cause to be paid on their behalf the Settlement Sum in the amount of One Million Four Hundred Thousand Dollars and No Cents ($1,400,000.00), comprised of the payments outlined

in Sections 3.1(F)(i), 3.1F(iv), and 3.1(F)(v). The Settling Defendants shall have no other monetary obligation under this Agreement, except for 455's agreement with respect to the Excess Judgment.

**I.**    Within thirty (30) days after the Final Effective Date, the Named Plaintiffs, the Opt-In Plaintiffs and 455 will jointly commence an arbitration proceeding to be held in Westchester County, New York wherein the Named Plaintiffs and Opt-In Plaintiffs' may argue that their damages exceed the Settlement Sum of $1,400,000.  Plaintiffs and 455 understand the risk associated with Arbitration and desire to reduce the same and have entered into a high low agreement.  Should the Arbitrator find that Plaintiffs have proven damages equal to or in excess of $2,800,000, the Excess Judgment shall be in an amount of $1,400,000.  In the event that the Arbitrator finds Plaintiff have proven damages equal to or less than $2,100,000, the amount of the Excess Judgment will be $700,000.  If the Arbitrator finds the Plaintiffs to have proven damages between $2,100,000 and $2,800,000 the Excess Judgment shall be equal to the amount proven less the $1,400,000 Settlement Sum paid.  In recognition of its inability to pay additional amounts, Plaintiffs hereby acknowledge that they shall not seek to collect the amount of the Excess Judgment from 455, or from Michael J. Khader, as Receiver of 455, or any of the Settling Defendants but shall instead accept the assignment of 455's right to contribution and/or indemnification or other amounts that it may have, or in the future acquire, from Alex Sirotkin and/or Browne and Appel as a result of this settlement or the Arbitration referenced herein, and/or Sirotkin and/or Brown and Appel's individual or collective refusal to fund this employment litigation and/or settlement, the alleged underlying conduct of as set forth in the Complaint, and/or as developed thereafter to the extent such action, inaction and/or wrongdoing relates to Plaintiffs' compensation, working conditions, and/or claims up to $700,000 or such greater amount as determined by the Arbitrator up to the maximum amount of $1,400,000 in lieu of a cash payment from 455 or any other the other Settling Defendants. Notwithstanding anything contained in this CLASS SETTLEMENT AGREEMENT AND RELEASE to the contrary: (a) none of the Settling Defendants shall obstruct or interfere with the Court's entry of the Excess Judgment; (b) the assignment of 455's claims as set forth herein and (c) the Named Plaintiffs and the Opt-In Plaintiffs shall, in addition to receiving their portion of the Settlement Sum, have the right to enforce the Excess Judgment through the assignments received.

**J.**    As it is contemplated that this litigation will be finally concluded upon the Final Effective Date, following the issuance of the Final Approval Order, any award to be issued by the Arbitrator (the Excess Judgment) shall be pursued and/or confirmed in New York State Supreme Court, County of Westchester, in accordance with Article 75 of the N.Y. C.P.L.R.

18

**K.**     The Settling Defendants shall arrange for the Settlement Sum to be deposited in the QSF to be funded within Thirty (30) days after the Final Approval Order provided, however, that the monies shall be returned to payors of such funding in the event of an appeal of the Final Approval Order.  In the event of an appeal of the Final Approval Order, the Settling Defendants shall fund the QSF within thirty (30) days after the Final Effective Date.

**L.**     The Claims Administrator shall issue the Settlement checks within 30 days after the Final Effective Date, assuming no appeal of the Final Approval Order.  If the Final Approval Order is appealed, then the checks shall be mailed within 15 days after the QSF is funded following the Final Effective Date.

**M.**    Authorized Claimants will have ninety (90) days from the date of the mailing of the Settlement Checks to cash their Settlement Checks.

**N.**     The amount of any uncashed Settlement Checks shall revert to the Authorized Claimants who cashed their settlement checks ninety-one (91) days after mailing.  Such reversion payment shall be made to the Authorized Claimants by the Claims Administrator.  For purposes of this provision, the mailing date shall be deemed to be the date posted on the Settlement Checks.

**O.**     It is expressly acknowledged and agreed that the obligation to make the payments as set forth in this Section 3.1 shall not be paid in whole or in part by, nor shall Plaintiffs seek to enforce any amount of such payments against, Michael J. Khader, as Receiver of 455, Doubletree Franchise, LLC (Hilton Franchise Holding LLC (as successor-in-interest to Doubletree Franchise, LLC)), Doubletree Hotel Systems, Inc., nor against Richard Friedman, David Ribbens, Norma Abdou, Nurul Haque, Doreen Clarke, Efraim Elchonen, and their past and present officers, trustees, directors, members, shareholders, owners, employees, agents, parents, subsidiaries, predecessors, affiliates, managers, administrators, attorneys, accountants, insurers, re-insurers, lenders, successors and assigns (each in his, her or its capacity as such) and their heirs executors, administrators, successors and assigns of any such person or entity, or their assets.

## 3.2.    <u>Settlement Amounts Payable as Attorneys' Fees, Costs, and Expenses</u>.

**A.**     At the Fairness Hearing and in the Final Approval Motion, Class Counsel will petition the Court for no more than one-third of the Settlement Amount as an award of attorneys' fees.  In addition, Class Counsel shall also seek reimbursement of reasonable litigation costs and expenses from the QSF.  For settlement purposes only, the Settling Defendants shall not oppose such applications, or any appeal as to the denial of such applications.  After depositing the funds set forth in Section 3.1(K) as provided for herein, the

Settling Defendants shall have no additional liability for Class Counsel's attorneys' fees and costs.

**3.3.**     <u>**Service Awards and Costs**</u>.

      **A.**     In return for services rendered to the Class Members, at the Fairness Hearing, the Class Representatives will apply to the Court to receive up to a total of Seventy Eight Thousand Dollars and Zero Cents ($78,000.00) in Service Awards from the QSF to be provided to the Class Representatives for their services to the Class Members as follows: Carlos Ocampo, $12,500; Jorge Villanueva, $12,500; Amaury Ortiz, $12,500; Plinio Retana, $12,500; Manuel Calderon, $12,500; Sutee Monchaitanapat, $12,500, and Igor Morozov, $3,000.

          For settlement purposes only, the Settling Defendants shall not oppose such application, or an appeal as to the denial of such application.

      **B.**     The Class Representatives agree to the general release in Section 4.1(C) below and will execute this agreement, in consideration for receipt of the Service Award, if any, and the Class Representatives and Named Plaintiffs' respective shares of the QSF.

**3.4.**     <u>**Net Settlement Fund and Allocation to Class Members**</u>.

      **A.**     The allocation to Authorized Claimants for Settlement Checks will be made from the Net Settlement Fund.

      **B.**     The sum of One Hundred Thousand Dollars and Zero Cents ($100,000.00) from the Net Settlement Fund shall be allocated to Authorized Claimants who are not Named Plaintiffs or Opt-In Plaintiffs and the remainder of the Net Settlement Fund shall be allocated to the Named Plaintiffs and Opt-In Plaintiffs, based hours worked and rates of pay.  The minimum allocation amount shall be $100.  Because this amount to persons who are not Named Plaintiffs and who are not Opt-In Plaintiffs is to be distributed on a claims-made basis, amounts not claimed shall be fully allocated proportionately among those Class Members who returned timely Claims Forms and who are not Named Plaintiffs and who are not Opt-In Plaintiffs.

          i.     The remainder of the Net Settlement Fund, after subtracting the amounts in Section 3.4(B), shall be allocated to those Class Members who are Named Plaintiffs and Opt-In Plaintiffs proportionally based on hours worked, rates of pay and an amount allocated to the eight Named Plaintiffs who asserted a claim of retaliation in connection with that claim. The minimum allocation amount shall be $100.  Settlement Checks with allocations pursuant to this Section 3.4(B)(i) will be sent to all Class Members who are Named Plaintiffs or Opt-In Plaintiffs, unless the individual Class Member who is a Named Plaintiff or Opt-In Plaintiff timely

submitted an Opt-Out requesting to be excluded from the settlement, in which case that individual's award will be reallocated among Authorized Claimants who did not timely Opt-Out.

C.    The Settling Defendants and Class Counsel shall exchange such information as is necessary for the Claims Administrator to make proper tax withholdings and comply with tax reporting obligations as described in Section 3.5 below.

D.    The Claims Administrator shall mail to all Authorized Claimants their proportionate share of the Net Settlement Fund as set forth in this Agreement.

E.    All payments to Authorized Claimants made pursuant to this Agreement shall be deemed to be paid to such Authorized Claimants solely in the year in which such payments actually are received by the Authorized Claimant.

### 3.5.   **Tax Characterization**.

A.    Settlement Checks paid to Authorized Claimants will be allocated 50% to W-2 wage payments and 50% to 1099 non-wage payments for interest, liquidated damages and statutory penalties. Any Service Awards will be considered 1099 non-wage income. All wage payments to Authorized Claimants shall be subject to applicable withholding taxes.

B.    The Claims Administrator is responsible for issuing and filing appropriate forms associated with payments of any amounts to Class Members, including, but not limited to, issuing the W-2 and 1099 Forms for all amounts paid to the Class Members that are cashed.

## 4.   RELEASE

### 4.1.   **Release of Claims**.

A.    By operation of the entry of the Final Approval Order, except as to such rights or claims as are created by this Agreement, each participating Class Member who does not file an Opt-out Statement as set forth in this Agreement forever and fully releases the Settling Defendants, and all presently or formerly affiliated persons or entities including, but not limited to, any of the Settling Defendants' present or former parent corporations, their owners, stockholders, predecessors, successors, assigns, agents, directors, officers, trustees, employees, representatives, attorneys, accountants, insurers, reinsurers, lenders, receivers, parents, subsidiaries, affiliates, benefit plans, plan fiduciaries, and/or administrators, and all persons acting by, through, under or in concert with any of them and the heirs, executors, administrators, successors and assigns of any such person or entity ("Releasees"), from all wage and hour claims that could have been asserted under federal or state laws by and on behalf of the Class Members

in the Lawsuit as of the date the Court issues the Preliminary Approval Order. (Releasees shall not include Browne & Appel, LLC and Alex Sirotkin.) The Released Claims include all claims under federal or New York State laws for minimum or overtime wages, unreimbursed expenses, spread of hours, any related wage and hour claims, all claims for gratuities under NYLL § 196-d, NYLL § 195 penalties, all related derivative benefit claims (both ERISA and non-ERISA benefits). Specifically, the Released Claims include any and all claims under the NYLL, Article 6, §191 (Frequency of payments); §192 (Cash payment of wages); §193 (Deductions from wages); §195 (Notice and record-keeping requirements); §196-d (Gratuities); §198-c (Benefits or wage supplements); §198-d (Posting regulations on illegal wage deductions) and any claim under Article 19, § 605 et seq. of the NYLL for a claim of minimum wage or overtime and other provisions including the supporting state regulations and New York Minimum Wage Orders, 12 NYCRR §§ 146, et seq. For those Class Members who file claims, the Released Claims further include any and all claims under the FLSA, 29 U.S.C.S. §§ 201 et seq. for minimum wage, overtime, unreimbursed expenses, and supporting federal regulations, interest on such claims, and attorneys' fees and costs related to such claims through the date this Settlement Agreement and Release is executed by all Parties to this Settlement Agreement.

**B.**     Except as provided in this Agreement, Class Members and Class Counsel hereby irrevocably and unconditionally release, acquit, and forever discharge any claim that he, she or they may have against the Releasees for attorneys' fees or costs associated with Class Counsel's representation of the Class Members herein. Class Counsel further understands and agrees that any fee payments approved by the Court will be the full, final and complete payment of all attorneys' fees and costs associated with Class Counsel's representation in the Lawsuit.

**C.**     In addition to the waiver and release contained in Sections 4.1(A)-(B) above, and in consideration for the payment of the Service Award to the Class Representatives as set forth in Section 3.3(A), except as to such rights or claims as are created by this Agreement, the Class Representatives, the Class Representatives' heirs, executors, administrators, successors and assigns, voluntarily release and forever discharge Releasees of and from any actions, causes of action, suits, debts, dues, sums of money, accounts, reckonings, bonds, bills, specialties, covenants, contracts, controversies, agreements, promises, judgments, obligations, union grievances, claims, charges, complaints, appeals and demands whatsoever, in law or equity, which they may have against Releasees as of the date of execution of this Agreement, whether known or unknown, asserted or unasserted, including, but not limited to, any alleged violation of: Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq.; the Civil Rights Act of 1991, Pub. L. No. 102-166, Sections 1981 through 1988 of Title 42 of the United States Code, 42 U.S.C. §§ 1981-1988; the Age Discrimination in Employment

Act; the Fair Labor Standards Act of 1938, 29 U.S.C. § 201 et seq.; the Occupational Safety and Health Act of 1970, 29 U.S.C. § 651 et seq.; the Immigration Reform and Control Act, as amended; the Workers Adjustment Retraining Notification Act, as amended; the Family and Medical Leave Act; the New York City Administrative Code; the New York State Human Rights Law, New York Executive Law § 290 et seq.; the New York Civil Rights Law, New York Civil Rights Law § 1 et seq.; Article 6 of the New York Labor Law, New York Labor Law § 190 et seq.; the New York occupational safety and health laws; any claim arising under the common law; any other claim for employment discrimination, retaliation, wrongful termination, constructive discharge, pain and suffering, mental anguish, intentional and/or negligent infliction of emotional distress; any claim for costs, fees, or other expenses, including attorneys' fees or any other action against Releasees, based upon any conduct occurring up to and including the date Named Plaintiffs execute this Agreement.

**4.2.** **Non-Admission of Liability & Confidentiality**.

A.    The Settling Defendants have agreed to the terms of this Agreement without in any way acknowledging any fault or liability, and with the understanding that terms have been reached because this settlement will avoid the further expense and disruption of the Settling Defendants' business due to the pendency and expense of litigation.  Nothing in this Agreement shall be deemed or used as an admission of liability by the Settling Defendants or as an admission that a class should be certified for any purpose other than settlement purposes.

B.    Named Plaintiffs and Class Counsel agree that they will not in any manner publicize this Class Settlement Agreement and Release to any member of the media and will not post or disseminate the terms and conditions of the settlement, on any social media site (including Facebook, Instagram, Snapchat, Law 360, Eater, Yelp, Grub Street, any other media outlets or websites).  Nothing herein, however, shall restrict Class Counsel from discussing the terms and conditions of the Class Settlement Agreement and Release with any Class Member.

C.    Named Plaintiffs and Class Counsel agree that the terms of the settlement will be kept confidential up until the filing of the Preliminary Approval Motion.  Named Plaintiffs and Class Counsel agree and understand that, even following the date of the filing of the Preliminary Approval Motion, they will not publicize the terms of this Settlement Agreement and Release to any member of the media and will not post or permit another, including Class Counsel, to post the terms and conditions of the settlement on any social media (including Facebook, Instagram, Snapchat, Law 360, Eater, Yelp, Grub Street, any other media outlets or websites).  Named Plaintiffs further agree not to make disparaging comments related to the Settling Defendants except as may be required by law or protected by law.

> **D.** In accordance with Section 14 of the Protective Order entered by the Court on June 1, 2015 (Dkt. No. 51), "This Order shall survive the final termination of this action and the Court shall retain jurisdiction to enforce, construe or modify its terms. Within forty-five (45) days following final disposition of this action, counsel for the parties shall assemble and return to each other all Confidential Information, including all copies of same, or (by mutual agreement only) shall certify the destruction thereof, except Counsel shall be permitted to retain for their respective files (i) copies of all papers and documents filed with the Court and (ii) their work product, such as pleadings, correspondence, and memoranda, which contain or refer to Confidential Information, provided that all such Confidential Information and work product shall remain subject to this Stipulated Protective Order."

**4.3.** **Waiver Of Claims By And Between Certain Settling Defendants**.

> **A.** 455 on the one hand, and TriNet on the other, also hereby waive and release any and all claims/crossclaims against each other and/or against any of the Settling Defendants for indemnification, contribution, etc. relative to the Lawsuit.

**5.** **INTERPRETATION AND ENFORCEMENT**.

**5.1.** **Cooperation Between the Parties; Further Acts**.  The Parties shall reasonably cooperate with each other and shall use their reasonable best efforts to obtain the Court's approval of this Agreement and all of its terms.  Each party, upon the request of any other party, agrees to perform such further acts and to execute and deliver such other documents as are reasonably necessary to carry out the provisions of this Agreement.

**5.2.** **No Assignment**.  Class Counsel and Named Plaintiffs, on their own behalf and on behalf of the Class Members, represent and warrant that they have not assigned or transferred, or purported to assign or transfer, to any person or entity, any claim or any portion thereof or interest therein, including, but not limited to, any interest in the Lawsuit, or any related action.

**5.3.** **Entire Agreement**. This Agreement constitutes the entire agreement between the Parties with regard to the subject matter contained herein, and all prior and contemporaneous negotiations and understandings between the parties shall be deemed merged into this Agreement.

**5.4.** **Binding Effect**. This Agreement shall be binding upon the Parties and, with respect to the Named Plaintiffs, Opt-In Plaintiffs, and all Class Members, their spouses, children, representatives, heirs, administrators, executors, beneficiaries, conservators, attorneys and assigns.

**5.5.** **Arms' Length Transaction; Materiality of Terms**. The Parties have negotiated all the terms and conditions of this Agreement at arms' length, including participating in multiple private mediation sessions.  All terms and conditions of

this Agreement in the exact form set forth in this Agreement are material to this Agreement and have been relied upon by the Parties in entering into this Agreement, unless otherwise expressly stated.

5.6.   **Captions**.   The captions or headings of the Sections and Paragraphs of this Agreement have been inserted for convenience of reference only and shall have no effect upon the construction or interpretation of any part of this Agreement.

5.7.   **Construction**.   The determination of the terms and conditions of this Agreement has been by mutual agreement of the Parties.  Each party participated jointly in the drafting of this Agreement, and therefore the terms and conditions of this Agreement are not intended to be, and shall not be, construed against any party by virtue of draftsmanship.

5.8.   **Severability**.   If any provision of this Agreement is held by a court of competent jurisdiction to be void, voidable, unlawful or unenforceable, the remaining portions of this Agreement will remain in full force and effect.

5.9.   **Governing Law**.   This Agreement shall in all respects be interpreted, enforced and governed by and under the laws of the State of New York, without regard to choice of law principles, except to the extent that the law of the United States governs any matter set forth herein, in which case such federal law shall govern.

5.10.   **Continuing Jurisdiction**.   The Court shall retain jurisdiction over the interpretation and implementation of this Agreement as well as any and all matters arising out of, or related to, the interpretation or implementation of this Agreement and of the settlement contemplated thereby.  The Court shall not have jurisdiction or authority to modify the terms of the Agreement or to increase the Settling Defendants' payment obligations hereunder.

5.11.   **Waivers, etc. to Be in Writing**.  No waiver, modification or amendment of the terms of this Agreement, whether purportedly made before or after the Court's approval of this Agreement, shall be valid or binding unless in writing, signed by or on behalf of all Parties and then only to the extent set forth in such written waiver, modification or amendment, subject to any required Court approval.  Any failure by any party to insist upon the strict performance by the other party of any of the provisions of this Agreement shall not be deemed a waiver of future performance of the same provisions or of any of the other provisions of this Agreement, and such party, notwithstanding such failure, shall have the right thereafter to insist upon the specific performance of any and all of the provisions of this Agreement.

5.12.   **When Agreement Becomes Effective; Counterparts**.  This Agreement shall become effective upon its execution.  The Parties may execute this Agreement in counterparts, and execution in counterparts shall have the same force and effect as if all Parties had signed the same instrument.

5.13.   **Signatures**.  This Agreement is valid and binding if, and only if, it is signed by the authorized representatives of the Settling Defendants and Named Plaintiffs.

5.14. <u>**Facsimile and Email Signatures**</u>.   Any signature made and transmitted by facsimile or email for the purpose of executing this Agreement shall be deemed an original signature for purposes of this Agreement and shall be binding upon the party whose counsel transmits the signature page by facsimile or email

**HAVING ELECTED TO EXECUTE THIS AGREEMENT AND TO FULFILL THE PROMISES SET FORTH HEREIN AND TO RECEIVE THEREBY THE SETTLEMENT SUMS AND OTHER CONSIDERATION IN SECTION "3" AND OTHER VOLUNTARY BENEFITS SET FORTH IN THIS AGREEMENT, THE NAMED PLAINTIFFS FREELY AND KNOWINGLY, AND AFTER DUE CONSIDERATION AND CONSULTATION WITH ATTORNEYS, ENTER INTO THIS AGREEMENT INTENDING TO WAIVE, SETTLE AND RELEASE ALL CLAIMS THEY HAVE OR MIGHT HAVE AS SET FORTH IN THIS AGREEMENT AGAINST RELEASEES.**

**I AGREE TO THESE TERMS:**

*NAMED PLAINTIFF AND CLASS REPRESENTATIVE CARLOS OCAMPO*

_____

Carlos Ocampo

Dated: _____

*NAMED PLAINTIFF AND CLASS REPRESENTATIVE JORGE VILLANUEVA*

_____

Jorge Villanueva

Dated: _____

*NAMED PLAINTIFF AND CLASS REPRESENTATIVE AMAURY ORTIZ*

_____

Amaury Ortiz

Dated: _____

*NAMED PLAINTIFF AND CLASS REPRESENTATIVE PLINIO RETANA*

_____
Plinio Retana

Dated: _____


***NAMED PLAINTIFF AND CLASS
REPRESENTATIVE MANUEL
CALDERON***

_____
Manuel Calderon

Dated: _____


***NAMED PLAINTIFF AND CLASS
REPRESENTATIVE SUTEE
MONCHAITANAPAT***

_____
Sutee Monchaitanapat

Dated: _____


***NAMED PLAINTIFF AND CLASS
REPRESENTATIVE IGOR MOROZOV***

_____
Igor Morozov

Dated: _____


***NAMED PLAINTIFF DOUGLAS
MOLINA***

_____
Douglas Molina

Dated: _____

27

***NAMED PLAINTIFF NELSON DELAROSA***

_____

Nelson Delarosa

Dated: _____

***NAMED PLAINTIFF FELIPE BARRIGA***

_____

Felipe Barriga

Dated: _____

***NAMED PLAINTIFF SONIA GONZALEZ***

_____

Sonia Gonzalez

Dated: _____

***NAMED PLAINTIFF ALBERTO GONZALEZ***

_____

Alberto Gonzalez

Dated: _____

***NAMED PLAINTIFF PANFILO ESCOBAR***

_____

Panfilo Escobar

Dated: _____

***NAMED PLAINTIFF EDWARD SURIEL***

_____
Edward Suriel

Dated: _____


**_NAMED PLAINTIFF ALEJANDRO GONZALEZ_**

_____
Alejandro Gonzalez

Dated: _____


**_NAMED PLAINTIFF FRANCISCO SOLIS_**

_____
Francisco Solis

Dated: _____


**_NAMED PLAINTIFF CANDIDO SANCHEZ_**

_____
Candido Sanchez

Dated: _____


**_NAMED PLAINTIFF ESTELA PENALO DIAZ_**

_____
Estela Penalo Diaz

Dated: _____


**_NAMED PLAINTIFF LUCIA ROJAS-ESCOLASTICO_**

_____

Lucia Rojas-Escolastico

Dated: _____

### *NAMED PLAINTIFF JENNYS MOYA*

_____

Jennys Moya

Dated: _____

### *NAMED PLAINTIFF CLARISA ROJAS DELAROSA*

_____

Clarisa Rojas-Delarosa

Dated: _____

### *NAMED PLAINTIFF HILARIO KU*

_____

Hilario Ku

Dated: _____

### *NAMED PLAINTIFF MARIA LAMOTH*

_____

Maria Lamoth

Dated: _____

### *DEFENDANT 455 HOSPITALITY LLC*

By: JORDAN LLC, Managing Member of 455 Hospitality LLC

_____

Teddy Lichtschein
Managing Member of Jordan LLC

Dated:_____

Consented to by:

_____
Michael J. Khader, Esq.
As Receiver for 455 Hospitality LLC

Dated:_____


**DEFENDANTS DOUBLETREE FRANCHISE LLC and
DOUBLETREE HOTEL SYSTEMS, INC.**

By: _____
William Fortier
Senior Vice President Development (Americas)

Dated:_____


**DEFENDANTS ACCORD HUMAN RESOURCES 14, INC. a/k/a
ACCORD HUMAN RESOURCES OF NEW YORK, INC. and
TRINET HR III, INC. a/k/a TRINET HR CORPORATION**

By: _____
Amy Fredricks, Esq.
Lead Corporate Counsel, Claims

Dated:_____


**DEFENDANT TEDDY LICHTSCHEIN**

_____
Teddy Lichtschein

Dated:_____


**DEFENDANT ELIEZER SCHEINER**

_____
Eliezer Scheiner

Dated:_____

***DEFENDANT JORDAN LLC***

By: _____
      Teddy Lichtschein, Managing Member

4811-0795-2083, v. 15