UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

CARLOS OCAMPO, *et al.*,

                                            Plaintiffs,

        v.

455 HOSPITALITY LLC, *et al.*,

                                            Defendants.

No. 14-CV-9614 (KMK)

OPINION & ORDER

Appearances:

John J. Malley, Esq.
Smith, Buss & Jacobs, LLP
Yonkers, NY
*Counsel for Plaintiffs*

Vincent Volino, Esq.
Vincent Volino PLLC
Yonkers, NY
*Counsel for Plaintiffs*

Gregory A. Blue, Esq.
Lachtman Cohen P.C.
White Plains, NY
*Counsel for Defendants*
*Alexander Sirotkin and Browne & Appel, LLC*

KENNETH M. KARAS, District Judge:

        Current and former employees of the Doubletree Hotel in Tarrytown, New York Carlos

Ocampo, Igor Morozov, Jorge Villanueva, Amaury Ortiz, Plinio Retana, Manuel Calderon, Sutee

Monchaitanapat, Douglas Molina, Nelson Delarosa, Felipe Barriga, Sonia Gonzalez, Alberto

Gonzales, Panfilo Escobar, Edward Suriel, Alejandro Gonzalez, Francisco Solis, Candido

Sanchez, Estela Penalo Diaz, Lucia Rojas-Escolastico, Jennys Moya, Clarisa Rojas-DeLaRosa,

Hilario Ku, and Maria Lamoth (collectively, "Plaintiffs"), on behalf of themselves and all others similarly situated, bring this Action alleging violations of the Fair Labor Standards Act ("FLSA" or the "Act"), 29 U.S.C. §§ 201 *et seq.*, and New York Labor Law ("NYLL"), §§ 190 *et seq.* and 650 *et seq.* against their direct employer, 455 Hospitality, LLC ("455 Hospitality"), as well as other defendants, including Defendants Alexander Sirotkin and Browne & Appel, LLC ("Sirotkin," "B&A," together the "Sirotkin Defendants"), who Plaintiffs allege are liable as joint employers.  Now, the Sirotkin Defendants move for summary judgment to dismiss Plaintiffs' Fourth Amended Complaint (the "Motion").  For the following reasons, the Motion is granted.

## I.  Background

### A.  Factual Background

The following facts and procedural history are taken from the Parties' statements pursuant to Local Civil Rule 56.1, specifically Defendants' 56.1 Statement (Defendants Browne & Appel, LLC and Alexander Sirotkin's Local Rule Rule 56.1 Statement ("Defs.' 56.1") (Dkt. No. 433)), Plaintiffs' Local Rule 56.1 Counter-Statement of Facts ("Pls.' 56.1") (Dkt. No. 448)), and the admissible evidence submitted by the Parties.  The facts are recounted "in the light most favorable to" Plaintiffs, the non-movants.  *Wandering Dago, Inc. v. Destito*, 879 F.3d 20, 30 (2d Cir. 2018) (citation and quotation marks omitted).  The facts as described below are in dispute only to the extent indicated.[1]

---

[1] Where the Parties identify disputed facts but with semantic objections only or by asserting irrelevant facts, which do not actually challenge the factual substance described in the relevant paragraphs, the Court will not consider them as creating disputes of fact.  *See Baity v. Kralik*, 51 F. Supp. 3d 414, 418 (S.D.N.Y. 2014) ("Many of [the] [p]laintiff's purported denials—and a number of [its] admissions—improperly interject arguments and/or immaterial facts in response to facts asserted by [the] [d]efendant[], often speaking past [the] [d]efendant['s] asserted facts without specifically controverting those same facts. . . .  [A] number of [the] [p]laintiff's purported denials quibble with [the] [d]efendant['s] phraseology, but do not address the factual substance asserted by [the] [d]efendant[].");  *Pape v. Bd. of Educ. of Wappingers Cent.*

455 Hospitality is the owner, operator, and manager of the Double Tree by Hilton Hotel, located at 455 Broadway, Tarrytown, New York 10591 (the "Hotel").  (Fourth Am. Compl. ("Fourth AC") ¶ 1 (Dkt. No. 311).)  455 Hospitality is a franchisee of Doubletree Franchise LLC ("Doubletree LLC") and/or Doubletree Hotel Systems, Inc. ("Doubletree HSI," collectively "Franchisor Defendants"), which have granted licenses to various franchisees to operate Doubletree by Hilton Hotels in New York under the Doubletree system.  (*Id.* ¶¶ 62, 65).  Plaintiffs commenced the instant Action on December 4, 2014, asserting claims against 455 Hospitality, Franchisor Defendants, Richard Friedman, David Ribbens, Norma Abdou, and Nurul Haque.  (Defs.' 56.1 ¶¶ 1–2.)  Plaintiffs consist of banquet servers, housemen, a houseman supervisor, banquet supervisors, restaurant waiters, a room service waiter, housekeepers, and a kitchen sous chef who have been employed to work at the Hotel.  (Fourth AC ¶ 1.)  Plaintiffs allege, inter alia, claims for unpaid minimum wages, overtime pay, gratuities, tips, failure to maintain records, and wage statement violations.  (*Id.* ¶ 6.)

In the Original Complaint, Plaintiffs identified the Sirotkin Defendants, but did not assert claims against them.  (Defs.' 56.1 ¶ 3.)  On February 23, 2015, Plaintiffs filed their First Amended Complaint.  ("FAC," *id.* ¶ 9.)  The FAC named only the defendants that were included

---

*Sch. Dist.*, No. 07-CV-8828, 2013 WL 3929630, at *1 n.2 (S.D.N.Y. July 30, 2013) (explaining that the plaintiff's 56.1 statement violated the rule because it "improperly interjects arguments and/or immaterial facts in response to facts asserted by [the] [d]efendant, without specifically controverting those facts," and "[i]n other instances, . . . neither admits nor denies a particular fact, but instead responds with equivocal statements"); *Goldstick v. The Hartford, Inc.*, No. 00-CV-8577, 2002 WL 1906029, at *1 (S.D.N.Y. Aug. 19, 2002) (noting that the plaintiff's 56.1 statement "does not comply with the rule" because "it adds argumentative and often lengthy narrative in almost every case[,] the object of which is to 'spin' the impact of the admissions [the] plaintiff has been compelled to make").

Where possible, the Court has relied on the undisputed facts in the Parties' 56.1 submissions.  However, direct citations to the record have also been used where relevant facts were not included in any of the Parties' Rule 56.1 submissions, or where the Parties did not accurately characterize the record.

in the Original Complaint and did not assert claims against the Sirotkin Defendants. (*Id.* ¶¶ 10–11.) On June 16, 2015, Plaintiffs filed their Second Amended Complaint. ("SAC," *id.* ¶ 13.) Again, the SAC named only the defendants from the Original Complaint and did not assert claims against the Sirotkin Defendants. (*Id.* ¶¶ 14–15.) On April 7, 2017, Plaintiffs filed their Third Amended Complaint. ("TAC," *id.* ¶ 17.) The TAC added additional defendants: Accord Human Resources 14, INC. a/k/a Accord Human Resources Of New York, Inc., TriNet HR III, INC. a/k/a TriNet HR Corporation, CUSA, LLC, Grand Bay Hospitality Group, Inc., Gevity HR, Inc. and Engage Employer, Inc. (*Id.* ¶ 18.) Still, in the TAC, Plaintiffs did not assert claims against the Sirotkin Defendants. (*Id.* ¶ 19.) On September 26, 2019, Plaintiffs filed a Fourth Amended Complaint. ("Fourth AC," *id.* ¶ 23.) In the Fourth AC, Plaintiffs asserted claims against the Sirotkin Defendants. (*Id.* ¶ 24.)

At all relevant times, the Hotel has been owned and operated by 455 Hospitality. (*Id.* ¶ 25.) 455 Hospitality is a New York limited liability company and was formed in February 2005. (*Id.* ¶ 26.) As of 2005, B&A owned a 16.66% membership interest in 455 Hospitality, Lieb Puritz owned a 16.66% membership interest, and Defendants Teddy Lichtschein and Lou Scheiner each owned an 8.33% membership interest, making Lichtschein and Scheiner together equal with each of B&A and Puritz in terms of membership interest. (*Id.* ¶ 27.) While the initial Operating Agreement of 455 Hospitality reflected that Sirotkin and his late father Paul Sirotkin were members of 455 Hospitality, that was an error that was corrected by the First Amendment to the Operating Agreement of 455 Hospitality, LLC dated as of February 15, 2005. (*Id.* ¶ 28.) Defendant Jordan, LLC ("Jordan") has at all relevant times owned a 50.02% membership interest in 455 Hospitality. (*Id.* ¶ 29.) The Parties dispute whether Lichtschein is, and/or always has been, the Manager of Jordan. (*Id.* ¶ 30; Pls.' 56.1 ¶ 30.) Plaintiffs believe that Sirotkin, not

4

Lichtschein, "executed as the manager of Jordan." (*Id.*; Declaration of Alexander Sirotkin in Support of Motion for Summary Judgment ("Sirotkin Decl.") Ex. H (Dkt. No. 432-1).) Sirotkin did not hire, fire, supervise, control the work schedule, set the conditions of employment, determine the rate or method of pay, or maintain employment records for any of the Plaintiffs or any hourly employees. (Defs.' 56.1 ¶¶ 32–39.) The Parties do not agree about Sirotkin's participation in performance reviews of Hotel employees. (*Id.* ¶ 44; Pls.' 56.1 ¶ 44.) Plaintiffs cite to instances in which Sirotkin informally evaluated various Hotel employees by making comments about their performance. (Pls.' 56.1 ¶ 44.) However, Sirotkin did not comment on the performance of any Plaintiffs. (*Id.*) Further, none of the Plaintiffs: (a) communicated with Sirotkin; or (b) interacted directly with Sirotkin, concerning the hiring, firing, compensation, or terms of employment relating to any such Plaintiff. (Defs.' 56.1 ¶ 45.) None of the Plaintiffs has a written contract between themselves and Sirotkin or themselves and B&A. (*Id.* ¶¶ 46–47.) Sirotkin did not sign any employment contracts with any of the Plaintiffs on his own behalf, on behalf of B&A, or on behalf of 455 Hospitality. (*Id.* ¶ 48.)

The Parties do not agree as to Sirotkin's role in maintaining the financial records for 455 Hospitality. (*Id.* ¶ 40; Pls.' 56.1 ¶ 40.) Defendants represent that Sirotkin did not maintain the financial records for 455 Hospitality. (*Id.*) Plaintiffs refute this and state that Sirotkin had a practice of maintaining 455 Hospitality's financial records as demonstrated by emails in which Sirotkin requested balance sheets and profit and loss statements for the Hotel. (Pls.' 56.1 ¶ 40.) However, the Parties agree that Sirotkin did not maintain the bank records for 455 Hospitality nor did he instruct the CFO of 455 Hospitality in any way with respect to the wages of hourly employees at the Hotel. (Defs.' 56.1 ¶¶ 41–42.)

Neither B&A nor Sirotkin has taken any money out of the Hotel since at least 2009. (Defs.' 56.1 ¶¶ 49–50.)  B&A does not have, and never had, any financial interest in non-defendant entity Sir Paul Realty, LLC ("Sir Paul Realty.")  (*Id.* ¶ 51.)  The Parties are not in agreement regarding Sirotkin's financial interest in Sir Paul Realty.  (Pls.' 56.1 ¶ 52.)  Plaintiffs claim that Sirotkin had a financial interest in Sir Paul Realty in his capacity as a managing member.  (*Id.*)  Plaintiffs note that on July 19, 2013 Sirotkin, as managing member of Sir Paul Realty, demanded that 455 Hospitality purchase the Hotel ground lease from Sir Paul Realty at a cost of $3 million.  (Pls.' 56.1 ¶ 53; Declaration of John J. Malley in Opposition to the Motion for Summary Judgment ("Malley Decl.") Ex. 1, Deposition Transcript of Alexander Sirotkin ("Sirotkin Tr.") 200:20–203:05 (Dkt. No. 445-1), Ex. 57, Sir Paul Realty Assignment and Assumption of Ground Lease.)  Plaintiffs also dispute whether the Sirotkin Defendants have used corporate funds of 455 Hospitality for purposes unrelated to 455 Hospitality.  (Pls.' 56.1 ¶ 53; Fourth AC ¶¶ 211, 213.)  For example, Plaintiffs claim that the Sirotkin Defendants "orchestrated an illegal 'cash [b]usiness' whereby customers would make cash payments for catering events which were not recorded in the books and records of 455 Hospitality and the cash was diverted and not used for the legitimate corporate purposes of 455 Hospitality . . . ."  (*Id.* ¶¶ 56, 60; Fourth AC ¶¶ 216, 218.)  Further, Plaintiffs allege that the Sirotkin Defendants "fleeced 455 Hospitality by having lavish personal parties at the Hotel without paying 455 Hospitality fair value for the parties, financially burdening 455 Hospitality for a purely personal gain."  (*Id.* ¶¶ 64, 66; Fourth AC ¶ 221.)  Finally, Plaintiffs allege that "[i]n order to accommodate personal parties for . . . Sirotkin, 455 Hospitality was forced to forego other events which would have been more lucrative, causing 455 Hospitality to suffer financially solely for the personal gain of [Sirotkin]."  (*Id.* ¶ 65; Fourth AC ¶ 222.)

6

B.  Procedural History

Plaintiffs commenced the instant Action on December 4, 2014, alleging violations of their rights under the FLSA and NYLL.  (Dkt. No. 1.)  455 Hospitality, Abdou, Friedman, Haque, and Ribbens filed an Answer to Plaintiffs' Complaint on February 2, 2015.  (Dkt. No. 15.)  On February 23, 2015, Plaintiffs filed their FAC.  (Dkt. No. 19.)  455 Hospitality, Abdou, Friedman, Haque, and Ribbens filed an Answer to Plaintiffs' FAC on March 13, 2015. (Dkt. No. 38.)  Plaintiffs filed their SAC on June 16, 2015, (Dkt. No. 60), and 455 Hospitality, Abdou, Friedman, Haque, Ribbens, and Doreen Clarke filed an Answer on August 5, 2015, (Dkt. No. 76.)  Franchisor Defendants filed a Motion To Dismiss and supporting papers on August 4, 2015.  (Dkt. No. 75.)  Plaintiffs filed their opposition on September 2, 2015, (Dkt. No. 85), and Franchisor Defendants filed their reply on September 18, 2015, (Dkt. No. 88.)  On September 15, 2016, the Court denied Franchisor Defendants' Motion To Dismiss.  (Dkt. No. 206.)[2]

Subsequently, Plaintiffs filed their TAC on April 7, 2017, (Dkt. No. 218), and 455 Hospitality, Abdou, Friedman, Haque, Ribbens, and Clarke filed an Answer on April 21, 2017, (Dkt. No. 221).  Franchisor Defendants also filed an answer on April 21, 2017.  (Dkt. No. 222.) Franchisor Defendants as well as Defendants Accord Human Resources 14, Inc., Accord Human Resources of New York, Inc., TriNet HR Corporation, and TriNet HR III, Inc., filed Answers on June 16, 2017.  (Dkt. Nos. 237, 238.)  On August 1, 2019, Plaintiffs filed a Motion to Amend/Correct the TAC.  (Dkt. No. 297.)  Defendants filed their opposition papers on August 14 and 15 of 2019.  (Dkt. No. 300, 301.)  On August 26, 2019, Plaintiffs filed their reply.  (Dkt.

---

[2] Pursuant to an Order dated June 21, 2016, (Dkt. No. 147), Franchisor Defendants submitted appropriately redacted versions of their motion papers for public filing, (Dkt. Nos. 183, 198–203).

No. 304.)  On September 19, 2019, the Court granted Plaintiffs' Motion to Amend/Correct the TAC.  (Dkt. No. 308.)  Subsequently, Plaintiffs filed their Fourth AC on September 26, 2019, (Dkt. No. 311), and 455 Hospitality, Abdou, Friedman, Haque, Ribbens, and Clarke filed an Answer on October 4, 2019, (Dkt. No. 318).  Franchisor Defendants as well as Defendants Accord Human Resources 14, Inc., Accord Human Resources of New York, Inc., TriNet HR Corporation, and TriNet HR III, Inc., filed Answers on October 8 and 9 of 2019.  (Dkt. Nos. 319, 320.)  In addition, Defendants Teddy Lichtschein, Eliezer Scheiner, and Jordan filed Answers on November 12, 2019.  (Dkt. Nos. 341–43.)  On February 4, 2020, the Sirotkin Defendants filed a Motion To Dismiss.  (Dkt Nos. 368–70.)  Given that the Motion To Dismiss was based, in part, on matters outside of the pleadings, the Court converted the motion to one for summary judgment and granted the parties the opportunity to file evidentiary materials.  (Dkt. No. 415.)  The Sirotkin Defendants did so, (Dkt. Nos. 418–19), and Plaintiffs then requested permission to complete discovery before responding, (Dkt. No. 420).  The Court granted this request and set a new briefing schedule.  (Dkt. No. 424.)  On December 21, 2020, after the close of discovery, the Sirotkin Defendants filed an Answer.  (Dkt. No. 429.)  On the same day, the Sirotkin Defendants filed their Motion for Summary Judgment and their supporting papers. (Dkt. Nos. 430, 434.)  Plaintiffs filed their opposition on January 30, 2021, (Dkt. No. 449), and the Sirotkin Defendants filed their reply on February 15, 2021, (Dkt. No. 454).[3,4]

---

[3] On June 8, 2021, Plaintiffs filed a Motion to Approve the Class Settlement and Release which is pending before the Court.  The Sirotkin Defendants are the only defendants that are not included in the proposed settlement with Plaintiffs.  (Dkt. No. 469.)

[4] On March 2, 2016, in an Oral Ruling, Plaintiffs' Motion to conditionally certify an FLSA class and send notifications to the class was granted as to non-exempt workers employed in the Hotel's food and beverage and housekeeping departments in the six-year period before the commencement of the instant Action and who were not paid minimum wage and overtime compensation in violation of FLSA.  (Dkt. No. 91.)

<u>II.  Discussion</u>

A.  <u>Standard of Review</u>

Summary judgment is appropriate where the movant shows that "there is no genuine

dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed.

R. Civ. P. 56(a); *see also Psihoyos v. John Wiley & Sons, Inc.*, 748 F.3d 120, 123–24 (2d Cir.

2014) (same).  "In determining whether summary judgment is appropriate," a court must

"construe the facts in the light most favorable to the non-moving party and . . . resolve all

ambiguities and draw all reasonable inferences against the movant."  *Brod v. Omya, Inc.*, 653

F.3d 156, 164 (2d Cir. 2011) (quotation marks omitted); *see also Borough of Upper Saddle River

v. Rockland Cnty. Sewer Dist. No. 1*, 16 F. Supp. 3d 294, 314 (S.D.N.Y. 2014) (same).  "It is the

movant's burden to show that no genuine factual dispute exists."  *Vt. Teddy Bear Co. v. 1-800

Beargram Co.*, 373 F.3d 241, 244 (2d Cir. 2004); *see also Berry v. Marchinkowski*, 137 F. Supp.

3d 495, 521 (S.D.N.Y. 2015) (same) (alteration omitted).

 "However, when the burden of proof at trial would fall on the nonmoving party, it

ordinarily is sufficient for the movant to point to a lack of evidence to go to the trier of fact on an

essential element of the nonmovant's claim," in which case "the nonmoving party must come

forward with admissible evidence sufficient to raise a genuine issue of fact for trial in order to

avoid summary judgment."  *CILP Assocs., L.P. v. Pricewaterhouse Coopers LLP*, 735 F.3d 114,

123 (2d Cir. 2013) (alteration and quotation marks omitted).  Further, "[t]o survive a [summary

judgment] motion . . . , [a nonmovant] need[s] to create more than a 'metaphysical' possibility

that his allegations were correct; he need[s] to 'come forward with specific facts showing that

there is a genuine issue for trial,'" *Wrobel v. County of Erie*, 692 F.3d 22, 30 (2d Cir. 2012)

(emphasis omitted) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574,

586–87 (1986)), "and cannot rely on the mere allegations or denials contained in the pleadings," *Guardian Life Ins. Co. v. Gilmore*, 45 F. Supp. 3d 310, 322 (S.D.N.Y. 2014) (quotation marks omitted); *see also Wright v. Goord*, 554 F.3d 255, 266 (2d Cir. 2009) ("When a motion for summary judgment is properly supported by documents or other evidentiary materials, the party opposing summary judgment may not merely rest on the allegations or denials of his pleading . . . .").

"On a motion for summary judgment, a fact is material if it might affect the outcome of the suit under the governing law." *Royal Crown Day Care LLC v. Dep't of Health & Mental Hygiene*, 746 F.3d 538, 544 (2d Cir. 2014) (quotation marks omitted). At this stage, "[t]he role of the court is not to resolve disputed issues of fact but to assess whether there are any factual issues to be tried." *Brod*, 653 F.3d at 164. Thus, a court's goal should be "to isolate and dispose of factually unsupported claims." *Geneva Pharms. Tech. Corp. v. Barr Labs. Inc.*, 386 F.3d 485, 495 (2d Cir. 2004) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986)).

When ruling on a motion for summary judgment, a district court should consider only evidence that would be admissible at trial. *See Nora Beverages, Inc. v. Perrier Grp. of Am., Inc.*, 164 F.3d 736, 746 (2d Cir. 1998). "[W]here a party relies on affidavits . . . to establish facts, the statements 'must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant . . . is competent to testify on the matters stated.'" *DiStiso v. Cook*, 691 F.3d 226, 230 (2d Cir. 2012) (quoting Fed. R. Civ. P. 56(c)(4)); *see also Sellers v. M.C. Floor Crafters, Inc.*, 842 F.2d 639, 643 (2d Cir. 1988) ("Rule 56 requires a motion for summary judgment to be supported with affidavits based on personal knowledge . . . ."); *Baity*, 51 F. Supp. 3d at 419 (disregarding "statements not based on [the] [p]laintiff's personal knowledge"); *Flaherty v. Filardi*, No. 03-CV-2167, 2007 WL 163112, at *5 (S.D.N.Y. Jan. 24,

10

2007) ("The test for admissibility is whether a reasonable trier of fact could believe the witness had personal knowledge." (citation omitted)).

> B.  Analysis

>> 1. FLSA and NYLL Claims

The FLSA requires employers who meet certain conditions to provide overtime pay for work that exceeds forty hours per week.  *See* 29 U.S.C. § 207(a).  The FLSA was enacted to "correct" and "eliminate," *id.* § 202(b), "labor conditions detrimental to the maintenance of the minimum standard of living necessary for health, efficiency, and general well-being of workers," *id.* § 202(a).  Courts in the Second Circuit construe the FLSA "liberally to apply to the furthest reaches consistent with congressional direction."  *Jacobs v. N.Y. Foundling Hosp.*, 577 F.3d 93, 97 n.2 (2d Cir. 2009) (per curiam) (citation omitted).  The FLSA extends liability to any "employer" that violates its terms.  *See* 29 U.S.C. § 216(b).  Under the FLSA, an "employer" is defined as "any person acting directly or indirectly in the interest of an employer in relation to an employee."  *Id.* § 203(d).  The NYLL defines "employer" as "any person . . . employing any individual in any occupation, industry, trade, business or service" or "any individual . . . acting as employer."  N.Y. Lab. L. § 190(3), 651(6).  District courts in the Second Circuit have consistently interpreted the definition of "employer" under the NYLL coextensively with the definition under the FLSA.  *See, e.g.*, *Williams v. Epic Sec. Corp.*, 358 F. Supp. 3d 284, 305 (S.D.N.Y. 2019); *see also Inclan v. N.Y. Hosp. Grp., Inc.*, 95 F. Supp. 3d 490, 511 (S.D.N.Y. 2015) (noting that the definitions of "employer" under the NYLL and the FLSA are coextensive); *Cruz v. Rose Assocs., LLC*, No. 13-CV-0112, 2013 WL 1387018, at *2 (S.D.N.Y.

Apr. 5, 2013) (same).  Accordingly, the Court will analyze the FLSA and NYLL claims under the same standard.[5]

The Supreme Court has explained that the broad coverage of the FLSA accomplishes the law's goal of "outlawing from interstate commerce goods produced under conditions that fall below minimum standards of decency."  *Tony & Susan Alamo Found. v. Sec'y of Labor*, 471 U.S. 290, 296 (1985).  Given this, the Supreme Court "has consistently construed the Act liberally to apply to the furthest reaches consistent with congressional direction."  *Id.* (quotation marks omitted).  The FLSA "defines the verb 'employ' expansively to mean 'suffer or permit to work.'"  *Nationwide Mut. Ins. Co. v. Darden*, 503 U.S. 318, 326 (1992) (quoting 29 U.S.C. § 203(g)).  Considering the expansiveness of the FLSA, the Supreme Court has explained that "no definition . . . solves problems as to the limits of the employer-employee relationship under the Act."  *Rutherford Food Corp. v. McComb*, 331 U.S. 722, 728 (1947).  "The Supreme Court has observed . . . that the 'striking breadth' of the FLSA's definition of 'employ' 'stretches the meaning of "employee" to cover some parties who might not qualify as such under a strict application of traditional agency law principles' in order to effectuate the remedial purposes of the [A]ct."  *Barfield v. N.Y.C. Health & Hosps. Corp.*, 537 F.3d 132, 150 (2d Cir. 2008) (quoting *Darden*, 503 U.S. at 326).  "Accordingly, the [Supreme] Court has instructed that the

---

[5] The Court recognizes that the New York Court of Appeals has not yet decisively determined whether the standards for employers under the FLSA and NYLL are coextensive, but absent decisive precedent to the contrary, the Court will follow the trend among other courts and review these claims under the same standard.  *See Hart v. Rick's Cabaret Int'l, Inc.*, 967 F. Supp. 2d 901, 940 (S.D.N.Y. 2013) (noting that "[c]ourts in this District have regularly applied the same tests to determine, under the FLSA and the NYLL, whether entities were joint employers," because "[t]he statutory standard for employer status under the NYLL is nearly identical to that of the FLSA" and that while "the New York Court of Appeals has not yet resolved whether the NYLL's standard for employer status is coextensive with the FLSA's, . . . there is no case law to the contrary" (citations omitted)).

determination of whether an employer-employee relationship exists for purposes of the FLSA should be grounded in 'economic reality rather than technical concepts.'" *Id.* (quoting *Goldberg v. Whitaker House Coop., Inc.*, 366 U.S. 28, 33 (1961)). The "economic reality" test applies equally to whether workers are employees and to whether managers or owners are employers. *See Herman v. RSR Sec. Servs. Ltd.*, 172 F.3d 132, 139 (2d Cir. 1999). "[T]he determination of the [employment] relationship does not depend on such isolated factors" as where work is done or how compensation is divided "but rather upon the circumstances of the whole activity." *Rutherford*, 331 U.S. at 730.

The Second Circuit has interpreted "employment for FLSA purposes as a flexible concept to be determined on a case-by-case basis by review of the totality of the circumstances." *Barfield*, 537 F.3d at 141–42. Courts in the Second Circuit use two approaches to analyze whether an employment relationship exists. First, "[a]n employment relationship may arise as a result of formal control exercised over a worker." *Gordon v. Gen. Prop. Mgmt. Assocs., Inc.*, 496 F. Supp. 3d 830, 839 (S.D.N.Y. 2020). In evaluating whether such formal control exists for purposes of the FLSA, the Second Circuit outlined a four-factor test in *Carter v. Dutchess Community College* to use as a framework. 735 F.2d 8 (2d Cir. 1984). Under this approach, a district court must assess "whether the alleged employer (1) had the power to hire and fire the employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records." *Id.* at 12 (citation omitted). Importantly, the Second Circuit has noted that these factors do not comprise a "rigid rule for the identification of an FLSA employer." *Barfield*, 537 F.3d at 143. Instead, these factors offer "'a nonexclusive and overlapping set of factors' to ensure that the economic realities test mandated by the Supreme Court is sufficiently

comprehensive and flexible to give proper effect to the broad language of the FLSA." *Id.* (quoting *Zheng v. Liberty Apparel Co.*, 355 F.3d 61, 75–76 (2d Cir. 2003)).  However, if formal control does not exist, under the second approach, a district court must determine if an entity exercised functional control over a worker.  *Id.* at 143.

Joint employers may also be held liable under the FLSA.  *Falk v. Brennan*, 414 U.S. 190, 195 (1973).  In 2019, the Department of Labor ("DOL") issued a Final Rule related to the FLSA which adopts a four-factor balancing test derived from *Bonnette v. California Health & Welfare Agency* in evaluating whether an entity is a joint employer.  704 F.2d 1465, 1469–70 (9th Cir. 1983).  These factors mirror those in *Carter. Id.*; *see also* 29 C.F.R. § 791.2(a)(1)(i)–(iv).[6]  The Final Rule explains that "the appropriate weight to give each factor will vary depending on . . . how that factor . . . suggest[s] control in [a given] case." *Id.* § 791.2(a)(3)(i).  Under the Final Rule, a "potential joint employer must actually exercise—directly or indirectly—one or more of these indicia of control to be jointly liable under the [FLSA]."  *Id.*  The Final Rule requires "actual exercise of control."  *Id.*  Similar to the Second Circuit approach, the Final Rule notes that "[n]o single factor is dispositive in determine joint employer status[.]"  *Id.*[7]

Aside from an employer's liability, the Second Circuit has articulated factors to consider when addressing whether an individual within a company that employs a worker is personally

---

[6] While the Final Rule generally tracks with the factors set forth in *Bonnette*, DOL narrowed the first factor to "consider only whether the potential joint employer hires or fires the employee, rather than whether the potential joint employer has the 'power' to hire or fire the employee."  85 Fed. Reg. 2820, 2830 (Jan. 16, 2020) (codified at 29 C.F.R. §§ 791.1–3).  This change reflects the Final Rule's focus on control as the core inquiry to determine joint employer liability.  *Id.*

[7] Eighteen states have sued, arguing that the Final Rule is invalid because it narrowed the definition of joint employer and one of those cases in this District is currently being appealed to the Second Circuit.  *New York v. Scalia*, 490 F. Supp. 3d 748, 757 (S.D.N.Y. 2020).

liable for damages as that worker's employer.  *See Irizarry v. Catsimatidis*, 722 F.3d 99, 105–06 (2d Cir. 2013).  In evaluating individual liability, in addition to the four-factor test from *Carter*, the Second Circuit has pointed to other factors that bear on the "overarching concern [of] whether the alleged employer possessed the power to control the workers in question."  *RSR*, 172 F.3d at 139.  In *RSR*, the Second Circuit explained that "operational control" is relevant in determining whether an individual is an employer under the FLSA.  *Id.* at 140.  The Second Circuit has explained that to be an employer, "an individual defendant must possess control over a company's actual 'operations' in a manner that relates to a plaintiff's employment."  *Irizarry*, 722 F.3d at 109.  More specifically, the Second Circuit has stated that it is appropriate to "require some degree of *individual involvement* in a company in a manner that affects employment-related factors such as workplace conditions and operations, personnel, or compensation—even if this appears to establish a higher threshold for individual liability than for corporate 'employer' status."  *Id.* (emphasis added).  The Second Circuit has further explained that:

> A person exercises operational control over employees if his or her role within the company, and the decisions it entails, *directly affect the nature or conditions of the employees' employment*. Although this does not mean that the individual 'employer' must be responsible for managing plaintiff employees—or, indeed, that he or she must have directly come into contact with the plaintiffs, their workplaces, or their schedules—the relationship between the individual's operational function and the plaintiffs' employment must be closer in degree than simple but-for causation.

*Id.* at 110 (emphasis added).

The Court will first address whether Sirotkin is an employer under the FLSA.  Plaintiffs bear the burden of proving that a particular defendant is an "employer" under the FLSA and NYLL.  *Napoli v. 243 Glen Cove Ave. Grimaldi, Inc.*, 397 F. Supp. 3d 249, 272 (E.D.N.Y. 2019) (holding that "plaintiff ha[d] not met his burden in showing that [an individual defendant] was his employer under the FLSA and NYLL"); *see also Williams*, 358 F. Supp. 3d at 305

("Plaintiffs have not met their burden of proof to show that, under the economic reality test, [an individual defendant] is an employer for the purposes of liability under the FLSA (and NYLL)."); *Tapia v. BLCH 3rd Ave. LLC*, No. 14-CV-8529, 2016 WL 4581341, at *8 (S.D.N.Y. Sept. 1, 2016), *aff'd sub nom. Tapia v. BLCH 3rd Ave LLC*, 906 F.3d 58 (2d Cir. 2018) (concluding that plaintiffs failed to show by a preponderance of the evidence that two individual defendants were their employers within the meaning of the FLSA and NYLL).

Plaintiffs admit that Sirotkin did not affect their conditions of employment—namely he did not hire them, fire them, supervise them, control their work schedules, set the conditions of their employment, determine their rate of pay, determine their method of payment, maintain their employment records, maintain the Hotel's bank records, or instruct the Hotel's CFO in any way with respect to their wages. (Pls.' 56.1 ¶¶ 32–39, 41–42.) Plaintiffs further admit that no Plaintiff ever communicated with Sirotkin or interacted with him concerning their hiring, firing, compensation, or terms of employment. (*Id.* ¶ 45.) Thus, Plaintiffs have plainly conceded the *Carter* factors which are part of the analysis to determine whether Sirotkin is an employer for the purposes of the FLSA and NYLL. *Carter*, 735 F.2d at 12.[8] Given that Plaintiffs do not dispute these essential determinants of whether Sirotkin is an employer under the FLSA—the Court must instead look to the issue of his operational control over Plaintiffs' employment.[9]

---

[8] Even if Plaintiffs could offer evidence that Sirotkin had the power to hire and fire them, but never exercised such a power, this evidence would weigh against a finding that he is an employer under the FLSA. *Hernandez v. Sikka*, No. 17-CV-4792, 2020 WL 1083706, at *11 (E.D.N.Y. Mar. 6, 2020) ("[U]nexercised authority alone, considered in the context of the lack of any evidence of operational control . . . cannot support a finding that [an individual defendant is] an 'employer.'"). In any event, Plaintiffs merely allege that Sirotkin had the power to hire and fire them, but do not offer factual support for this claim.

[9] Plaintiffs also argue that the Sirotkin Defendants have sufficient operational control to be rendered liable as joint employers. (Pls.' Mem. at 26–29, 34–36.) However, Plaintiffs do not dispute any of the four dispositive factors outlined in DOL's Final Rule which are determinative

Plaintiffs essentially argue that the Sirotkin Defendants exercised "operational control" over 455 Hospitality, thus affecting Plaintiffs' employment.  (Pls.' Mem. at 26–29.)  Specifically, Plaintiffs claim that Sirotkin was involved in "virtually every facet of the [Hotel's] business."  (*Id.* at 3.)  Plaintiffs allege that Sirotkin "hired employees, interviewed job applicants, approved salaries, was involved in employee terminations, set and cut employee compensation, reduced employee work hours when the Hotel's finances required it, supervised employees, evaluated employee performance, and had the power to discipline employees."  (*Id.* at 4.)  Some proof in support of this claim includes, an email from 2007 to other Hotel staff in which Sirotkin states "Again – I want to reiterate – no one is to be hired without ownership approval.  I want to see salaries and terms of employment of each case or each job description . . . .  DO NOT MAKE ANY MOVES WITHOUT ME ON THIS."  (*Id.* at 5.)  Plaintiffs claim that Sirotkin hired Andrea Jaffe, 455 LLC's Owner's Representative and Director of Finance, in 2007.  Sirotkin negotiated her contract, in which he had direct input on her compensation and terms of employment.  According to Plaintiffs, Sirotkin approved the hiring of a housekeeping director and notified other Hotel leaders that he approved this hire.  (*Id.*)  Sirotkin also allegedly participated in "bi-weekly sales meeting[s]" of the Hotel.  (*Id.* at 6.)  Sirotkin also expressed feedback on employee performance, decided necessary staffing reductions, influenced personnel decisions at the Hotel, disciplined employees, and also directed how insurance payments were to be disbursed.  (*Id.* at 6–8.)  Finally, Plaintiffs claim that Sirotkin was part of discussions surrounding the resignation of an employee as well as the management of Hotel business.  (*Id.* at 8–9.)

---

of an employer's control to render it a joint employer under the FLSA.  Because Plaintiffs have plainly conceded these facts, the Court does not find the Sirotkin Defendants to be joint employers.

These claims are insufficient, however, to meet Plaintiffs' burden.  Most fatal to Plaintiffs' claim is that they fail to establish that Sirotkin possessed "control over [455 Hospitality's] actual 'operations' *in a manner that relates to . . . [plaintiffs'] employment*." *Irizarry*, 722 F.3d at 109 (emphasis added).  "Evidence that an individual is an owner or officer of a company, or otherwise makes corporate decisions that have nothing to do with an employee's function, is insufficient to demonstrate 'employer' status." *Id.*  Thus, Sirotkin's involvement in other aspects of the Hotel completely separate and apart from *Plaintiffs' employment* cannot support a finding that he exercised operational control over them to be liable as an employer under the FLSA.

*Tapia* is instructive here.  In *Tapia*, the district court found that a restaurant owner was not an "employer" under the FLSA.  The plaintiffs in *Tapia* demonstrated that one of the individual defendants "was involved in the general management of the restaurant . . . though he was not the general manager."  *Tapia*, 2016 WL 4581341, at *3.  The plaintiffs in *Tapia* also offered evidence to show that the individual defendant was at the restaurant on a daily basis, was involved in the kitchen operations, gave instructions to managers, supervised staff in the cleaning and organizing of the restaurant, and reviewed payroll records each week.  *Id.*  But even this daily presence and direct involvement with the plaintiffs was not sufficient for the court to find this individual defendant to be an employer under the FLSA.  *See id.* at *8  (noting that "several courts in this Circuit have found that an ownership interest coupled with a role in supervising employees is not sufficient to sustain individual FLSA liability").  The Second Circuit affirmed this ruling.  *Tapia v. BLCH 3rd Ave LLC*, 906 F.3d 58, 61–62 (2d Cir. 2018) (per curiam) (affirming the district court's ruling that because the four *Carter* factors had not been satisfied the individual defendant was not an employer within the meaning of the FLSA and NYLL).

Applying the same reasoning to this case yields a similar result.  Indeed, in this case, only two Plaintiffs have provided any information as to Sirotkin's involvement with the Hotel, and that is limited to the claim that they "saw an owner named 'Alex' in the Hotel on a regular basis," and that he would walk in the banquet rooms, the kitchen, and the kitchen hallway with the General Manager, the Food and Beverage Director, or the Banquet Manager.  (Declaration of Sutee Monchaitanapat in Opposition to Motion for Summary Judgment ("Monchaitanapat Decl.") ¶ 2 (Dkt. No. 447); (Declaration of Plinio Retana in Opposition to Motion for Summary Judgment ("Retana Decl.") ¶ 2 (Dkt. No. 446).)[10]  These claims are plainly insufficient to establish Sirotkin's control over Plaintiffs' employment.

Similarly unpersuasive is Plaintiffs' broad assertion that "[e]mployees knew from Sirotkin's hands-on management of the Hotel that he was the ultimate decision-maker regarding their employment by the Hotel."  (Pls.' Mem. at 8.)  But Plaintiffs cite no testimony or evidence that any of the Plaintiffs themselves believed this to be true.  Instead, Plaintiffs point to an email in which Sirotkin discusses the termination or quitting of an employee named Cheryl.  (Malley Decl., Ex. 23.)  However, the Plaintiffs do not explain how Sirotkin's potential involvement with Cheryl's employment (a non-Plaintiff employee) had anything to do with Plaintiffs' employment.  In fact, 455 Hospitality's former General Manager Richard Friedman, who Plaintiffs characterize as the "single most important employee of the [H]otel," testified that Sirotkin never hired, fired, supervised, controlled the work schedules or the conditions of

---

[10] Notably, these two Plaintiffs state that "starting from 2008 [and] for many years thereafter" they saw Sirotkin at the Hotel on a regular basis.  (Monchaitanapat Decl. ¶ 2; Retana Decl. ¶ 2.)  But Plaintiffs offer no details beyond this with respect to when these sightings of Sirotkin occurred.  Both Plaintiffs began working at the Hotel in 2007 and as such Plaintiffs could be referring to seeing Sirotkin in the Hotel at that time, rather than at any time within the applicable statute of limitations, or within six years before the filing of Plaintiffs' Original Complaint.

employment, determined the rate of pay or the method of payment, or maintained employment

records for employees in the Hotel's food and beverage or housekeeping departments.

(Declaration of Gregory A. Blue in Support of Motion for Summary Judgment ("Blue Decl.")

Ex. T, 67:10-69:22 (Dkt. No. 431-12); (Pls.' Mem. at 24).)[11]  Efraim Elchonen, 455 Hospitality

Chief Financial Officer, also testified that Sirotkin was not involved in Plaintiffs' employment at

the Hotel.  (Blue Decl., Ex. T, 78:3-82:10.)  This specific evidence places beyond dispute the

question of Sirotkin's control over Plaintiffs' employment.  *See Major League Baseball Props.,*

*Inc. v. Salvino, Inc.*, 542 F.3d 290, 310 (2d Cir. 2008) ("A party opposing summary judgment

does not show the existence of a genuine issue of fact to be tired merely by making assertions

that are conclusory."); *Bickerstaff v. Vassar Coll.*, 196 F.3d 435, 452 (2d Cir. 1999) ("Statements

that are devoid of any specifics, but replete with conclusions, are insufficient to defeat a properly

supported motion for summary judgment."); *BellSouth Telecomms., Inc. v. W.R. Grace & Co.-*

*Conn.*, 77 F.3d 603, 615 (2d Cir. 1996) ("The party opposing the motion [for summary

judgment] must set forth 'concrete particulars.' . . . It is not sufficient merely to assert a

conclusion without supplying supporting arguments or facts . . . ." (quoting *SEC v. Rsch.*

*Automation Corp.*, 585 F.2d 31, 33 (2d Cir. 1978)).

---

[11] Plaintiffs point to a 2017 email in which Sirotkin asked Elchonen, the Hotel's CFO for information to bring him up to date on financial matters at the Hotel and asked how Friedman and the staff were.  The CFO responded that Friedman had retired two months earlier.  While Plaintiffs assert Sirotkin had operational control over the Hotel, he was unaware of Friedman's retirement and was not involved in the replacement of the Hotel's General Manager.  (Malley Decl., Ex. 38); (Blue Decl., Ex. U 71:13-73:8).)  Additionally, Plaintiffs cite to instances in which Sirotkin inquired about various aspects of the Hotel—such as regarding balance sheets, a summary of the Hotel's performance, financial information—but none of these documents relate to Plaintiffs' employment.  (Malley Decl., Exs. 29, 34–37.)

The Court thus finds Plaintiffs have not identified facts which could support a finding that Sirotkin had operational control over Plaintiffs' employment and therefore was their employer under the FLSA or the NYLL.  Thus, the Court dismisses these claims against Sirotkin.

### 2. Alter Ego/Piercing the Corporate Veil Claims

Plaintiffs argue that the Sirotkin Defendants are alter egos of 455 Hospitality.  (Pls.' Mem. at 29–31.)  Specifically, Plaintiffs allege that Sirotkin had more control than any other player involved in the management of 455 Hospitality and was the "hands-on Managing Partner and head of operations of 455 [Hospitality]."  (*Id.* at 30.)  The Parties agree that B&A is owned by Sirotkin and his father, Paul Sirotkin.  (Defs.' 56.1 ¶ 12; Pls.' 56.1 ¶ 12.)  The Parties also do not dispute that Jordan has at all relevant times owned a 50.02% membership interest in 455 Hospitality.  (*Id.* ¶ 29; Pls.' 56.1 ¶ 29.)  However, the Parties dispute Lichtschein's role in Jordan.  (*Id.* ¶ 30; Pls.' 56.1 ¶ 30.)  Defendants represent that Lichtschein "is, and always has been, the Manager of Jordan."  (*Id.*)  Plaintiffs argue that 455 Hospitality's Operating Agreement as well as the subsequent amendments to the agreement include Sirotkin's signature "as the manager of Jordan."  (Pls.' 56.1 ¶ 30.)  Plaintiffs also assert that given B&A's membership interest in 455 Hospitality and Sirotkin's indirect interest through Jordan make the Sirotkin Defendants employers.  (*Id.* ¶¶ 16, 30–31, 53, 60–63.)  But the Court finds this insufficient to confer FLSA liability.

 "In the Second Circuit, [alter ego liability] is determined using a two-pronged test that asks '(1) whether the entities in question operated as a single economic entity, and (2) whether there was an overall element of injustice or unfairness.'"  *Gary Friedrich Enters., LLC v. Marvel Enters., Inc.*, No. 08-CV-1533, 2011 WL 1142916, at *5 (S.D.N.Y. Mar. 22, 2011) (quoting *NetJets Aviation, Inc. v. LHC Commc'ns, LLC*, 537 F.3d 168, 177–78 (2d Cir. 2008)), *adhered to*

*on reconsideration*, 2011 WL 1344456 (S.D.N.Y. Mar. 29, 2011); *see also Kiobel v. Royal Dutch Petroleum Co.*, 621 F.3d 111, 195 (2d Cir. 2010) (Leval, J., concurring) ("Alter ego liability exists when a parent or owner uses the corporate form 'to achieve fraud, or when the corporation has been so dominated by an individual or another corporation (usually a parent corporation), and its separate identity so disregarded, that it primarily transacted the dominator's business rather than its own.'") (quoting *Gartner v. Snyder*, 607 F.2d 582, 586 (2d Cir. 1979) (interpreting New York law)), *aff'd*, 569 U.S. 108 (2013).  "In deciding whether to pierce the corporate veil, 'courts look to a variety of factors, including the intermingling of corporate and [shareholder] funds, undercapitalization of the corporation, failure to observe corporate formalities such as the maintenance of separate books and records, failure to pay dividends, insolvency at the time of a transaction, siphoning off of funds by the dominant shareholder, and the inactivity of other officers and directors.'"  *Id.* (quoting *Bridgestone/Firestone, Inc. v. Recovery Credit Servs., Inc.*, 98 F.3d 13, 18 (2d Cir. 1996)).  "[A] claim sufficient to overcome the presumption of separateness afforded to related corporations is not established by the bare allegation that one corporation dominated and controlled another."  *Id.* (citation and quotation marks omitted).  "There are two circumstances where an individual may be held liable for a corporation's liabilities under federal common law.  First, an individual's total domination and control of a subject corporation such that [he] is conducting [his] own personal business rather than corporate business is sufficient to impose alter ego liability."  *Garcia v. Vill. Red Rest. Corp.*, No. 15-CV-6292, 2017 WL 1906861, at *7 (S.D.N.Y. May 8, 2017) (citing, inter alia, *S. New England Tel. Co. v. Global NAPs Inc.*, 624 F.3d 123, 139 (2d Cir. 2010)).  "Alternatively, the corporate form may be disregarded if the individual used the corporate entity to perpetrate a

fraud or injustice." *Id.*  In deciding whether to pierce the corporate veil, courts consider factors such as:

> (1) disregard of corporate formalities; (2) inadequate capitalization; (3) intermingling of funds; (4) overlap in ownership, officers, directors, and personnel; (5) common office space, address and telephone numbers of corporate entities; (6) the degree of discretion shown by the allegedly dominated corporation; (7) whether the dealings between the entities are at arms length; (8) whether the corporations are treated as independent profit centers; (9) payment or guarantee of the corporation's debts by the dominating entity, and (10) intermingling of property between the entities.

*Freeman v. Complex Computing Co.*, 119 F.3d 1044, 1053 (2d Cir. 1997); *see also Burberry Ltd. v. Horowitz*, 534 F. App'x 41, 46 (2d Cir. 2013) (stating that these factors are generally considered in corporate veil piercing cases).  These factors are not exclusive, and "courts have considered additional factors as well.  Instead of a firm rule, the general principle guiding courts in determining whether to pierce the corporate veil 'has been that liability is imposed when doing so would achieve an equitable result.'"  *Williamson v. Recovery Ltd. P'ship*, 542 F.3d 43, 53 (2d Cir. 2008) (quoting *William Wrigley Jr. Co. v. Waters*, 890 F.2d 594, 601 (2d Cir. 1989)).  This structure of liability is appropriate here given the FLSA's broad remedial purposes.  *Irizarry*, 722 F.3d at 110.

As an initial matter, there is no independent cause of action for alter-ego liability.  *See Morris v. N.Y. State Dep't of Tax'n & Fin.*, 623 N.E.2d 1157, 1160 (N.Y. 1993) (noting that veil piercing is equitable in nature and "an attempt of a third party to pierce the corporate veil does not constitute a cause of action independent of that against the corporation; rather it is an assertion of facts and circumstances which will persuade the court to impose the corporate obligation on its owners").[12]  Instead, a veil piercing claim "is a means of imposing liability on

---

[12] Federal common law is applied to veil piercing allegations brought under the FLSA whereas New York choice of law rules apply to state law claims.  *See Rogers v. Grimaldi*, 875

an underlying cause of action." *Peacock v. Thomas*, 516 U.S. 349, 354 (1996) (citation and quotation marks omitted).  Courts in the Second Circuit routinely dismiss independent causes of action separately alleging alter ego or veil piercing liability.  *See, e.g., Taberna Cap. Mgmt., LLC v. Dunmore*, No. 08-CV-1817, 2009 WL 2850685, at *4 (S.D.N.Y. Sept. 2, 2009) (reaffirming the dismissal of a claim against individual defendants which was styled as one for alter ego liability because it is not an independent cause of action separate from the plaintiff's other causes of action); *Rothberg v. Chloe Foods Corp.*, No. 06-CV-5712, 2008 WL 268061, at *1 n.4 (E.D.N.Y. Jan. 29, 2008) (noting that "a separate cause of action to pierce the corporate veil does not exist independent from the claims asserted against the corporation" (quoting *9 E. 38th St. Assocs., L.P. v. George Feher Assocs., Inc.*, 640 N.Y.S.2d 520, 521 (App. Div. 1996))).  On this basis alone, the Court could dismiss Plaintiffs' alter ego/piercing the corporate veil claims.[13]

The alter ego/piercing the corporate veil claims also fail because Plaintiffs have offered no evidence to support their claim that the Sirotkin Defendants were conducting their own business rather than corporate business, completely dominated by 455 Hospitality, or "used the corporate entity to perpetrate a fraud or injustice." *Garcia*, 2017 WL 1906861, at *7.  Plaintiffs allege that the Sirotkin Defendants used corporate funds of 455 Hospitality for personal purposes

---

F.2d 994, 1002 (2d Cir. 1989); *Garcia*, 2017 WL 1906861, at *7.  Under New York choice of law rules, the state of incorporation controls the inquiry. *See Fletcher v. Atex, Inc.*, 68 F.3d 1451, 1456 (2d Cir. 1995).  Because 455 Hospitality is a New York corporation, New York's alter ego and veil piercing law applies to Plaintiffs' NYLL claims.  (Sirotkin Decl., Ex. H.)

[13] The Court notes that Plaintiffs do not dispute that there is no independent cause of action for alter ego or piercing the corporate veil liability.  (Pls.' Mem. at 12–13.)  This also could form the basis for dismissal of these claims. *See Senno v. Elmsford Union Free Sch. Dist.*, 812 F. Supp. 2d 454, 468 (S.D.N.Y. 2011) (finding that the plaintiff had abandoned a Title VII claim based on a failure to address it in a response to a motion to dismiss); *see also Robinson v. Am. Int'l Grp., Inc.*, 08-CV-1724, 2009 WL 3154312, at *4 n.65 (S.D.N.Y. Sept. 30, 2009) (collecting cases holding that where a party fails to address arguments in opposition papers on a summary judgment motion, the claim is deemed abandoned).

and for purposes unrelated to the business.  (Fourth AC ¶¶ 211, 213, 216, 218, 221–22.)

However, Plaintiffs have failed to adduce evidence to support these allegations and there is

uncontested evidence to the contrary.  For example, Elchonen testified that Sirotkin never wrote

a check or transferred Hotel money to himself, B&A, or any Sirotkin family member from the

Hotel bank account.  (Blue Decl., Ex. U at 68:14-69:25.)  Elchonen further testified that the

Sirotkin Defendants or members of the Sirotkin family never received any money from the

Hotel.  (*Id.* at 68:22-69:1.)  Elchonen also confirmed that the last time any member of the

Sirotkin family or any related entities received any money from the Hotel was in 2008 or 2009—

well beyond the statute of limitations for any claims brought by Plaintiffs.  (*Id.* at 74:22-75:15.)

Elchonen specifically testified that neither Sirotkin nor his family used corporate funds of 455

Hospitality for personal purposes, diverted money from the Hotel for any non-Hotel purposes,

taken a loan or cash from the Hotel, asked Hotel catering customers to make cash payments for

catering events to divert funds to himself or B&A, or hosted any personal parties at the Hotel

without paying 455 Hospitality the fair value for such events.  (*Id.* at 75:24-78:2.)   In addition,

Friedman testified that neither Sirotkin nor his family ever took cash from the 455 Hospitality.

(Blue Decl., Ex. T at 66:3-66:14.)  Friedman also confirmed that Sirotkin never had Hotel

catering customers make cash payments for events so that he could divert that cash for himself.

(*Id.* at 66:3-14.)  Compared to this detailed testimony, Plaintiffs offer nothing to create a factual

dispute on this point.  In fact, in discovery, Plaintiffs were asked to disclose any evidence of

nefarious diversions of funds or illegal cash payments by the Sirotkin Defendants.  (Blue Decl.,

Ex. R at 4–6.)[14]  In response to these discovery requests, Plaintiffs reiterated the same

unsupported claims lodged in the Fourth AC.  (*Id.*)

       The only evidence that Plaintiffs offer to support any impropriety by the Sirotkin

Defendants was a transaction in which Sir Paul Realty, controlled by the late Paul Sirotkin, put

$3 million *into the Hotel*, which has never been repaid.  (Fourth AC, Ex. E ¶¶ 230–32; Ex. R at

4.)  The Court does not see how this transaction provides a basis to pierce the corporate veil with

respect to 455 Hospitality.  First, neither Sirotkin nor B&A's money was involved in this

transaction.  (Defs.' 56.1 ¶ 22.)  Second, there is nothing facially nefarious from a non-defendant

entity's infusion of money into the Hotel, let alone anything about that transaction that is at all

related to Plaintiffs' employment.  See *Irizarry*, 722 F.3d at 109 (holding that "[o]wnership, or a

stake in a company, is insufficient to establish that an individual is an 'employer' without some

involvement in the company's employment of *the [plaintiff] employees*" (emphasis added)).

Because Plaintiffs offer no evidence as to how the Sirotkin Defendants' used 455 Hospitality's

corporate form to perpetrate a fraud or injustice against them, much less how such purported

conduct deprived Plaintiffs of owed wages, the Court dismisses the alter ego/piercing the

corporate veil claims.

---

[14] Plaintiffs' response to the Sirotkin Defendants' discovery request regarding the diversion of corporate funds of cash payments for catering events which were not recorded in the books and records of 455 Hospitality as alleged in the Fourth AC was "Plaintiffs are not aware of any responsive documents at this time, and reserve the right to amend this answer as new information is disclosed in the discover[y] process."  (Plaintiffs' Response to the Sirotkin Defendants First Request for the Production of Documents, Ex. Q at 3.)  Plaintiffs have not supplemented or amended that response or produced any documents responsive to this request. (Defs.' Mem. at 2–3.)

### 3. Breach of Contract Claims

In the Fourth AC, Plaintiffs allege that Defendants breached the terms of the employee manual through failure to provide paid holidays.  (Fourth AC ¶¶ 418–22.)  But Plaintiffs do not specifically oppose or otherwise address Defendants' Motion as it seeks summary judgment dismissing Plaintiffs' breach of contract claim.  *See Jackson v. Fed. Express*, 766 F.3d 189, 198 (2d Cir. 2014) (holding that in cases where a counseled party makes only a partial response to a motion for summary judgment, referencing some claims or defenses but not others, "a court may, when appropriate, infer from a party's partial opposition that relevant claims or defenses that are not defended have been abandoned"); *accord Kovaco v. Rockbestos-Surprenant Cable Corp.*, 834 F.3d 128, 143 (2d Cir. 2016) (same). As such, because Plaintiffs do not defend their breach of contract claim, the Court deems it as abandoned and dismisses it.[15]

### III.  Conclusion

For the foregoing reasons, Defendants' Motion for Summary Judgment is granted.  The Clerk of the Court is respectfully requested to terminate the pending Motion and enter judgment for Alexander Sirotkin and Brown & Appel, LLC.  (Dkt. No. 430.)

SO ORDERED.

DATED:       September 20, 2021
                    White Plains, New York

_____
KENNETH M. KARAS
UNITED STATES DISTRICT JUDGE

---

[15] Because the Court dismisses Plaintiffs' breach of contract claim on this ground, it need not address whether the Plaintiffs employment manual created a contract to which the Sirotkin Defendants are a party or whether Plaintiffs' claims are timely.